UNITED STATES DISTRICT COURT

for the

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **William Perry,** | **Claim Number:** |
| **Plaintiff,** | Jury Trial:    Yes ☒  No ☐ |
| **v.** | |
| **ADA Mark Anthony Monaco,** | **COMPLAINT FOR A** |
| **DA Alvin Bragg,** | **CIVIL CLASS ACTION** |
| **Hon. Ruth Pickholz,** | **AND INJUNCTIVE RELIEF** |
| **Hon. Curtis Farber,** | |
| **ADA Lisa Del Pizo,** | |
| **ADA Stuart Silberg,** | |
| **ADA Erin Tierney,** | |
| **ADA Shira Arnow,** | |
| **ADA Alexandra Wynne,** | |
| **Officer Thomas Mullins,** | |
| **Officer Donya Bardliving,** | |
| **Defendants.** | |

## INTRODUCTION

"*If you are silent about your pain, they'll kill you and say you enjoyed it.*"
— Zora Neale Hurston

1.      Defendants have weaponized the criminal apparatus in violation of the United States Constitution.  Defendant's have engaged in *#LawFare*.

2.      This is a civil class action, pursuant to 42 U.S.C. §§ 1983 and 1985, seeking damages and injunctive relief against Defendants for conspiring to, and engaging in a pattern and practice intended to, violate Plaintiffs', and other similarly situated individuals, due process and equal protection rights under the Constitution and laws of the United States and the State of New York.

3.      Declaratory and injunctive relief is sought as authorized in 28 U.S.C. §§ 2201 and 2202.

## Table of Contents

INTRODUCTION ............................................................................................ 2

JURISDICTION AND VENUE ...................................................................... 4

PARTIES ......................................................................................................... 4

CLASS ACTION ALLEGATIONS ............................................................... 6

STATEMENT OF FACT ................................................................................ 8

   **I.**   *Case of the Karen* ...................................................................... 9

   **II.**   *Amy Cooper and a Change of Public Opinion* ...................... 12

   **III.**   *Mark Anthony Monaco Cover Up* ......................................... 14

   **IV.**   *~~Sympathetic~~ Biased Court* ................................................. 18

   **V.**   *Golden Girl* ............................................................................ 22

CAUSE OF ACTION .................................................................................... 36

   **I.**   *District Atty. Alvin Bragg* ..................................................... 36

      a)   First Amendment ............................................................. 36

      b)   Fourteenth Amendment ................................................... 39

   **II.**   *ADA Mark A Monaco and Co-Conspirators* ...................... 42

      a)   First Amendment ............................................................. 42

      b)   Fourteenth Amendment: Due Process ............................ 44

   **III.**   *Hon. Ruth Pickholz* ............................................................... 47

      a)   First Amendment ............................................................. 48

      b)   Fourteenth Amendment: Equal Protection ..................... 50

      c)   Fourteenth Amendment: Due Process ............................ 52

      d)   Separation of Powers ...................................................... 54

   **IV.**   *Hon. Curtis Farber* ............................................................... 56

      a)   First Amendment ............................................................. 56

      b)   Fourteenth Amendment: Due Process ............................ 57

      c)   Fourteenth Amendment: Equal Protection ..................... 59

HARM AND DAMAGES .............................................................................. 61

PRAYER FOR RELIEF ................................................................................ 64

DEMAND FOR JURY TRIAL ..................................................................... 64

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 as it arises under federal law and concerns civil rights, specifically 42 U.S.C. §§ 1983 and 1985, for conspiracy to deprive civil rights under color of state law.

5.      Venue is proper in this district under 28 U.S.C. § 1391(b) as the events giving rise to this claim occurred in the Southern District of New York.

## PARTIES

6.      Lead Plaintiff, William Perry, is a resident of Manhattan, New York, New York, and brings this action on behalf of himself, and all others similarly situated.

7.      Defendant, Mark Anthony Monaco, is an Assistant District Attorney for the borough of Manhattan, located at 1 Hogan Place, New York, NY 10013, and is being sued in his individual and official capacities.

8.      Defendant, the Hon. Ruth Pickholz, is a Judge of the New York Supreme Court, Part 66, located at 100 Centre Street, New York, NY 10013, and is being sued in her individual and official capacities.

9.      Defendant, Alvin Bragg, is the elected District Attorney for the borough of Manhattan, located at 1 Hogan Place, New York, NY 10013, and is being sued in his individual and official capacities.

10.     Defendant, the Hon. Curtis Farber, is a Judge of the New York Supreme Court, Part 81, located at 100 Centre Street, New York, NY 10013, and is being sued in his individual and official capacities.

11.     Defendant, Lisa Del Pizzo, is an Assistant District Attorney for the borough of Manhattan, located at 1 Hogan Place, New York, NY 10013, and is being sued in her individual and official capacities.

12.     Defendant, Stuart Silberg, is an Assistant District Attorney for the borough of Manhattan, located at 1 Hogan Place, New York, NY 10013, and is being sued in his individual and official capacities.

13.     Defendant, Erin Tierney, is an Assistant District Attorney for the borough of Manhattan, located at 1 Hogan Place, New York, NY 10013, and is being sued in his individual and official capacities.

14.     Defendant, Shira Arnow, is an Assistant District Attorney for the borough of Manhattan, located at 1 Hogan Place, New York, NY 10013, and is being sued in his individual and official capacities.

15.     Defendant, Thomas Mullins, is an Officer for the District Attorney for the borough of Manhattan, located at 1 Hogan Place, New York, NY 10013, and is being sued in his individual and official capacities.

16.     Defendant, Donya Bardliving, is an Officer for the District Attorney for the borough of Manhattan, located at 1 Hogan Place, New York, NY 10013, and is being sued in her individual and official capacities.

## CLASS ACTION ALLEGATIONS

17.    Plaintiff brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all individuals who have been subjected to an ongoing scheme to suppress, and cover up, viewpoints on social media platforms TikTok and Instagram critical of the Mark A Monaco Cover Up, and Alvin Bragg, including commentary critical of racism and the criminal justice system.  Defendants knowingly ignore long standing custom, practice and caselaw, to engage in a blatant scheme of pretending that "*speech*" is a "*course of conduct*".  Starting in Spring of 2020, this scheme was designed specifically to cover up a media scandal concerning ADA Mark A Monaco, and an allegation from a former witness that ADA Monaco had threatened her into false testimony and tampered with evidence.

18.    Defendants have manipulated court protective orders, and committed fraud on repeat occasion threaten and punish the Lead Plaintiff for first amendment protected speech.  Within my social media posts, there are approximately 14,000 comments from third parties.  There are additionally 500,000 likes on the posts, and comments from third parties.

19.    Additionally, Defendants have abused court orders to force social media platforms to take down first amendment protected content supportive of lead plaintiff, and critical of ADA Mark A Monaco.  At least eight (8) other individuals are known to have had their content removed from TikTok without any due process.  Within these additional posts, there are an unknown number of additional comments and likes.

20.    This action satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure for class certification because:

        a.  Numerosity: The class of individuals who have had their first amendment protected speech violated is numbered in excess of 500,000 persons (likes).  The number of individuals who expressed unique viewpoints (comments), later subject to

6

censorship, exceeds 14,000. Plaintiffs are geographically dispersed across jurisdictions, unknown. This class of individuals is so numerous that joinder of all members is impracticable.

b.  Commonality: All individuals are common to one another, in that our speech concerning the Mark A Monaco Cover Up was impacted, purely by virtue of the subject matter. There are common questions of law and fact, including whether Defendant engaged in a systematic pattern of unconstitutional censorship.

c.  Typicality: The claims of the lead Plaintiff(s) are typical of the claims of the class members, as all claims arise from the same course of conduct.

d.  Adequacy: Plaintiffs will fairly and adequately represent the interests of the class and have retained competent counsel to represent them in this matter.

## STATEMENT OF FACT[1]

21.    This matter regards a scheme orchestrated by Assistant District Attorney, Mark Anthony Monaco, to Deprive My Rights Under Color of Law (18 U.S.C. § 242).  These actions were, and continue to be, in furtherance of a cover up regarding 2020 media fallout from a witness ADA Monaco threatened into false testimony in 2019.  In 2019, I provided ADA Monaco videos that would later become the subject of this matter.  ADA Monaco was then lead prosecutor in a case against me, concerning Mrs. Putnam.  Specifically, the videos showed two incidents in 2018.  One video wherein, Mrs. Putnam can be seen walking to me from across a room and striking me in the face.  The second string of clips, from an incident where Mrs. Putnam can be seen placing herself on the floor of my apartment, and then conducting herself as what viewers describe as a "*Karen*."  Mrs. Putnam goes back and forth between theatrical performative acting, and threatening to make false reports to the police.  Despite Mrs. Putnam's demonstrated abuse of the criminal justice system,[2] ADA Monaco uses the opportunity for a "*cheap*" win.

22.    I, Lead Plaintiff, am a graduate of New York University School of Law. (Tr. 957).[3] I practiced corporate law for five years at two large law firms before moving into finance and consulting, focused on the technology, media and telecommunications sector. (Tr. 957-58).  In advance of DA Alvin Bragg's prior scheduled U.S. Congressional Appearance, I asked Defendants' permission to engage the political process and share his story amongst his fellow citizen in exercise of Lead Plaintiff's First Amendment Freedom of Speech.  To respect the separations of powers, to permit my engagement of fellow citizens to spur to action our legislative

---

[1] The Trial Record and Exhibits of the Underlying Indictment are available as **Addendum I**.
[2] Mrs. Putnam has repeatedly made complaints against ex-boyfriends of color.
[3] The trial transcript is referenced as "Tr." The sentencing transcript is referenced as "S-Tr." The People's exhibits are referenced as "Px." Indictment No. 01389/21, New York Supreme Court, New York County, Criminal Term.

and executive branches of government.  Defendants have declined, utilizing court orders to muzzle my mouth.

## I.    *Case of the Karen*[4]

23.    August 4, 2018, I report, my then girlfriend, Hannah Claire Putnam ("**Ms. Putnam**") to the police, **Exhibit A**.  The night prior, Mrs. Putnam struck me in the face.  I asked her to leave.  She refused and then trespassed in my home.  A toxic and traumatic event; she repeatedly threatened to weaponize the police against me.  She threatened to call law enforcement, if I did not allow her "*unrestricted access*" to my apartment.  We had broken up weeks prior; and although she wanted her own freedom, she did not want me *potentially* dating someone else freely. She sought to keep control of me through access to my home.

24.    Any time I attempted to remove Mrs. Putnam, or gather her belongings, she would *fake* yell, as though in distress and roll on the floor.  Disturbing furniture to make maximum noise. Mrs. Putnam had moved out two weeks prior.  I was not required to tolerate such indignation.  Mrs. Putnam had no basis to demand access to my home on August 4, 2018, nor any legal claim of residence.  Tr. 680-681; lines 11-10.

25.    Upon being asked to leave, Mrs. Putnam laid on the floor and proceeded to kick and scream, in an attempt to alarm my neighbors.  In fear of my livelihood and safety, **I record the events with my *iPhone***.  Mrs. Putnam and myself reconcile late 2018.  Mrs. Putnam moves back into my apartment January 1, 2019.

---

[4] Ms. Putnam defined a "*Karen*" as someone who uses their white race to weaponize the police against a black person or another minority or being a difficult individual.  (Tr. 743 Lines 8-11)

26.     March 16, 2019, after returning home from a night out, I greet Mrs. Putnam with our customary kiss on the cheek.  For no explicable reason, I am struck in the face.[5]  Mrs. Putnam engages in a practice known as "*gaslighting*".  She yells as though in distress, claiming my actions are *abusive* and *threatening* toward her.  This naturally puts me in distress; now, she can easily manipulate me.  My *grievance*, her hitting me, is completely ignored; which is her intention.  I have to do as she says.  The threat of her calling the police, operates as a gun to my head.

27.     *Again*, I am a black male; **operating with all the concerns regarding "interacting with the police" as would be *commonly* expected of a black male**.

28.     She takes a picture of me in front of my mirror.  In the picture, I am ~10 feet away from her.  Fully clothed, with a sweater and vest.  My back turned to her.  Because the writing contains topics of a sexual nature, she repeatedly then threatens to call the police.  To blackmail me with this picture that contains proof of us discussing "*sex*".  She threatens that she will claim discussion of sex without her *consent*, is essentially me "*forcing*" her to have sex.  She is playing with all the right *buzz words*; purposely provoking every *dog whistling*.  It is *terrifying*.

29.     An argument ensues over the phone; specifically, the picture she is threatening to blackmail me with.  Mrs. Putnam is attempting to keep the phone from my possession as I ask her to delete the picture.  The phone falls multiple times.  The screen breaks.  March 16, 2023, I am arrested.

30.     ADA Monaco was assigned to the case for prosecution.  ADA Monaco knew Mrs. Putnam was a *Karen* upon first meeting her.  Mrs. Putnam's recalls during her first interaction

---

[5] This point in the relationship, it is commonplace to casually hit me.  Part to cause injury; part to degrade and humiliate me.  Moments before, Mrs. Putnam had gone through my journal and read an entry regarding my frustrations about the constant abuse.

with ADA Monaco, him insinuating she made false statements to the police: "*he was saying, you know it's a crime to make a false statement to the police*. Tr. 594, lines 21-22.

31.    I proactively provide ADA Monaco videos from the night of August 4, 2018 (discussed in paragraphs 23-25 above).    Thereafter, ADA Monaco invited myself, with the assistance of counsel, to a proffer.    ADA Monaco sat silent during the entire proffer.    ADA Monaco's, then, supervisor questioned me.    There was little discussion regarding the evening of March 16, 2019.    The near entirety of the discussion was focused on my career at an elite investment bank. My legal pedigree from a top 5 law school.  My elderly parents, of whom I, then, financially supported.  It is focused on my father, 88 years old and battling cancer.  The implication clear.  ADA Monaco was threatening to weaponize the justice system against me.  To imperil my career and livelihood at a time when I financially needed to support my elderly parents.

32.    Concerned she will be discovered for lying to the police, Ms. Putnam becomes increasingly paranoid.  Under examination by the Court, Mrs. Putnam *repeatedly* testified, after initially indicating that she wanted the case to be dismissed, she felt threatened by ADA Monaco to change her recollection of events.  Tr. 592-3; lines 24-6.  Ms. Putnam refers to being threatened by ADA Monaco on multiple occasion during trial (Tr. 594; lines 20-24).

33.    In fear of ADA Monaco, Mrs. Putnam becomes increasingly controlling and abusive toward me.  I eventually refuse to engage her (**Exhibit B and C**).  I provide this correspondence to ADA Monaco.

34.    Concerned she will be discovered; Mrs. Putnam takes the *evidence* of discussions (she initiated with me) to ADA Monaco to use as leverage.  ADA Monaco openly encourages Mrs. Putnam in this course of behavior.  On January 6, 2020, I, then defendant, plead guilty to a violation of disorderly conduct and was ordered to pay restitution and to abide by a full and final order of

protection in favor of Ms. Putnam, valid for two years, until January 5, 2022. I did this under duress of additional charges stemming from violation of the protective orders, as a result of Mrs. Putnam contacting me and coming to spend time with me at my home.

## II.    *Amy Cooper and a Change of Public Opinion*

35.    On, or about, March 3, 2020, I post the aforementioned August 2018 videos (paragraphs 23-25) on social media platforms Instagram and TikTok. Two weeks later, the COVID lockdowns begin. Mrs. Putnam discovers the postings from a friend April 18, 2020. She immediately contacts me. I do not respond, as I am under protective order. At no point do I speak with Mrs. Putnam, or initiate contact through a third party. I repeatedly block Mrs. Putnam from making contact with me. Tr. 1,010; lines 6-7. She makes new accounts and continues to follow me; I block those accounts as well. Tr. 1,011; lines 1-9. I have not spoken to Mrs. Putnam since 2019; nor have I sought to initiate contact.

36.    Mrs. Putnam seeks the assistance of ADA Monaco. ADA Monaco contacts my attorney, making vague threats of additional arrest and felony charges in April 2018. I believe this to be a *chilling* of my first amendment right, as ADA Monaco is aware my actions are not criminal.[6]

37.    May 25, 2020, George Floyd is murdered. The same day the infamous Amy Cooper, Central Park "*Karen*" video goes viral.[7] The behavior is condemned publicly; Mrs. Cooper is terminated from her employment Franklin Templeton.[8] May 28, 2020, I receive a Cease-and-Desist Letter from Annie Seifullah, private counsel of Mrs. Putnam, concerning the

---

[6] See paragraphs 39, 41, and 43 regarding statements of ADA Monaco to Mrs. Putnam, that my actions were not an actionable criminal offense under the law.
[7] Central Park: White woman ID'ed as Amy Cooper in NYC calls police on black man over dog leash | ABC7 - YouTube
[8] *Cooper v. Franklin Templeton Invs., Franklin Res.*, 22-2763-cv, 8 (2d Cir. Jun. 8, 2023).

posts.  At, or around, this time, emails between Mrs. Putnam and ADA Monaco indicate concern being associated with Amy Cooper, and the resemblance between their behavior.

38.    Mrs. Putnam testified she personally observed comments wherein viewers called her a "*Karen*" or otherwise expressed an opinion accusing her of manipulating the racial dynamics of our relationship.  T. 737, Lines 7-13.  Comments such as "*She is definitely dangerous and using her white privileged to act like a victim*"[9].  Or *"What's scary is that you're more at risk when the police come, she knows that.  If that's not abusive I don't know what is.*"[10] (**6,696 likes**)

39.    April through September of 2020, ADA Monaco makes repeated threats of arrest in an attempt to intimidate me to take down the videos.  ADA Monaco testified viewing "*Karen*" comments in relation to Mrs. Putnam.  Tr. 393, 15-19.  ADA Monaco was aware of Mrs. Putnam's expressed concern regarding comments framing her interactions with myself, a black male, as a racial issue could negatively affect her employment.  Tr. 737 Lines 10-19.  Initially, ADA Monaco did nothing.  He instructed Mrs. Putnam there was no actionable offense, and advised her to seek private counsel.[11]  However, ADA Monaco continued to threaten me in violation of my 1st amendment right.

---

[9] TikTok user rd_._ [2020-8-23], **Exhibit D**.
[10] TikTok user Lovebug [2020-8-11], **Exhibit E**.
[11] Tr. 608, lines 14-20, Mrs. Putnam:  "So, my understanding from conversations with Mark was that his job was to represent the State of New York. He was not a personal -- no district attorney from New York are personal attorneys for witnesses. So I knew that from the previous trial interactions I had with him. So I knew when this was happening that I probably -- I felt I needed my own attorney to advocate for me."

### III.    *Mark Anthony Monaco Cover Up*

40.    In September 23, 2020, I make two ADA Monaco focused Instagram account publicly viewable.  The next morning,[12] after waiting six (6) months[13] to pursue a prosecution against me, ADA Monaco sends investigators to arrest me and seize my personal electronics.

41.    Starting in May of 2020, ADA Monaco becomes concerned with media attention focused around the 2020 civil rights protests (George Floyd, Amy Cooper, etc.).  ADA Monaco repeatedly threatens me with false prosecution through my then defense counsel, David Jeffries. During which time, text message evidence indicates ADA Monaco had communicated to Mrs. Putnam there was no actionable criminal offense.  ADA Monaco counsels Mrs. Putnam to seek resolution through private counsel.

42.    However, as public mention begins to focus on ADA Monaco by name, he then initiates a false prosecution based on known (and observable) false statements of witness Hannah Claire Putnam.[14]  Email and text evidence explicitly details ADA Monaco's known fraudulent use of the criminal court apparatus.[15]  ADA Monaco repeatedly boasts with colleagues about the ability to fabricate false evidence.[16]  ADA Monaco employs his mother, Rose Marie Monaco, to

---

[12] T 135; lines 13-21:  "Q. Directing your attention, Investigator Bardliving, to September 24, 2020, between the hours of approximately six to 8:00 am. in the vicinity of 210 East 36th Street, Apt [#]. Were you working at that approximate date, time, and location?  A.Yes.  Q. What was your assignment that day?  A. That day we were to do a warrant, and a search warrant of the location of 210 East 36th Street, Apartment [#]."

[13] ADA Monaco testified that the timing of his decision to pursue my arrest was six (6) months after Mrs. Putnam initially brought the posts to ADA Monaco's attention, in April of 2020: "Q: I'm right now speaking to you about the timing in which this unfolded. And, if I understand correctly, there would have been approximately a little under six months from the time that Mrs. Putnam first reported the post, to the time that an arrest was made of Mr. Perry; is that right?  A: That's correct."  (Tr. 388, lines 5 - 11)

[14] For six months prior, ADA Monaco had communicated with witness Hannah Claire Putnam that public statements regarding Mrs. Putnam were not actionable under the criminal law.  (Tr. 388, lines 5 - 11)  Once the public statement began to reference ADA Monaco, he changes his mind as to his *interpretation* of the law.

[15] ADA Monaco communicated via text message with another witness that there was no basis of prosecution.

[16] Investigator Thomas Mullins arrogantly gloats his pleasure with targeting speech concerning *race*.

make false statements to investigators and before courts, under penalty of perjury.[17]  However, when questioned on the stand, ADA Monaco says he did not believe the Facebook messages his mother received had any relation to me.  Investigators later determine the messages related to an elder scam.

43.    After telling Ms. Putnam, there was no actionable offense for the six (6) months prior, ADA Monaco now changes his mind as to the interpretation of the law, and determines my actions amount to "*professional retaliation*".  Tr. 366, lines 3-15.  This is completely *fabricated*. This concept does not exist ([google it](google it)).  ADA Monaco later concedes "*employment*" concern is not an actionable legal standard, nor basis of arrest, T. 409-10; lines 9-2).  ADA Monaco testifies that the sole basis for his criminal complaint[18] was concern Mrs. Putnam's *employment* might be threatened.  Not fear of *bodily* threat.  T. 408, lines 17 – 25.  People's witness, Alyssa Rowe, hereinafter, "**Mrs. Rowe**", testified Mrs. Putnam directly informed her, Mrs. Putnam was concerned about Mrs. Putnam's career being damaged by the content posted on the social media pages.  Tr. 68 Line 12-21.  ADA Monaco's initial theory of criminality was that the social media posts, threatened Ms. Putnam's career.  As People's witness Mrs. Rowe observed, the comments were deemed "*threatening*" because they portrayed Mrs. Putnam as a "*racist*."  "*And anything that's  going to go viral over social media that's going to paint somebody as a quote-unquote racist, that is threatening to her job. That's what I'm referring to.*"  T. 71 Line 25, T. 72 Line 1-6.

---

[17] Rose Marie Monaco, under instruction from son, ADA Monaco, fraudulently claims fear of "shame words".  Tr. 200, lines 11-12.  A completely fabricated notion.  In an attempt to save himself, ADA Monaco's lies and states he told his mother she did not make any sense.

[18] Tr. 311; lines 16-20; "The complaint further advised the defendant that the public postings on the above-mentioned social media accounts caused Hannah Putnam to fear for her physical safety, and to fear that her employment would be threatened."

44.    Early October 2020, I am arrested.  ADA Monaco makes no reference to the Instagram accounts or posts concerning him in any complaint or court filing.  He does not inform his superior, ADA Shira Arnow, regarding the posts referencing his name and likeness.  T. 466-7, lines 16-20, 25-3.  ADA Monaco repeatedly fails to hand over my personal belongings, after stating the investigation was complete.  In addition to other ethical missteps, he fails to provide record of a hard-copy of an attorney grievance letter I wrote regarding his prosecution.  Evidence I believe to have been tampered with and destroyed.[19]

45.    Early March 2021, I contact the campaign for New York District Attorney, Tahanie Aboushi (**Exhibit F**), regarding my case.  I tell them ADA Monaco's name.  I also interact with her campaign on Instagram.[20]  Approximately two (2) weeks later, on or about March 19, 2021, ADA Monaco makes contact with my attorney regarding ADA Monaco being removed from the case.  ADA Monaco's colleagues and superiors become aware of the scandal once ADA Monaco is *reassigned*.  Through fraud, ADA Monaco and Co-Conspirators,[21] ADA Lisa Del Pizo, ADA Stuart Silberg, ADA Erin Tierney, ADA Shira Arnow, Alexandra Wynne, Officer Thomas Mullins, and Officer Donya Bardliving, manipulate court protective orders to prevent evidence of the scheme from reaching the public media.  ADA Monaco, within emails and text messages with

---

[19] ADA Monaco acknowledges receipt of a Cover Sheet regarding a complaint about him to the Bar, with the notation "See attached".  He claims no letter was attached, Tr. 395, lines 17-25:  Q. "*And, do you recall whether there was an actual complaint that was recovered from the execution of the search warrant?*" A. "*A complaint to the Bar Association?*"  Q. "*Yes, a draft, a fully drafted, multiple pages?*"  A. "*I'm not aware of what is being recovered. All I'm aware of being recovered was a cover sheet, and I remember the cover sheet said, see affixed, but I don't recall, and I'm not aware of any actual complaint.*"

[20] Tr. 471, lines 3-6:  ADA Monaco:  "*I recall that the Instagram accounts commented on posts made by other people, in which the one post I can think of is where the Instagram account commented and tagged Tahanie Aboushi.*"

[21] Co-Conspirator's are defined as a class of individuals who have collectively, or individually (within text message or email) acknowledged that (i) the actions they are seeking to stop are constitutionally protected, and (ii) the statements they are making are FALSE and intended to mislead and/or conceal.

Co-Conspirators, can attest to viewing no credible threats or communications for myself to complainants, yet I was still arrested multiple times.

46.    ADA Monaco, and Co-Conspirators, knowingly *play-dumb*; and in a Conspiracy Against My Rights (Title 18, U.S.C., Section 241) to knowingly falsify court records.  Under the penalties of perjury, ADA Monaco, and Co-Conspirators coordinate false statements (903. False Statements, Concealment—18 U.S.C. § 1001), in order to move the fraudulent case through the criminal justice system.[22]  ADA Monaco's superiors become concerned as candidates for an impending Manhattan District Attorney election begin to learn of the social media posts:

> **ADA Monaco:  I recall that the Instagram accounts commented on posts made by other people, in which the one post I can think of is where the Instagram account commented and tagged Tahanie Aboushi.   (Tr. 417, lines 3-6)  So my recollection is that I don't recall if there was any additional language in the comment, but that one of the Instagram accounts commented on a post tagging Tahanie Aboushi.  (Tr. 417, 14-17)**

47.    ADAs acknowledge concern over media coverage during Black Lives Matter protests.[23]  The public statements ADA Monaco is attempting to cover up regard a white female "*Karen*" abusing a black male victim, myself.  The videos show Hannah Claire Putnam (1/23/90), threatening to make false statements to law enforcement against a man of color, myself.  At one point, threatening to call the police because I was *rude*.  (Px. 3.3).  The public social media comments on the posts consisted of:

> **I'm a white woman. I'm so so sorry. This is abuse. Keep recording everything you can. Because the police often take the woman's side.[24]**

---

[22] Repeated emails acknowledge the first amendment constitutional violation.  Note that although Officer Mullins conducts my second arrest, he does so after testifying that he saw no threats.  There was never a basis for my arrest.
[23] Investigator Thomas Mullins makes outwardly racists comments regarding public commentary.  He and others voice displeasure at public sympathy for black male's civil rights.
[24] TikTok user stankystevie [2020-8-21], (**Exhibit G**)

**She is being violent & playing the victim.  Once she leave do not let her back in because if you do she is going to get you put in jail for a long time". (1,047 likes)**[25]

**you can hear him holding back tears… poor guy… [heart emoji] [heart emoji]**[26] **(2,851 likes).**

**Female privilege is her assaulting you and then SHE calls the cops on you.**[27]

**Let go of me" is not even touching her" (2,253 likes)**[28]

**Lol like we believe anything she says when she's saying "let go of me" and isn't even being touched. (5 likes)**[29]

**it's cause ur colored bro so she uses her skin tone and cops to put fear in you. leave this woman alone!!!!**[30]

**As a white woman, I see right thru her I know what she's doing, purposely lying cuz the cameras on and exaggerating it**[31]  **(2 likes)**

**Would say send her this way she is pretty sexy but not self-respecting white guy would touch her**[32]

48.    ADA Monaco, aided by the Co-Conspirators has to date been successful in this Cover Up.  ADA Monaco and Co-Conspirators have been aided in this scheme by Judges sympathetic to violate the U.S. Constitution when concerning the issue of free speech on the topic race, and racial equality.

### IV.    ~~Sympathetic~~ Biased Court

49.    July 30, 2021, on petition by the People, ADA Alexandra Wynne, before the Hon. Curtis Farber, Part 81, is granted a protective seal over all evidence obtained in discovery of

---

[25] TikTok user jozet5275 [2020-3-19], **Exhibit H**.
[26] TikTok user lemonbee._.journalist [2020-5-1], **Exhibit I**.
[27] TikTok user bed_bath_and_beyonce [2020-8-20], **Exhibit J**.
[28] TikTok user bruhh_gorl [2020-8-21], **Exhibit K**.
[29] TikTok user k8notkait [2020-8-21], **Exhibit L**.
[30] jazzzyyt [2020-8-21], **Exhibit M**.
[31] iddybiddytiddycumiddy [2020-8-21], **Exhibit N**.
[32] halynsdada10 [2021-4-3], **Exhibit O**.

Indictment No. 01389/21.[33]  This order limits my view of evidence to instances where my, former, defense counsel, David Jeffries, is present and in control of such evidence.  At the time of the hearing before Judge Farber, the nature of the evidence was unknown to the defense.[34]  My defense counsel was provided no opportunity prior to review the evidence.  The evidence was reviewed in the privacy of Judge Farber's jury room, outside of the presence of myself and my then counsel, Mr. David Jeffries.

50.    Judge Farber identified no grounds to limit my view of evidence[35]....until... ADA Wynne noted to the court that the People had through fraud[36] obtained a subpoena search warrant of my iCloud records from Apple Inc.[37]

> **ADA Wynne:  I just wanted to make the record that the People had the defendant's iCloud account which contains multiple recordings of his virtual court appearances. He would screen record.[38]**
> ….
> **THE COURT: Well, that's is concern in itself, Counsel. Your client is prohibited from screening, filming any virtual appearances.[39]**

51.    Although Judge Farber could identify no prohibition regarding the behavior:[40]

> **THE COURT: I'm not taking a position on it today.  I just said it is a concern, talk to your client and address that going forward.[41]**

---

[33] To date, this protective seal remains over the evidence.  I am required to persist in legal proceedings wherein, I am not permitted to access the evidence.
[34] Protective Order Hearing Transcript, July 30, 2021, page 4; lines 5-16.
[35] *Id*., page 4; lines 17-18.  Judge Farber indicated concern that images of him would eventually make it's way to the media alongside the controversial videos of Mrs. Putnam.
[36] Email evidence indicates DAs took Facebook messages, they knew to be unrelated to me, and pretended in front of judges the messages came from me.  DAs *knowingly* planted and staged false evidence.
[37] Emails of ADA Wynne indicate she, and others, fraudulently misrepresented communications of other individuals as originating from me.  Repeated false statements were made to social media companies that William Perry was threatening people, and that my social media posts needed to be deleted.  The People have engaged in a blatant campaign of censorship through fraud.
[38] Id., page 7, lines 3-6.
[39] Id., page
[40] The recording occurred during covid virtual proceedings.  The recordings did not occur within chambers.
[41] Judge Farber never takes an eventual position.

52.    Judge Farber's concern regarded emails detailing ADA's *ex parte* discussions with the court.  Therein, ADAs detail judge's expressed concern regarding the merits of the prosecution on *prima facie* review.  Judge Farber does not want court videos of him alongside these emails acknowledging the abuse of power public.

53.    Judge Farber's Protective Seal is intended to make the cost of legal/attorney services prohibitively high.  Judge Farber's Protective Seal is an intended *assist* to the People to enable the deprivation of a fair trial.  The Protective Seal in combination with additional Orders (which required Lead Plaintiff to remove content from social media platforms Instagram and TikTok) functioned to require Lead Plaintiff's former attorney, David Jeffries, to confirm the content provided by the People was accurate and not manufactured or fraudulent with Lead Plaintiff.[42] *This was made impossible*.  Because Mr. Jeffries could not send the evidence to Lead Plaintiff to review in absence of Mr. Jeffries, there was a natural limit to how much evidence could be reviewed by Lead Plaintiff, by virtue of the limits of Mr. Jeffries time (and *expense*).  Because of this, Mr. Jeffries, did not have the ability to cross reference the fraudulent evidence with public sources, and confirm the accuracy.  Assisted by Judge Farber's Order, the People failed to provide material evidence until days *after the start* of trial.  **Exhibit P**; page 13, Supplemental Certificate of Compliance, dated September 12, 2022.[43]  There remain large portions of evidence Lead Plaintiff has NOT yet viewed; nor, knows to exist.

54.    Despite the acknowledged illegitimacy of the prosecution, Judge Farber later denied a motion to dismiss.  His sole justification for denial was "*I have inspected the Grand Jury and find that they are legally sufficient to support the charges…*"  Nothing else…  The People

---

[42] Note the conspicuous absence of any validation (or substance) within Judge Farber's denial of Lead Plaintiff's Motion to dismiss within the Underlying Conviction.
[43] The start of trial was September 8, 2022.

have since conceded their prosecution is not now, nor has it ever been, premised on an existing recognized exception to the first amendment. The People's prosecution is premised on an explicit constitutional violation; that the People after the fact asked to court to ratify as a "*new*" exception.[44] Or bury in court procedure.[45]

55.    April 24, 2023, after jury trial, the Hon. Ruth Pickholz, J., Part 66, Supreme Court, New York County, rendered a judgment, against myself, Petitioner, of the misdemeanor crimes of: two counts of criminal contempt in the second degree (P.L. § 215.50), three counts of stalking in the fourth degree (P.L. § 120.45(1)), and one count of harassment in the first degree (P.L. § 240.25). I was sentenced to three years' probation. I exist under the constant threat of prison if I dare speak.

56.    My direct appeal, Appellate Case No.: 2023-02647, was denied October 8, 2024. Sole basis – lack of preservation. The Appellate Division has declined to review ALL statutory and constitutional arguments.[46]

57.    No matter the depth an ostrich places its head belowground, the world still exists above-ground. My constitutional first amendment violations persist.

58.    1,635 days have passed since the first intrusion of Plaintiffs' first amendment rights. Judge Pickholz continues to *illegitimately* bind my tongue under court order.[47]  "**There is to be no comments on social media about this … And that is Facebook, Instagram, TikTok**, whatever other social media there is. **There is to be no discussion of this on social media**[.]" (S-Tr. 50).

---

[44] If Judge Farber were compelled to present to the court a violation based on existing law, he would fail to do so.
[45] As the appellate division has declined to rule on my constitutional violation;  sole basis, lack of preservation.
[46] I disagree with the Appellate Divisions determination that the entirety of my appeal was unpreserved, however, as this entire court process has shown, Judges are empowered to imagine whatever reality they want; to accomplish whatever end they want.
[47] During trial Judge Pickholz permitted the NY Post to film (only my testimony). The NY Post was permitted to film my face with the videos playing behind me. Had the NY Post chosen to run a story, they would have been permitted to do so, for profit, without restriction.

As Your Honor put it, "**that is not free speech anymore**." (S-Tr. 46). If Judge Pickholz intends to assist in the Monaco Cover Up, she may not conceal her *mess* like a kitten in a litter box – burying it under protective order to cover her shame. Judge Pickholz attempts to enshrine her opinions of *yesteryear* as fact.

## V.    *Golden Girl*

59.    The Hon. Ruth Pickholz is ~~unaware~~ unconcerned her bias. The question of expertise, or lack thereof, is obvious. Her Honor made no secret of Her inexperience with social media. Her Honor's reference to her inexperience was an intentional hedge. Playing the *little old lady* works to bolster qualified immunity. The tactic of judicial manipulation is clear. The more outrageous the application of law, the more cover qualified immunity provides, as it becomes clear the *little old lady* must have been confused. The more vague and nonsensical the record, the less substance in her statements there is to functionally criticize. *You cannot make sense of nonsense.* Her Honor frequently issues conclusions without providing substantiating evidence for her findings. Her findings exist without any validation or proof. Judge Pickholz is playing the *little old lady* that made a mistake… even though Her Honor *knows better*.

60.    Writer, actor, and 2019 Mark Twain Award recipient, David Chappelle describes this phenomenon in his 2000 HBO special, *Killin' Them Softly*.[48] Mr. Chappelle recalls a white male friend, *Chip*, aggressively speeding in the streets of New York City, while drunk and high. Chip is pulled over by law enforcement. Mr. Chappelle, a black male, in the passenger seat, proceeds to panic. Chip encourages Mr. Chappelle to relax, as it is safe for Chip, a white male, to interact with the police. Chip then proceeds to say to the officer "Sorry officer… *I didn't know I couldn't do that*." Clearly a dumb-lie, as it is common knowledge speeding, while drunk and high,

---

[48] David Chappelle, *Killin' Them Softly*, 2000, HBO, minute 2:24 of 5:19.
https://www.youtube.com/watch?v=U7fRGKntV1M

is illegal.  Nonetheless, the officer allows Chip to drive away unrestricted.  Moments later, Chip

jokes to Mr. Chappelle, he did in fact know it was illegal to speed while driving high and drunk –

"*I did know I couldn't do that… hahahahahaha.*"

61.    Judge Pickholz is playing *dunce*.  Judge Pickholz is of a generation where it was

permissible to hold *white women* at a degree of privilege *vis-à-vis black men*.  The subject matter

of *racism* is unavoidable within the Lead Plaintiff's posts.  Yet, *Houdini Pickholz* makes the

concept disappear into thin air.  The failure to note the *obvious* indicates a disdain for the racial

subject matter, in violation of my Fourteenth Amendment.[49]  It is as if Her Honor is allergic to

race.  These material omissions (903. False Statements, Concealment—18 U.S.C. § 1001) are

glaring and demonstrate a racial *animus*.

62.    All witnesses note race/racism as the focal point of the posts and corresponding

commentary.  All note the racial content as the basis of their individual concern.  A close friend of

Mrs. Putnam, Ms. Rowe—who "continually monitor[ed]" the accounts (Tr. 57)—testified that the

posts comments section was "brutal and harsh" with "lots of comments about racism." (Tr. 65,

69).  Putnam's friend saw the posts and comments as "threatening towards her career." (Tr. 68).

When asked about physical threats to safety, Ms. Rowe stated "**No. I don't believe any of the

posts had physical threats communicated in them**." (Tr. 69, lines 17-18).

63.    ADA Monaco's repeatedly, and explicitly, stated his sole concern was association

with the allegation of racism.

> **ADA Monaco:  'Cause again these are accounts that had thousands of followers on
> them, and they are being presented with information about my likeness, my name,
> pictures of my mother, family's address, phone numbers, and being interspersed
> with these videos with the intention of trying to tell the public that either myself or
> my family held racist beliefs.**  (Tr. T. 363, lines 3-12)

---

[49] Failure to protect speech concerning racism, fails to provide equal protection under the law.  I should be afforded
opportunities to redress my racial grievances publicly through the political process.  The Court can't purposely avoid
the constitutional violation by pretending it does not exist.

**[…]**
**ADA Monaco:  Having posts publicly made that were trying to compare me to objectively racist behavior.** (Tr. 435, lines 1-3)

64.    ADA Monaco testified the basis for his initial criminal complaint regarding Mrs.

Putnam was concern Mrs. Putnam's employment might be threatened.  Not fear of bodily harm.

**Q. Do you recall … fear that her employment is threatened due to the defendant's public postings; do you remember there being a line in the complaint as to that?**
**A. I do remember that, yes.**  (Tr. 408, lines 17 - 25)

65.    Investigator Thomas Mullins, who reviewed the entirety the evidence, recalls zero

threats, Tr. 847-8; lines 22-11:

**Defense Counsel:  And so if you independently came across death threats, you would have investigated those too, right?**
**Mullins:  Yes, I would.**
**…**
**Defense Counsel:  And as you sit here today, you don't have a recollection of any other threats of harm or death being brought to your attention, correct?**
**Mullins:  Not specific ones?[50]**

66.    The only consistent mention of threat was with respect to ADA Monaco previously

threatening Mrs. Putnam into false testimony.

**Defense Counsel: After that meeting with A.D.A. Monaco when you spoke with the defendant, did you have some choice words or descriptions of A.D.A. Monaco at the time, or opinions?**
**Mrs. Putnam: Yes. I believe I called him a dick, or said that you know, I thought I was smarter than him, and that he […] threatening me**
**THE COURT:  You thought Monaco was threatening you?**
**WITNESS: Yeah.[51]**

[after some discussion, Judge Pickholz again confirms Mrs. Putnam's concern]

**Judge Pickholz: But when you said that you felt that he was threatening you, Monaco was threatening you, is that what you said?**

---

[50] Of the 10s of 1,000s comments, Mrs. Putnam claims, at most, a dozen comments were of a "*threatening*" nature, *less* than 0.003%.  "*I testified about three or four.  There was at least a dozen messages that I would consider to be threatening or made me fear for my safety.*"  (Tr. 744, lines 25-2).  When considered in addition to the *likes*, and personal profile postings of other users, this amounts to *less* than 0.0001% of the content.
[51] Tr. 592-3; lines 24-6

**Mrs. Putnam: Yes.**[52]

67.     Despite the consistent mention of race, from all witnesses, and the absence of any threats from Petitioner, Judge Pickholz avoids the topic of racism.  Instead, *Houdini Pickholz* imagines nonsense.  Attempting to obscure the true nature of the subject matter in furtherance of the Monaco Cover Up.  Judge Pickholz is aware ADA Monaco and Co-Conspirators objective.  Judge Pickholz has seen the People's *roadmap*.  Judge Pickholz saw prosecutor emails wherein ADAs discussed the constitutional violation:  "**Did he really do anything or not? I don't think we could even charge this.**"  Tr. 755; lines 18-19.  At trial, Judge Pickholz declined to allow this evidence into the record:

> **Judge Pickholz:  I have the e-mails.  I see a message from Lisa Del Pizzo to certain ADA's[….]   Anyway, there were three ADA's--Ms. Arnow, who testified already; Stuart Silberg; and Erin Tierney.  The message from Lisa Del Pizzo is:**
>
> > **"Is there anything we could charge this guy with or do we just have investigators go speak with him?"**  Tr. 770; lines 15-22.

68.     Judge Pickholz is aware the DAs office wants a certain public view of the social media posts.  She is willing to oblige.  Compare the statements of Judge Pickholz as she describes the social media posts, in relation to the unbiased public's description of those same posts.

69.     The statement of Judge Pickholz:[53]

> **[T]hese charges arose from a dysfunctional personal relationship between the parties, William Perry, and Hannah Putnam.**

> Statements from TikTok user @torri_p_23, attached hereto as **<u>Exhibit Q</u>** (29 likes) (March 21, 2021):

---

[52] Tr.594; lines 4-7.
[53] We must acknowledge the historical significance of Judge Pickholz choosing to isolate her focus on the hyper-sexual comments, divorced from the broader racial and criticism of Mrs. Putnam.

**Y'all go through this persons pages...** *He* **has to record every time they get in an argument because she normally calls the police and says he beats her. And, the last video they had, she said she had bruises on her leg and did not. She said she had blood in her mouth, and did not.... White privilege will realty hurt you. And it will, it will halfway get you killed.**

TikTok User @malcolmhenriques, attached hereto as **Exhibit R** (August 20, 2020):

**I hope he is okay.**

TikTok User @tedclark1, attached hereto as **Exhibit S**, (113 likes; 21 comments) (August 21, 2020):

**yet another wonderful accusation trying to ruin another man's life and let's not even touch the fact that he's a black man**

TikTok User @hazzardjagboy, attached hereto as **Exhibit T**, (1 like) (April 10, 2021):

**Are you really held hostage? Or are you actually faking this?**

70.    The statement of Judge Pickholz:

**At trial, Ms. Putnam testified as to this first criminal incident that the defendant had taken a photograph of her bare breasts, broken her cellphone, and forcibly restrained her. (Tr. 553:4-554:2)**

TikTok User @Mindygraham0, attached hereto as **Exhibit U**, (5 likes)  (March 12, 2020):

**[S]ad to say I'm a woman but they do it all the time men are in jail over them lying**

TikTok User @bobafett04, attached hereto as **Exhibit V** (264 likes) (March 13, 2020):

**[I]f this is real(I believe it is)then recording it is 100% the best way to protect ourselves against false claims, Jonny Depp is a hero for awareness.**

TikTok User @adam222271, attached hereto as **Exhibit W**, (April 7, 2021):

**She really thinks she is above coloured people and police will be on her side no matter what SICK**

TikTok User @pnk_sparkles, attached hereto as **Exhibit X**, (May 14, 2021)

**….I do know that her attacking u physically is wrong just as wrong as a man**

71.    The statement of Judge Pickholz:

**At trial the evidence demonstrated that the defendant, through a variety of methods, created approximately 17 fake accounts on social media to hide his identity as the source of the content posted. These fake accounts were created with names that could be easily mistaken to be social media accounts of Ms. Putnam. Defendant then engaged in a continuous course of conduct that included, but was not limited to, using those fake accounts to make it look like the content of the posts was coming from Ms. Putnam.**

TikTok User mxdgurla, attached hereto as **Exhibit  Y**, (August 21 2020):

**you seriously need to file a protective order/restraining order. She's going to end up hurting you**[54]

TikTok User valdez184320, attached hereto as **Exhibit Z**,  (April 9 2021):

**Dude you better move on from that Privileged woman before everything you've work for is taken and your Ass is in Jail**

---

[54] Note how the viewer differentiates between "*her*", Ms. Putnam, and "*you*", the other person in the video, myself. This viewer, and almost all other, identify myself, the black male, as the poster of the content.

TikTok User glorynoveliani, Exhibit Z,  (April 7 2021):

**Tell us where she works, I'll report her. This is not okay**

72.    The statement of Judge Pickholz:

**A person is guilty of Criminal Contempt in the 2nd Degree when they engage in conduct that demonstrates an intentional disobedience or resistance to the lawful process or mandate of the Court.  There is significant evidence in the record to support these charges.  While defense makes much of the fact that the defendant did not initiate direct contact with Hannah Putnam, this is not the end of the analysis. Orders of protection prohibit much more than mere contact. Also, the Court mandates not only include the written documents given to defendant in the courtroom but any additional mandates the Court may issue to a defendant while in Court and on the official record.**

TikTok User yayaahtx, attached hereto as **Exhibit AA**,  (August 22, 2020):

**OMG & YOU'RE BLACK?! RUN MY BROTHER!!!!  This type of woman will have you locked up**

TikTok User sundayzchild, Exhibit AA,(August 21, 2020:

**Dude she laid hands on you YOU call the police get her out of there before she gets you in all kinds of trouble**

TikTok User @ashleylopez9288, Exhibit AA:

**@mommymode09 the whole account. This poor man. That girl is crazy.**

73.    The statement of Judge Pickholz:

**As the verdict indicated, the jury believed defendant's deliberate and persistent course of conduct in this case had no legitimate purpose. Further, the record also demonstrates that the jury could reasonably believe that defendant's continuity of purpose in targeting all three of the victims through social media posts, other communications, and his conduct constituted Stalking.**

TikTok User karenb0109, attached hereto as **Exhibit BB**, (1 like) (August 23, 2020):

**She's very unstable and needs to get help. Becarful she's dangerous**

TikTok User @sunchyne1023, attached hereto as **Exhibit CC**, (April 8, 2021):

**she is violent**

74.    The entire basis of Judge Pickholz' findings rest a *fabricated* notion the posts are *fake*. What does Judge Pickholz consider fake? This is never answered. Does Judge Pickholz consider statements of the unbiased public fake?

75.    Is Judge Pickholz referring to the "mash up," where I combined clips from PBS documentary, "MLK/FBI," concerning FBI harassment of Dr. Martin Luther King, with images and text conveying my allegations against ADA Monaco (e.g., "Bigots may change… but their tactics remain the same"). (Px. 73, pp. 82-99). Is this what Judge Pickholz regards as *fake*?

76.    Or is Judge Pickholz referring to the LinkedIn account, titled "Mark A. Monaco Coverup," which promised "An in-depth look at (1) what ADA Mark A Monaco knew when he made those filings, (2) why he was removed from the case, and (3) why the need for COVERUP." (Tr. 88-89; Px. 62).

77.    It is inappropriate for the Judge Pickholz to factualize her personal opinions. To rule on the authenticity of public proclamations. Judge Pickholz does this regarding something of

a *racial nature*.  This stands in violation of my 14th amendment, as it prevents my equal protection (on the basis of race) under the law.  The determination of "fake" is arbitrary and capricious.  *Fake* is a personal impression; an opinion.[55]  "Arbitrary action is without sound basis in reason and is generally taken without regard to the facts."  *Pell v. Board of Education*, 34 N.Y.2d 222, 231 (N.Y. 1974).  *See also Matter of Colton v. Berman*, 21 N.Y.2d 322, 329 (N.Y. 1967).

78.     Fake is not a legal fact that can be determined by a court.  The statements of Judge Pickholz are not only incorrect.[56]  They are nonsensical.  They do not to describe reality.  Judge Pickholz describes the accounts as *fake*, without any functional definition.  Done to discredit my statements and corresponding public reaction.  She describes the accounts as making people do things, which is humanly impossible.  Social media does NOT enable mind control.  Additionally, mind control has NEVER served as the basis for criminality.  The Court has committed fraud by definition, as the statements are impossible, nonsensical and incorrect.

79.     Judge Pickholz counts 17 accounts, although People's Exhibit 70, demonstrates only 4 subject accounts.  There is no record of where Judge Pickholz gets the 17 number from.  It is a number completely fabricated from whole cloth.

80.     The Courts findings are not applicable to any fact pattern.  The Court can point to no other application of law, in similar fashion.  The Court is making up words as it goes, to bury this case in court procedure and obscurity.  Such reckless disregard for the truth is a due process violation.  I cannot contend against the arguments of the People (baseless in fact), and the

---

[55] None of the Terms of Service for Instagram or TikTok make any reference to "fake" accounts.
[56] Judge Pickholz is egregious wrong at some points.  Trial Exhibit 70 demonstrates only 4 subject accounts.  There is no record where Judge Pickholz gets the 17 from.  It is a number completely fabricated from whole cloth.  Attached hereto as **Exhibit LL**.

ignorance of a court (too lazy to discern fact from science fiction).  In combination, the obstacle is insurmountable.[57]

81.      Judge Pickholz' bias is intentional.  During trial, Judge Pickholz grew frustrated with my reaction to witness Officer Mullins.[58]  Tr. 894.  Thereafter, Judge Pickholz admonished me; *snarling* at the end of the statement "*I will embarrass you*."  Unfortunately, the court record only reads: "If I see or hear of anything like this again, your client is —— —".  Tr. 895, lines 7-8. The sentence ends *failing* to record Her Honor's loss of temper.

82.      When I attempted to substantiate my claims regarding the district attorney's office, Judge Pickholz repeatedly told the jury that "*crime is not on trial*."  Tr. 947.[59]  Statements designed to discredit the arguments within my social media posts.  Statements the Judge, would later regard as "*fake*."

83.      Jury members react in disbelief at illogical statements of ADA Monaco and Mrs. Putnam.  Thereafter, they were admonished.  Tr. 404-5.  Her Honor did this on repeat occasion. Tr. 564-569.  One jury member was admonished for forming an opinion, a normal human function. He was thereafter threatened with dismissal.  Jurors, obviously reacting to the constitutional violation, Her Honor repeatedly told the jury that "*[she] will tell them the law.*"

84.      During trial, there is repeat discussion regarding the effect of the social media posts on Mrs. Putnam's career from multiple witnesses (ADA Monaco, see paragraph 43 herein and Tr. 408; and Mrs. Rowe, see paragraphs 43 and 62 and Tr. 68; Mrs. Putnam Tr. 652 "**Q**: *How did it make you feel*?  **A**: "*Scared about my career and personal life.*").  However, prior to my testimony,

---

[57] Imagine Sen. Diane Feinstein post stroke.
[58] I grew frustrated because I had seen one of Mullins emails wherein he express racial animus and disdain for the content of the posts.  His sole complaint was the topic of the subject matter concerning race.  He then later got on the stand and said that watching people say that a video of me being assaulted by Mrs. Putnam, some how made them feel threatened because the public reaction was negative.
[59] This statement is repeated by Judge Pickholz during trial, yet strangely absent from the record.  We know this statement was made, because ADA Perlman makes note of Her Honor's prior saying on page 947.

Judge Pickholz determined I would not be allowed to discuss the effect of the criminal justice system on my own personal career. Tr. 951. This decision demonstrates profound bias.

85.    The question of "the affect to your career" is not of relevance to criminality. It is not necessary for complainants to discuss. However, the question of affect to my career is the exact topic of discussion from the social media followers. It is a relevant discussion point in terms of validating the points contained within the posts. Take for example TikTok user oopen15oo, who commented on April 23, 2020, "*hopefully she got out. messed up that people will try to ruin your life when they dont get their way*" (191 likes). Attached hereto as **Exhibit DD**. Or the comment from TikTok user shmoopetdoopey, on August 17, 2020, "*she knows what will happen to you if the cops come she is trying to destroy your life. white women always trying to play victim.*" Attached hereto as **Exhibit EE**.

86.    Judge Pickholz' decision to permit Mrs. Putnam to discuss the effect on her career substantially biased the jury by making them think that an "*effect to Mrs. Putnam's career*" was an actionable offense; when it is not. It biased the jury against myself, petitioner, because I was unable to substantiate the substance of my posts. Eroding my credibility.

87.    After repeatedly impairing my ability to substantiate the points made in my social media posts, Judge Pickholz later holds that the content of the posts is "*fake.*" Even though the determination of *fake* is erroneous to the determination of criminality. Judge Pickholz fabricates this record in order to create a false *counter-narrative* in concealment of the prior public criticism of ADA Monaco and Mrs. Putnam.

88.    In Judge Pickholz' charge to the jury, she instructed that I, Petitioner, was the only interested party. Tr. 1,195. An obvious falsehood. All complainants had recognized the effect of the content on the careers. Mrs. Putnam specifically noted at trial, should the People be successful

at trial, it would enable her to pursue reimbursement of court fees.  A clear financial interest.  Tr. 613.  Again, Judge Pickholz is operating with a stated bias intended influence the jury.

89.    When private attorney, Annie Seifullah, was reported to Judge Pickholz by a bailiff for jury tampering, Judge Pickholz dismissed it as "*I'm sure you didn't mean that…*"  Tr. 671.

90.    I was not permitted to introduce evidence validating any of the claims within the social medial posts.  I was not permitted to introduce any evidence to combat the accusation that the posts were *fake*.  Tr. 761, *see also* paragraph 82 above.  Multiple emails of ADAs acknowledging my actions were constitutionally protected.  Emails wherein prosecutors acknowledge reputational concern.

91.    Judge Pickholz is beyond the court's jurisdiction.  Interfering with the discussions of private citizens;  regulating *gossip*.  June 28, 2024, I sought modification of the protective order to enable my free speech regarding the State use of "*lawfare*" to censor me. Attached hereto as **Exhibit FF**.  DA Bragg was scheduled to speech before the US Congress regarding questionable use of the criminal apparatus related to Fromer President Donald Trump.  I thought my experience was similar and that government officials would appreciate my perspective.   After Peoples Response in opposition, attached hereto as **Exhibit GG**, Judge Pickholz denied this request. **Exhibit HH**.  Judge Pickholz gave no thought to the opinion.  She in large part *copied and pasted* the motion of the People.[60]  Judge Pickholz put no thought or effort to reconcile truth from fact; to reconcile the constitutional violations.

92.    Judge Pickholz has abused power to not just violate my rights, but the rights of unsuspecting third parties.  Judge Pickholz has issued orders to social media companies to have posts that other people have made in support of me, taken down off social media, without any due

---

[60] Please see attached a redline compare of Judge Pickholz decision, against the motion of the People.  **Exhibit II**.

process to those individuals. Attached hereto as **Exhibit JJ**. These individuals were unaware of these court proceedings, and experience censorship without any due process.

93.     In the past months, I have increased my public commentary on this issue, commenting on the Instagram public social media page of District Attorney Alvin Bragg. I have commented on his posts, at one point gaining the attention of Republican Presidential Candidate, Donald J. Trump. I have tagged DA Bragg alongside posts regarding members of his office. I have even emailed DA Bragg to ensure that he is aware the misdeeds of his agents.

94.     I have sought confirmation from DA Bragg regarding if my first amendment right will be respected. Radio silence from the district attorney's office. However, in that time my probation assessment has been increased from medium, to high. And I was recently detained for 5 hours, on October 17, 2024. The stated reason was because Judge Pickholz keep running into me in Murray Hill and feels concerned. I live on 36th street. Juge Pickholz lives on 65th street. She ran into me on 34th street, and 36th (corner of my apartment building on 3rd avenue). For Her Honor to claim concern regarding coincidental run-ins in my neighborhood (not her neighborhood), is the epitome of "*Karen*."

95.     October 28, 2024, I was ordered to the court of the Hon. Josh Hanshaft, New York Supreme Court, Criminal Term, Part 1, New York County, on the allegation of a parole violation. This was days after I filed an Article 78 Petition with the New York Supreme Court, Civil Term against the Defendant's listed herein. Judge Hanshaft admonished me for public statements regarding the Article 78 Petition, and threatened to put me in Riker's on a parole violation. Although having nothing to do with the matter before him, Judge Hanshaft issued a verbal order that I have no contact with Co-Conspirator's, ADA Lisa Del Pizo, ADA Stuart Silberg, ADA Erin Tierney, ADA Shira Arnow, Alexandra Wynne, Officer Thomas Mullins, and Officer Donya Bardliving.

Judge Hanshaft explicitly made clear that his court would consider public social media posts as an electronic direct communication to the Defendants.  Judge Hanshaft made clear his court had *lower standards* than a typical criminal trial.  After this court hearing, I inquired from Judge Hanshaft 's court attorney as to the appropriate means to serve the Defendants in the Article 78 Petition.  Judge Hanshaft's court declined to provide guidance.  See attached hereto **Exhibit KK**.

**CAUSE OF ACTION**

96.    Plaintiffs reallege and incorporate by reference all previous paragraphs as though fully set forth herein.

97.    Defendants, acting under color of law, has engaged in actions that deprived Plaintiffs and the class of their rights secured by the Constitution, including the right to free speech, due process, equal protection, and the right to a fair and impartial tribunal.   As a result of Defendants' actions, Lead Plaintiff and class members have suffered harm, including but not limited to unlawful detention, surveillance, denial of fair hearings, emotional distress, interference with freedom of association, and economic losses.

### I.    *District Atty. Alvin Bragg*

98.    Plaintiffs, bring this action against Defendant, District Attorney Alvin Bragg, in his official and individual capacities, alleging that, while acting under color of state law, Defendant Bragg deprived Plaintiffs of constitutional rights, including:

    a.  **First Amendment** rights, to free speech, by engaging in actions to suppress Plaintiffs' lawful speech on matters of public concern; and

    b.  **Fourteenth** Amendment rights, to due process and equal protection, through purported misuse of prosecutorial powers and failure to provide a fair and impartial application of the law.

### a)  First Amendment

99.    Plaintiffs allege that District Attorney Bragg, directly and through his subordinates, pursued actions that limited Plaintiffs' ability to exercise free speech regarding criticisms of public officials and prosecutorial misconduct.  Plaintiffs contend that Defendant Bragg's office misused court orders, protective orders, and other legal mechanisms to censor Plaintiffs' social media posts and other expressions of public concern regarding misuse of the criminal apparatus, in violation

36

of Plaintiffs' First Amendment rights. In *City of Houston v. Hill*, 482 U.S. 451 (1987), the Supreme Court held that government restrictions on speech directed at public officials are suspect and may violate the First Amendment. "[T]he First Amendment requires that officers and municipalities respond with restraint in the face of verbal challenges to police action, since a certain amount of expressive disorder is inevitable in a society committed to individual freedom and must be protected if that freedom would survive." *Id*. at 452. Similarly, in *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992), the Court found that selective censorship based on viewpoint is impermissible under the Constitution. Defendant Bragg's actions allegedly censored public criticism and commentary by over a half a million persons, conduct that appears to violate these principles.

100.    Specific evidence shows that Lead Plaintiff's efforts to discuss alleged misconduct within the District Attorney's Office, particularly the conduct of ADA Mark A. Monaco, were repeatedly suppressed. For example, Plaintiff posted content criticizing racial dynamics and alleged prosecutorial bias on social media, which DA Bragg's office allegedly sought to restrict through the use of protective orders. This included removing posts from social media, impacting over 500,000 users who had engaged with the content by liking or commenting in support of Plaintiff's perspective on racial injustice and misconduct within Bragg's office. Plaintiff further contends that DA Bragg refused to engage in any dialogue about the alleged misuse of prosecutorial power and ignored requests to allow him to engage in political advocacy, particularly before Bragg's scheduled testimony to Congress on similar issues.

101.    Selective and Retaliatory Prosecution: Lead Plaintiff alleges that Defendant Bragg's office selectively targeted him for prosecution and issued repeated threats of additional charges based on protected speech. Lead Plaintiff contends that these actions constituted retaliatory conduct aimed at discouraging him from expressing viewpoints critical of the District Attorney's

Office, undermining his First Amendment rights and subjecting him to disparate treatment. In *Nieves v. Bartlett*, 587 U.S. ___ (2019), the Supreme Court recognized that plaintiffs could establish retaliatory prosecution if they can demonstrate objective evidence that the prosecution was selectively motivated by protected speech. Likewise, *Hartman v. Moore*, 547 U.S. 250 (2006), emphasizes that a retaliatory prosecution claim requires a lack of probable cause, and a causal connection between the prosecution and the protected speech. DA Bragg's Office executed prosecution only after the speech began to focus on ADA Monaco. Additionally, *United States v. Armstrong*, 517 U.S. 456 (1996), underscores that selective prosecution violates the Constitution if similarly situated individuals are treated differently based on protected criteria, such as the exercise of free speech.

102.    Evidence suggests that Bragg's office pursued charges only after Lead Plaintiff's social media activity began explicitly focusing on ADA Monaco's alleged misconduct, drawing public attention to a racially charged incident. During this period, Plaintiff received threats that further social media posts would result in new charges, which were later pursued. For example, ADA Monaco allegedly ordered the seizure of Plaintiff's electronic devices after Plaintiff created Instagram accounts spotlighting Monaco's conduct during the height of public scrutiny on issues of racial justice in 2020. The charges were filed following months of Plaintiff's posts addressing ADA Monaco's alleged abuse of prosecutorial power, specifically calling attention to what Plaintiff described as a "Karen" narrative involving Monaco and a witness, Ms. Putnam.

103.    These cases establish that government officials cannot use prosecutorial power to target individuals based on their critical viewpoints or expressions. In *Lozman v. City of Riviera Beach*, 585 U.S. ___ (2018), the Court held that a retaliatory arrest could be actionable if motivated by clear government animus against protected speech, even in the presence of probable cause.

Similarly, *Colson v. Grohman*, 174 F.3d 498 (5th Cir. 1999), emphasizes that government officials cannot use their authority to intimidate or retaliate against individuals exercising First Amendment rights. Defendant Bragg's actions were intended to chill Plaintiffs' speech and to deter them, and others, from engaging in public discourse regarding the Mark A. Monaco Cover-Up and prosecutorial misconduct, conduct impermissible under established constitutional protections.

104.    DA Bragg's office allegedly increased Plaintiff's probation assessment and detained him without justification as a response to Plaintiff's political speech. The detention took place shortly after Plaintiff's high-profile Instagram posts gained attention from public figures, including Donald Trump. Moreover, Bragg's office maintained "radio silence" despite Plaintiff's requests for clarity on whether his First Amendment rights would be respected, contributing to a chilling effect on Plaintiff's speech.

b)  Fourteenth Amendment

105.    Abuse of Prosecutorial Discretion and Due Process Violations: Lead Plaintiff contends that Defendant Bragg, as District Attorney, was responsible for supervising and endorsing prosecutorial actions that allegedly deprived Lead Plaintiff of due process. Specifically, Lead Plaintiff alleges that the District Attorney's Office knowingly pursued charges without adequate legal basis and issued misleading or false statements in court to further an unjust prosecution. Lead Plaintiff claims that these actions were arbitrary and capricious, constituting an abuse of discretion and a violation of his Fourteenth Amendment due process rights. In *Mooney v. Holohan*, 294 U.S. 103 (1935), the Supreme Court held that the use of false evidence by prosecutors violates due process, especially where the evidence is knowingly used to convict. Similarly, *Napue v. Illinois*, 360 U.S. 264 (1959), affirmed that a prosecutor's duty is to seek

justice, not merely convictions, and that due process is violated when a prosecutor knowingly allows false testimony.

106.    Lead Plaintiff's claims that Defendant Bragg's office engaged in arbitrary prosecution with misleading evidence align with the standards set forth in these cases, supporting an alleged due process violation. Evidence indicates that Bragg's office, in an attempt to secure conviction, introduced statements that they knew to be false, including altered witness testimony. Additionally, documentation in court records shows that exculpatory evidence, such as text messages exchanged between witnesses, was withheld in order to strengthen the prosecution's case against Plaintiff. Such actions exemplify the kind of conduct that the *Mooney* and *Napue* decisions recognized as fundamentally unjust and violative of due process.

107.    Failure to Supervise and Address Misconduct: Plaintiff alleges that Defendant Bragg failed to prevent or address ongoing misconduct by subordinates, including Assistant District Attorneys under his supervision, despite knowing or having reason to know about their actions. Plaintiffs' claim that this failure to supervise allowed prosecutorial misconduct, including intimidation and suppression of evidence, to continue unchecked, depriving Lead Plaintiff of fair treatment and violating his due process and equal protection rights. The Supreme Court in *Connick v. Thompson*, 563 U.S. 51 (2011), emphasized that a failure to supervise or train prosecutors, when there is a known risk of constitutional violations, can lead to liability if the failure results in due process violations. Similarly, *Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992), established that supervisory officials may be liable when their deliberate indifference to subordinates' misconduct allows constitutional violations to occur.

108.    Here, emails obtained through discovery indicate that Bragg's office was aware of problematic actions taken by Assistant District Attorneys, including the suppression of potentially

exculpatory evidence and attempts to intimidate witnesses critical of the prosecution. Despite these indications, Defendant Bragg allegedly failed to implement corrective measures or address the conduct of ADA Monaco and others. This ongoing neglect to supervise and address misconduct reflects a pattern of supervisory disregard that aligns with the principles in *Connick* and *Walker*, underscoring liability under a theory of supervisory neglect.

109.    Equal Protection Violations: Plaintiff contends that District Attorney Bragg's conduct, including the selective prosecution and failure to prevent prosecutorial overreach, demonstrates a disregard for equal protection of the laws. Plaintiff alleges that Defendant's actions were motivated, at least in part, by an intent to shield public officials and favored interests from criticism, thereby treating Plaintiff differently from others in similar circumstances. In *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), the Supreme Court held that unequal application of the law, based on arbitrary classifications or biases, violates the Equal Protection Clause of the Fourteenth Amendment. Similarly, in *Wayte v. United States*, 470 U.S. 598 (1985), the Court recognized that selective prosecution based on arbitrary or discriminatory criteria is constitutionally suspect.

110.    Plaintiffs claim that DA Bragg selectively prosecuted and targeted speech critical of racism and the district attorney's office.  Bragg's office allegedly pursued charges against Lead Plaintiff only after Plaintiff began publicly discussing ADA Monaco's alleged misconduct and racial discrimination, while other individuals similarly engaged in public criticism were not subjected to prosecution.  This differential treatment suggests a discriminatory intent to suppress speech that criticizes public officials, which aligns with the principles set forth in *Yick Wo* and *Wayte*, supporting an equal protection violation claim under the Fourteenth Amendment.

## II.   *ADA Mark A Monaco and Co-Conspirators*

111.   Plaintiffs bring this action against Defendant Assistant District Attorney Mark Anthony Monaco and Co-Conspirators—specifically, ADAs Lisa Del Pizo, Stuart Silberg, Erin Tierney, Shira Arnow, Alexandra Wynne, and Officers Thomas Mullins and Donya Bardliving—in their individual and official capacities.  Plaintiffs alleges that these Defendants acted in concert and under color of state law to deprive their constitutional rights, including:

    a.  **<u>First Amendment</u>** rights to, through actions aimed at suppressing and intimidating Plaintiffs' lawful free speech on matters of public concern;

    b.  **<u>Fourteenth Amendment</u>** rights to due process, through alleged misuse of prosecutorial powers and manipulation of court proceedings;

    c.  **<u>Fourteenth Amendment</u>** rights to equal protection, through targeted, discriminatory treatment and intimidation (based on race) in retaliation for Plaintiff's exercise of his constitutional rights.

### a)  <u>First Amendment</u>

112.   Plaintiffs allege that Defendant Monaco and Co-Conspirators conspired to limit their ability to exercise First Amendment rights by utilizing court orders, threats of prosecution, and manipulation of court records. Plaintiffs contend that Defendants issued protective orders and other legal actions to restrict his ability to post or speak on social media about the misconduct of public officials and racial issues, violating their right to free speech and association. In *Elrod v. Burns*, 427 U.S. 347 (1976), the Supreme Court held that government officials cannot retaliate against individuals for their political beliefs, as it infringes on their First Amendment rights to free speech and association. Furthermore, in *City of Houston v. Hill*, 482 U.S. 451 (1987), the Court struck down a law that criminalized certain types of speech directed at public officials,

emphasizing that government actions restricting critical speech about officials are constitutionally suspect. Additionally, *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992), supports the principle that government actions targeting specific viewpoints are impermissible under the First Amendment, bolstering Plaintiffs' claims that Defendants' use of protective orders to limit critical speech violated their constitutional rights.

113.    Specifically, Plaintiffs allege that Defendant Monaco initiated prosecution against Lead Plaintiff as soon as the social media posts about misconduct within the District Attorney's Office became publicly viewable.  This included specific threats made by ADA Monaco, through Lead Plaintiff's then-attorney, David Jeffries, warning that further posts would lead to escalated legal consequences despite a lack of any legitimate criminal basis for such actions.  For example, Monaco's actions were allegedly motivated by concern over racial implications and the public's perception of alleged "*Karen*" behavior by a key witness, who was depicted using racial privilege in a video shared by Lead Plaintiff.  Defendant Monaco's suppression efforts increased as the 2020 civil rights protests related to George Floyd and Amy Cooper unfolded, given the comparable issues of racial bias portrayed in Lead Plaintiff's posts.

114.    Plaintiffs allege that Defendant Monaco, in collaboration with other Co-Conspirators, engaged in retaliatory actions aimed at discouraging Lead Plaintiff from publicizing critical information about Defendant Monaco's actions and alleged misconduct within the District Attorney's Office.  Lead Plaintiff contends that Monaco and his co-defendants threatened Lead Plaintiff with additional arrests and charges, targeting him solely for his viewpoints and protected speech, in violation of his First Amendment rights.  In *Hartman v. Moore*, 547 U.S. 250 (2006), the Supreme Court established that plaintiffs claiming retaliatory prosecution must show that the retaliation was motivated by their protected speech and not supported by probable cause.

Additionally, *Nieves v. Bartlett*, 587 U.S. ___ (2019), reaffirmed that government officials cannot pursue retaliatory charges based on an individual's protected speech, particularly when objective evidence of retaliatory motives exists. Moreover, *Heffernan v. City of Paterson*, 578 U.S. 266 (2016), emphasizes that even perceived political speech is protected, and government officials are prohibited from retaliating based on an individual's viewpoints. These cases underscore that the threats of additional arrests and charges against Lead Plaintiff for publicizing critical information about Monaco's actions violate core First Amendment protections against retaliatory conduct.

115.    Supporting this claim, evidence from court records and witness testimony indicates that Monaco was primarily concerned with the racial implications of the posts and the threat they posed to his public image. Email evidence demonstrates Monaco's active involvement in crafting a narrative that excluded the racial bias allegations and focused instead on portraying Lead Plaintiff's social media activity as a "threat" to the employment status of the witness portrayed in the videos. Lead Plaintiff alleges that Monaco coordinated with his mother, Rose Marie Monaco, and several other district attorney staff members to fabricate statements and manipulate court filings, masking the retaliatory motives of his prosecution efforts.

b) <u>Fourteenth Amendment</u>:
Due Process

116.    Plaintiffs assert Defendants ADA Monaco and Co-Conspirators, knowingly fabricated evidence, and presented false information in multiple courts. Defendants ADA Monaco and Co-Conspirators withheld exculpatory evidence from Lead Plaintiff (bar letter). Plaintiffs contends that Defendants tampered with witness statements, manipulated evidence, and coordinated false testimony to further an unjust prosecution against him. These actions, Lead Plaintiff argues, deprived him of his Fourteenth Amendment right to a fair trial and constituted a violation of due process. In *Napue v. Illinois*, 360 U.S. 264 (1959), the Supreme Court held that

the knowing use of false testimony by the prosecution violates a defendant's due process rights, as it undermines the integrity of the judicial process. Similarly, *Brady v. Maryland*, 373 U.S. 83 (1963), established that withholding exculpatory evidence violates due process and deprives the defendant of a fair trial. Additionally, in *Mooney v. Holohan*, 294 U.S. 103 (1935), the Court held that due process is violated when a conviction is obtained through the deliberate use of perjured testimony and fabricated evidence.

117.    Plaintiff alleges that Defendant Monaco and Co-Conspirators altered witness statements and selectively presented evidence to exclude exculpatory details, including statements from a key witness that conflicted with the prosecution's narrative.  Internal communications within the District Attorney's office allegedly reveal that Monaco was aware of inconsistencies in witness testimonies but instructed subordinates (at the consent of superior Co-Conspirators) to ignore or suppress these details to maintain a strong case.  The alleged alteration and suppression of exculpatory evidence, coupled with fabricated witness statements, reflect a clear due process violation under the standards set forth in *Napue*, *Brady*, and *Mooney*.

118.    Abuse of Prosecutorial Discretion and Equal Protection Violations:  Plaintiffs alleges that Defendant Monaco and Co-Conspirators selectively targeted him for prosecution and used their authority to protect personal and professional interests, rather than upholding impartial justice. Plaintiff asserts that Defendants' actions were motivated by bias and favoritism, resulting in disparate treatment that violated his right to equal protection under the law. In *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), the Supreme Court held that the arbitrary application of laws in a discriminatory manner violates the Equal Protection Clause, emphasizing that the law must be applied impartially. Furthermore, *Wayte v. United States*, 470 U.S. 598 (1985), held that selective prosecution based on discriminatory or retaliatory motives can violate equal protection rights.

119.    Plaintiff contends that Monaco's office specifically pursued charges against him while ignoring similar conduct by individuals aligned with Monaco's professional circle. Evidence indicates that Monaco's office dismissed charges against another individual involved in the same incident after learning of the individual's connections within the local government. This selective prosecution, allegedly motivated by personal and political interests, demonstrates favoritism that aligns with the discriminatory application of laws condemned in *Yick Wo* and *Wayte* and constitutes an equal protection violation under the Fourteenth Amendment.

120.    Coercion and Intimidation of Witnesses: Plaintiff contends that Defendant Monaco and certain Co-Conspirators coerced witnesses, including Plaintiff's former partner, into providing false testimony. Plaintiff claims that Defendants threatened witnesses with legal consequences or other repercussions to secure testimony that would support their case against him, further violating his due process rights and undermining the integrity of the proceedings. In *United States v. Hasting*, 461 U.S. 499 (1983), the Supreme Court recognized that prosecutorial misconduct, including improper influence over witnesses, can undermine the integrity of the judicial process and deprive a defendant of a fair trial.  Additionally, in *Webb v. Texas*, 409 U.S. 95 (1972), the Court held that excessive intimidation or coercion of witnesses by government officials violates due process by affecting the fairness of the trial.

121.    Plaintiff claims that Monaco's office leveraged potential criminal charges against witnesses who were reluctant to testify against Lead Plaintiff.  Mrs. Putnam was threatened with perjury charges unless she agreed to cooperate with ADA Monaco.  Such coercive tactics, which allegedly pressured witnesses to change their testimonies, violated Lead Plaintiff's right to a fair trial as established in *Hasting* and *Webb* by undermining the integrity of the proceedings through witness intimidation.

122.    Conspiracy to Deprive Constitutional Rights: Plaintiffs allege that Defendants knowingly conspired to deprive him of his constitutional rights by coordinating actions designed to intimidate, silence, and unjustly prosecute him. Plaintiff contends that each Defendant acted in furtherance of this conspiracy, violating 42 U.S.C. § 1983 and § 1985 (conspiracy to interfere with civil rights), with the shared goal of silencing Plaintiffs and suppressing their collective, and individual, public criticisms. In *Dennis v. Sparks*, 449 U.S. 24 (1980), the Supreme Court held that private parties conspiring with government officials to deprive an individual of constitutional rights can be held liable under § 1983. Additionally, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970), held that government officials and private parties could be liable under § 1985 for conspiring to violate an individual's civil rights.

123.    Plaintiffs alleges that Monaco, with support from Co-Conspirators, coordinated a campaign of intimidation and misinformation to prevent him from exercising his First Amendment rights to criticize the DA's office.  Internal emails and messages among Defendants reveal discussions about using Protective Orders and fabricated charges as tools to silence Plaintiffs' public critiques. This coordinated effort, involving deliberate suppression of Plaintiffs' speech and retaliation through legal measures, aligns with the type of conspiracy to deprive rights as described in Dennis and Adickes, supporting Plaintiff's claims under §§ 1983 and 1985.

### III.    *Hon. Ruth Pickholz*

124.    Plaintiffs bring this action against the Hon. Ruth Pickholz in her official and individual capacities, alleging that, while acting under color of New York state law, Defendant deprived Plaintiffs of constitutional rights, including, but not limited to:

    a. **<u>First Amendment</u>** rights, by issuing orders targeting speech based on subject matter, limiting Plaintiffs' ability to exercise free speech on social media platforms

and engage in protected speech on matters of public concern, in interference with freedom of association between Plaintiffs;

b. **<u>Fourteenth Amendment</u>** rights to equal protection, by restricting discussion and public scrutiny on issues concerning race, thereby inhibiting Plaintiff's equal protection on the basis of race;

c. **<u>Fourteenth Amendment</u>** rights to due process, by issuing biased rulings and obstructing Plaintiff's ability to present their case and defend against criminal charges fairly on the basis of race and gender; and

d. Constitutional bedrock notions of **<u>Separation of Powers</u>**.

a) <u>First Amendment</u>

125.    Plaintiffs allege Judge Pickholz improperly restricted freedom of speech by issuing orders targeting matters (outside of constitutional exceptions) on social media. The barred subject matter concerned race and governmental misconduct within the District Attorney's Office. These orders were issued purposely in violation of the First Amendment, and the restrictions were not justified by a legitimate government interest. In issuing these orders, Judge Pickholz allegedly abused her discretion with the specific aim of silencing Plaintiffs, constituting Deprivation of Rights Under Color of Law (18 U.S.C. § 242) and Official Misconduct under New York Penal Law § 195.00. Furthermore, Plaintiffs argue that Judge Pickholz' orders served to control the public narrative by prohibiting speech critical of the government, particularly speech that exposed issues of racial bias and prosecutorial misconduct within ADA Monaco's office.

126.    In *Packingham v. North Carolina*, 582 U.S. 98, 137 S. Ct. 1730 (2017), the Supreme Court struck down a law restricting access to social media, finding that such broad limitations on online speech violate the First Amendment. The Court emphasized that social media

platforms are "the modern public square," where individuals must be free to express their viewpoints. Similarly, in *Matal v. Tam*, 582 U.S. 218, 137 S. Ct. 1744 (2017), the Court ruled that viewpoint discrimination is prohibited under the First Amendment, underscoring that the government may not suppress expression merely because it is critical or controversial. Plaintiffs argue that Judge Pickholz' orders targeting Plaintiffs' social media posts concerning government misconduct and race-related issues reflect unconstitutional viewpoint discrimination. By restricting speech on issues of racial justice and governmental accountability without a substantial government interest, Judge Pickholz' actions violate core First Amendment protections.

127.    Judge Pickholz has used the power of the court to remove social media posts of unrelated third parties who have advocated positions in support of me. Not one of these individuals was granted due process. Judge Pickholz' actions were retaliatory, intended to silence Plaintiffs and prevent discussion regarding matters related to the ADA Monaco Cover-Up, broader prosecutorial misconduct, and racial bias within the District Attorney's Office. This conduct, is unconstitutional retaliation for exercising protected First Amendment rights.

128.    The Supreme Court in *Lozman v. City of Riviera Beach*, 585 U.S. ___, 138 S. Ct. 1945 (2018), held that a retaliatory arrest can violate the First Amendment if the arrest was substantially motivated by the individual's protected speech, even in cases where probable cause exists. The Court recognized that government actors may not use their authority to silence dissent or retaliate against individuals based on their viewpoints. Similarly, *Reed v. Town of Gilbert*, 576 U.S. 155 (2015), emphasized that government actions based on the content or viewpoint of speech are "presumptively unconstitutional." Judge Pickholz' orders removing posts from third parties who expressed support for Lead Plaintiff or criticism of the DA's office were retaliatory actions that lacked any legitimate justification. This selective targeting of posts critical of public officials

or their conduct, Plaintiffs contend, violates the principles established in *Lozman* and *Reed*, as Judge Pickholz' actions appear to have been motivated by a desire to suppress criticism of government actors.

129.    In addition, in *Manhattan Community Access Corp. v. Halleck*, 587 U.S. ___, 139 S. Ct. 1921 (2019), the Court reiterated that even entities performing government functions cannot impose content-based restrictions on speech without a compelling justification. Plaintiffs argue that Judge Pickholz' orders to remove social media commentary by Plaintiff's supporters constitute an impermissible restriction on content, as there was no compelling reason for the orders beyond a desire to protect the DA's office from public criticism. This alleged retaliation against supportive viewpoints further compounds the First Amendment violation, as it seeks to silence both Plaintiff's and third parties' speech on issues of significant public concern.

b)  Fourteenth Amendment:
Equal Protection

130.    Plaintiffs contend Judge Pickholz' conduct demonstrated racial bias. Specifically, Plaintiffs allege that Judge Pickholz' rulings and conduct in the Underlying Conviction of Indictment No. 01389/21 intentionally ignored racially charged aspects of the trial. Plaintiffs argue that this omission of critical racial context was intended to preserve the public perception of the case for the Court and the District Attorney's Office. Plaintiffs argue this selective exclusion of race-related evidence amounted to a violation of the Fourteenth Amendment right to equal protection under the law, specifically on the basis of race.

131.    In *Batson v. Kentucky*, 476 U.S. 79 (1986), the Supreme Court held that racial bias in judicial proceedings, including during jury selection, violates the Equal Protection Clause. *Batson* established that even implicit racial bias undermines the fairness and integrity of the judicial process. Similarly, in *Flowers v. Mississippi*, 588 U.S. ___, 139 S. Ct. 2228 (2019), the

Court reiterated that courts must remain vigilant to address and prevent racial discrimination in the courtroom to uphold equal protection. Here, Plaintiffs allege that Judge Pickholz omitted or downplayed key racial elements in Plaintiff's trial, effectively skewing the proceedings and minimizing legitimate concerns about racial bias that were essential to the public's understanding of the case. These omissions, as argued, served to sanitize the racial aspects of the case and violated the equal protection principles outlined in *Batson* and *Flowers*.

132.    Judge Pickholz conveniently avoids discussion regarding racism—the focus of witness concern. Plaintiffs argue that this glaring omission demonstrates racial animus. Plaintiffs contend that Judge Pickholz' actions aligned with the known and expressed desires of the District Attorney's Office, including ADA Lisa Del Pizo, who allegedly sought to downplay or eliminate references to racial issues in court. Internal communications reportedly include emails in which Del Pizo expressed a desire to avoid race-related topics in the case, favoring a narrative that would not raise public questions about racial bias within the DA's office. Plaintiffs argue that by selectively omitting discussions of race, Judge Pickholz perpetuated a false narrative meant to shield the DA's office from scrutiny.

133.    In *Miller-El v. Dretke*, 545 U.S. 231 (2005), the Court found that intentional efforts to omit or suppress racial context or considerations in a criminal case violate equal protection principles. The case emphasized that racial bias need not be overt to trigger a constitutional violation; omissions, selective application of facts, or alignment with discriminatory practices can amount to constitutional violations if they create or uphold racial discrimination. Plaintiffs argue that Judge Pickholz' alignment with ADA Del Pizo's expressed preference to exclude racial topics reveals an intentional disregard for equal protection, reinforcing a discriminatory approach in violation of the Fourteenth Amendment.

134.     Stripping the public conscience of discussions concerning race deprives Black males of the opportunity to spread public awareness of data and anecdotal experiences that influence public impressions and policy. Plaintiffs argue that Judge Pickholz' actions prevented a meaningful dialogue on race by restricting discussions of racial context that would otherwise shed light on biases within the judicial system. In *Loving v. Virginia*, 388 U.S. 1 (1967), the Supreme Court emphasized that equal protection under the Fourteenth Amendment requires the law to reflect the realities of racial discrimination and the need for open discourse to address its effects. Additionally, in *Shelby County v. Holder*, 570 U.S. 529 (2013), the Court noted that racial context is central to understanding and remedying racial disparities, particularly in matters impacting public policy and justice.

135.     By allegedly stripping discussions of racial context from Plaintiff's case, Plaintiffs argue, Judge Pickholz' conduct effectively silenced important discourse on race-related injustice, depriving Black communities of the opportunity to highlight systemic discrimination. This deprivation of a platform for discourse, Plaintiffs assert, violates the equal protection principles that underscore the need to confront and address racial biases openly in the judicial process.

c)  <u>Fourteenth Amendment</u>:
Due Process

136.     Plaintiffs allege Judge Pickholz demonstrated bias, including by making prejudicial statements, improperly excluding evidence supportive of Plaintiff's defense, and dismissing arguments and evidence critical of the People's case without explanation. These actions violated their rights to an impartial tribunal and procedural due process. Judge Pickholz failed to consider relevant evidence or provide a fair trial environment. In *Tumey v. Ohio*, 273 U.S. 510 (1927), the Supreme Court held that due process guarantees the right to an impartial tribunal, prohibiting judicial conduct that demonstrates bias or undermines fairness.  Similarly, in *Ward v. Village of*

*Monroeville*, 409 U.S. 57 (1972), the Court emphasized that due process is compromised when a judge displays favoritism or prejudgment, impacting their ability to provide a neutral trial setting.

137.    Plaintiffs argue that Judge Pickholz selectively excluded key defense evidence and rejected arguments that would critically examine the prosecution's case, without providing justification.  This pattern of conduct, they claim, deprived them of a fair trial by creating an imbalanced evidentiary landscape.  By failing to consider all relevant evidence, Judge Pickholz allegedly undermined the procedural fairness required by *Tumey* and *Ward*, violating Plaintiffs' Fourteenth Amendment right to due process.

138.    Her Honor's rulings and findings do not make sense. Her Honor substitutes her personal impressions in place of facts. Her Honor's rulings are conclusory, devoid of substantiating substance. Plaintiffs contend that Judge Pickholz criminalized behaviors based on vague and unsupported social media interpretations, including terms such as "fake," without defining or substantiating them within legal concepts. In *Anderson v. Bessemer City*, 470 U.S. 564 (1985), the Court stated that judicial findings must be based on clear, substantiated evidence, rather than subjective impressions or unsupported conclusions. Additionally, *Mapp v. Ohio*, 367 U.S. 643 (1961), reinforces the principle that courts cannot rely on arbitrary or ambiguous standards when adjudicating criminal matters, as this would infringe on defendants' due process rights.

139.    Plaintiffs assert that Judge Pickholz relied on unfounded concepts, such as labeling Plaintiff's social media accounts as "fake" without evidence or a legal definition of "fake" to substantiate her determinations.  By using ambiguous terminology without precedent or factual basis, Judge Pickholz allegedly substituted subjective impressions for legal analysis, creating an arbitrary basis for her rulings that fails to meet due process requirements as discussed in *Anderson* and *Mapp*.

140.    Her Honor asserts the existence of 17 accounts, yet no record supports this claim. Plaintiffs contend that Judge Pickholz' determinations failed to meet the standard of "substantial evidence," which requires relevant evidence that a reasonable mind might accept as adequate to support a conclusion, as required under CPLR § 7803(4). There is no basis for Her Honor's determination of "fake." "Fake" is not a legal concept; it is not contained within legal dictionaries or prior case law. Plaintiffs argue that Judge Pickholz' conclusions are unsupported by any legal precedent.

141.    Under CPLR § 7803(4), judicial determinations must be based on "substantial evidence" — a standard requiring that decisions are founded on objective and relevant evidence. In *300 Gramatan Ave. Assoc. v. State Div. of Human Rights*, 45 N.Y.2d 176 (1978), the New York Court of Appeals clarified that "substantial evidence" is "proof within the whole record" that justifies a rational conclusion.  Here, Plaintiffs argue that Judge Pickholz' characterization of "fake" accounts lacks a factual or legal basis and does not meet the substantial evidence standard. Without any factual support for her determinations, Plaintiffs contend that Judge Pickholz' conclusions represent arbitrary decision-making that undermines the reliability and fairness required by CPLR § 7803(4) and *300 Gramatan Ave. Assoc.*

d)  <u>Separation of Powers</u>

142.    Plaintiffs allege that Judge Pickholz' actions have improperly restricted Plaintiff's First Amendment rights through repeated court orders that prohibit engagement with fellow citizens on social media regarding public matters. This alleged censorship extends beyond the Judge Pickholz' constitutional authority, violating the principle of *separation of powers*.  A violation of our collective democracy.  The judge's actions impaired Plaintiffs' collective ability to advocate within the legislative and executive branches for protective measures against such

judicial misconduct conduct. In *Soares v. Carter*, the New York Court of Appeals emphasized that "[t]he concept of the separation of powers is the bedrock of the system of government adopted by this State in establishing three coordinate and coequal branches of government, each charged with performing particular functions" (25 N.Y.3d 1011, 1013 [N.Y. 2015]).  By encroaching upon Plaintiffs' collective ability to petition other branches of government, Judge Pickholz' orders disrupt this balance.

143.    Qualified Immunity would ordinarily protect judicial decisions.  However, Judge Pickholz' conduct exceeds typical discretionary authority, weaponizing judicial powers to infringe upon Plaintiffs' free speech. In *Matter of Johnson v. Pataki*, the Court stated that "for abuse of lawful discretionary authority, the remedy as a rule lies with the people at the polls, or with a constitutional amendment, or with corrective legislation" (91 N.Y.2d 214, 223 [N.Y. 1997]). When judicial actions interfere with public dialogue and political recourse, Plaintiffs contend such actions transcend the Judge Pickholz' jurisdiction and the protection of qualified immunity.

144.    Lead Plaintiff has made multiple applications (including motion practice) to Judge Pickholz' court, seeking recognition of Lead Plaintiff's right to political speech and advocacy. However, Judge Pickholz' repeated denial of these applications has allegedly silenced Plaintiff's voice within the public sphere. According to *Marbury v. Madison*, 5 U.S. 137 (1803), the judiciary may not assume legislative powers or impose unconstitutional limitations on individuals' rights to petition the government—a separation that Plaintiff contends is essential for democracy.

145.    Improper Sealing and Protective Orders: Plaintiffs allege that Judge Pickholz issued sealing and protective orders without due process, severely limiting Plaintiffs' access to evidence vital for their defense.  Such actions, Plaintiffs argue, exceed the court's legitimate authority and obstruct public transparency, undermining the separation of powers.  The Supreme Court held in

*United States v. Nixon*, 418 U.S. 683 (1974), that judicial interference in executive branch affairs is limited, establishing a precedent for the limitations of judicial reach. Here, Plaintiffs assert Judge Pickholz' actions extend beyond the judicial function by barring public scrutiny and interfering with the Lead Plaintiff's right to access necessary defense materials.

## IV. *Hon. Curtis Farber*

### a) First Amendment

146.    Judge Farber has issued orders intended to suppress Plaintiffs' constitutionally protected speech. Plaintiffs allege that Judge Farber improperly limited Lead Plaintiff's ability to view and discuss critical evidence related to his case by issuing protective orders that restricted Lead Plaintiff's access to evidence essential to his defense. This restriction, Plaintiffs argue, not only limited Lead Plaintiff's capacity to evaluate and discuss the evidence but also infringed on his First Amendment right to engage in public discourse about alleged prosecutorial misconduct. Plaintiffs contend that these restrictions were issued without legitimate justification, aimed instead at suppressing criticism and shielding the case from public scrutiny.

147.    In *Packingham v. North Carolina*, 582 U.S. ___, 137 S. Ct. 1730 (2017), the Supreme Court emphasized the importance of social media as a modern public forum, where individuals must be free to engage in speech on public matters. Similarly, *Lozman v. City of Riviera Beach*, 585 U.S. ___, 138 S. Ct. 1945 (2018), held that retaliatory government action against an individual's speech on public issues could be unconstitutional, even if some basis for official action existed, if it was motivated by a desire to suppress critical expression. Here, Plaintiffs argue that Judge Farber's protective orders served no compelling government interest and were instead implemented to prevent Plaintiff from raising public awareness of alleged misconduct within the

District Attorney's office, aligning with the unconstitutional suppression of speech seen in *Packingham* and *Lozman*.

148.    Procedural Restrictions and Retaliation: Plaintiffs allege that Judge Farber's orders limited Lead Plaintiff's access to critical evidence, including a July 30, 2021 protective seal, which restricted Lead Plaintiff's view of evidence obtained during discovery in Indictment No. 01389/21. This evidence was only made available in the presence of Plaintiff's then-defense counsel, without allowing Plaintiff himself full access.  Plaintiffs argue that such restrictions not only impeded their trial preparation but also hindered their First Amendment right to speak on public matters, such as alleged evidence tampering by ADA Monaco.  The court's actions reflect an impermissible content-based restriction that contravenes *City of Houston v. Hill*, 482 U.S. 451 (1987), where the Supreme Court struck down government restrictions on speech directed at public officials, recognizing that such limits are "presumptively unconstitutional" when they suppress critical viewpoints.

b)  Fourteenth Amendment:
Due Process

149.    Judge Farber violated Plaintiffs' collective, and individual, rights to due process by limiting Lead Plaintiff's access to evidence and preventing Lead Plaintiff from mounting a full and fair defense.  Plaintiff asserts that Judge Farber's July 30, 2021 protective order restricted access to critical evidence by requiring that Lead Plaintiff review evidence solely in the presence of former defense counsel.  This restricted access hindered Lead Plaintiff's ability to evaluate and discuss the evidence independently, limiting his defense preparation and infringing on his due process rights.  In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that due process is violated when evidence material to the defense is withheld.  Plaintiff argues that Judge Farber's restrictions on evidentiary access compromised the fairness of the proceedings, obstructing a

complete and robust defense, in violation of his Fourteenth Amendment rights. As result, the People delay provision of key evidence. Judge Farber's order was the instrument provided to the People inhibit Lead Plaintiff's right to due process.

150.    Judicial Bias and Favoritism Toward Prosecution: Plaintiff alleges a pattern of judicial bias, as Judge Farber frequently sided with prosecutorial arguments without lawful grounds, limiting Lead Plaintiff's evidentiary access based solely on prosecutorial requests. Plaintiff asserts that this consistent favoring of prosecutorial interests violated the impartiality required under the Fourteenth Amendment. In *Tumey v. Ohio*, 273 U.S. 510 (1927), the Supreme Court underscored the necessity for an impartial tribunal, finding that due process is compromised when judicial bias or favoritism interferes with fairness. Further, *Ward v. Village of Monroeville*, 409 U.S. 57 (1972), affirmed that even the appearance of bias could undermine due process. Here, Plaintiff contends that Judge Farber's one-sided rulings deprived him of a fair trial environment, impeding the balanced consideration of defense evidence and arguments essential to due process.

151.    Failure to Provide Rationale for Decisions: Plaintiff contends that Judge Farber's denial of a motion to dismiss was arbitrary and capricious, as the judge failed to provide any substantive reasoning beyond a brief statement that the grand jury evidence was "legally sufficient" to support the charges. The Supreme Court in *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983), emphasized that judicial decisions must not be arbitrary but must include reasoning that enables meaningful review. Judge Farber's failure to articulate the basis for his rulings, particularly in the face of acknowledged issues with prosecutorial conduct, deprived Lead Plaintiff of a meaningful opportunity to challenge these decisions and understand the court's reasoning, violating procedural due process. By providing no detailed rationale, Judge Farber's

actions amounted to a denial of Lead Plaintiff's right to a transparent and accountable adjudication process.

### c) Fourteenth Amendment:
Equal Protection

152. Judge Farber violated Plaintiff's rights to equal protection by allegedly demonstrating bias and making rulings favoring prosecutorial interests without a lawful basis. Plaintiff claims that Judge Farber's decisions reflected consistent favoritism toward the prosecution, which deprived him of an impartial hearing. The Supreme Court in Yick Wo v. Hopkins, 118 U.S. 356 (1886), established that unequal application of the law based on arbitrary classifications or biases violates the Equal Protection Clause.  Similarly, in *Wayte v. United States*, 470 U.S. 598 (1985), the Court recognized that selective prosecution, if motivated by arbitrary or discriminatory criteria, is constitutionally suspect.  Here, Judge Farber's rulings systematically supported the prosecution's position, restricting Plaintiff's defense without legitimate justification. This bias violated the principles established in *Yick Wo* and *Wayte*, infringing on Plaintiff's Fourteenth Amendment rights.

153. Procedural Due Process Violations: Plaintiffs contend that Judge Farber's issuance of an overly restrictive protective order limited Lead Plaintiff's access to evidence necessary for mounting a defense, thus infringing upon Lead Plaintiff's procedural due process rights.  This protective order barred Lead Plaintiff from independently reviewing evidence critical to his case, allowing only limited, supervised access.  The Supreme Court in *Brady v. Maryland*, 373 U.S. 83 (1963), established that due process is violated when the government restricts access to evidence material to the defense.  Additionally, in *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Court emphasized that procedural due process requires fair access to essential evidence in judicial

proceedings. Judge Farber's restrictive evidence order impeded Lead Plaintiff's fair trial rights, aligning with due process violations outlined in *Brady* and *Mathews*.

154.    Infringement of Equal Protection Rights: Plaintiff further alleges that Judge Farber's conduct demonstrated disregard for equal protection by systematically favoring the prosecution, effectively discriminating against Plaintiff and denying him equal application of the law. This selective treatment, Plaintiff argues, undermined his Fourteenth Amendment rights. In *Miller-El v. Dretke*, 545 U.S. 231 (2005), the Court held that selective application of procedures or evidence exclusion that favors one party over another may demonstrate unconstitutional bias. Here, Plaintiff contends that Judge Farber's consistent ruling in favor of the prosecution without sufficient grounds constitutes a violation of equal protection under the Fourteenth Amendment, mirroring the constitutional concerns addressed in Miller-El.

## HARM AND DAMAGES

156.    Plaintiffs allege that the collective, and individual, actions of Defendants, DA Alvin Bragg, ADA Mark Monaco and Co-Conspirators, Judge Ruth Pickholz, and Judge Curtis Farber have caused substantial harm, including emotional distress, reputational and economic damage, infringement of constitutional rights, and limitations on Plaintiff's liberty:

157.    **Emotional Distress**: Plaintiffs have endured significant emotional distress due to Defendants' actions, including retaliatory threats, prosecutorial overreach, restrictive court orders, and biased rulings.  In *Carey v. Piphus*, 435 U.S. 247 (1978), the Supreme Court recognized that emotional distress resulting from constitutional violations is compensable.  Plaintiffs argue that DA Bragg's prosecutorial power, ADA Monaco's threats of prosecution, Judge Pickholz' restrictive speech orders, and Judge Farber's arbitrary rulings created an atmosphere of intimidation and fear, causing ongoing psychological harm and distress due to the perceived injustice in the proceedings.

158.    **Economic and Reputational Harm**:  Plaintiffs contend that Defendants' actions, including targeted prosecutions, restrictive court orders, and public limitations on Lead Plaintiff's speech, have caused extensive economic and reputational harm.  **Agents of Defendant DA Bragg have slandered Lead Plaintiff's name in courts, under cloak of immunity.  They have sought to alter the public record established freely and democratically by all Plaintiffs.  All while Plaintiffs have been silenced, prevented from correcting Defendant's lies.**  Plaintiffs argue that the public nature of their prosecution,  combined with efforts to remove social media posts critical of the District Attorney's Office, have damaged Plaintiff's professional reputation, reduced his standing in the community, and impaired his economic opportunities.

159.    **Chilling Effect on First Amendment Rights**: Plaintiffs allege that Defendants' actions, including selective prosecution, protective orders, and suppression of social media posts,

have had a chilling effect on Plaintiff's First Amendment rights to speak on matters of public concern. In *Elrod v. Burns*, 427 U.S. 347 (1976), the Supreme Court held that retaliatory government action against free speech is a violation of the First Amendment. Plaintiffs claim that the Defendants' actions have limited their capacity to discuss topics such as racial justice, prosecutorial misconduct, and judicial bias, curtailing their right to public advocacy.

160. **Loss of Liberty and Procedural Due Process Violations**: Plaintiffs argue that Defendants' actions collectively deprived Lead Plaintiff of liberty (on multiple occasion) and the right to a fair trial process. Judge Pickholz' restrictive orders, Judge Farber's limitations on access to evidence, and ADA Monaco's alleged false charges constrained Plaintiff's freedom and interfered with his ability to mount a robust defense. In *Brady v. Maryland*, 373 U.S. 83 (1963), the Court recognized that due process requires fair access to defense evidence, and *Mathews v. Eldridge*, 424 U.S. 319 (1976), emphasized procedural due process in legal proceedings. Here, Plaintiffs assert that the Defendants' actions obstructed due process, infringing upon Plaintiff's fundamental rights to a fair and just legal process.

161. **Infringement of Equal Protection Rights**: Plaintiffs contend that Defendants, particularly Judges Pickholz and Farber, demonstrated bias by consistently favoring prosecutorial arguments without a valid basis, leading to arbitrary and unequal application of the law. In *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), the Supreme Court held that unequal application of the law based on arbitrary classifications or biases violates the Equal Protection Clause. Plaintiffs argue that Defendants' actions, including biased rulings and selective restrictions, deprived Plaintiff of fair treatment, thus violating his Fourteenth Amendment rights.

162. **Suppression of Political Advocacy and Public Criticism**: Plaintiffs allege that Defendants, through various court orders and prosecutorial actions, suppressed Plaintiff's ability

to engage in political advocacy and public criticism.  Plaintiffs assert that Defendants' orders and actions silenced their attempts to share experiences of judicial and prosecutorial misconduct, chilling their speech and obstructing their advocacy on matters of significant public concern.

163.    Plaintiffs request compensatory damages to address the emotional, economic, and reputational harm suffered due to Defendants' actions.  Plaintiffs further seek injunctive relief to prevent future retaliatory and suppressive actions that infringe upon their constitutional rights.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs as a class request that this Court grant the following relief:

164.    Certify this case as a class action under Rule 23 of the Federal Rules of Civil Procedure.  Upon certification, Plaintiff, being *pro se*, will acquire litigation funding to secure adequate counsel.[61]

165.    Declare that Defendant's conduct violated the constitutional rights of Lead Plaintiff and the class.

166.    Award compensatory damages to Lead Plaintiff and the class in an amount to be determined at trial.

167.    Award punitive damages as permitted by law to deter future misconduct.

168.    Grant injunctive relief, including measures to prevent further violations pursuant to 28 U.S.C. §§ 2201 and 2202.

169.    Award reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

170.    Grant any other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

171.    Plaintiffs demand a trial by jury on all issues so triable.

Dated: New York, New York
        November 12, 2024

William Perry, *pro se*
210 East 36th Street
New York, NY 10016
wdperry@gmail.com
954-802-1334

Attachments:  **Addendum I**.

---

[61] Plaintiff is aware a *pro se* plaintiff may NOT represent a *class* action.

| Agency: NYPD | B | Incident # | Complaint # |
|---|---|---|---|

**Describe Victim's prior domestic incidents with this suspect** (Last, Worst, First):

P___ ___ she has never had any incidents w/P___

**Prior History**

If the Victim answers "yes" to any questions in this box refer to the NYS Domestic and Sexual Violence Hotline at 1-800-942-6906 or Local Domestic Violence Service Provider: (          )

| Has Suspect ever: | | | | |
|---|---|---|---|---|
| Threatened to kill you or your children? ☐ Yes ☑ No | | Is suspect capable of killing you or children? | ☐ Yes ☑ No | |
| Strangled or "choked" you? ☐ Yes ☑ No | | Is suspect violently and constantly jealous of you? | ☐ Yes ☑ No | |
| Beaten you while you were pregnant? ☐ Yes ☑ No | | Has the physical violence increased in frequency or severity over the past 6 months? ☐ Yes ☑ No | | |

Is there reasonable cause to suspect a child may be the victim of abuse, neglect, maltreatment or endangerment? ☐ Yes ☑ No

If Yes, the Officer must contact the NYS Child Abuse Hotline Registry # 1-800-635-1522.

| Was DIR given to the Victim at the scene? ☑ Yes ☐ No if NO, Why: | Was Victim Rights Notice given to the Victim? ☐ Yes ☐ No if NO, Why: |
|---|---|

**Signatures:**

| Reporting Officer (Print and Sign include Rank and ID#) | Supervisor (Print and Sign include Rank and ID#) |
|---|---|
| PO Negron 9/13467 | |

## STATEMENT OF ALLEGATIONS/SUPPORTING DEPOSITION

*Officers are encouraged to assist the Victim in completing this section of the form.

**Suspect Name** (Last, First, M.I)

PUTNAM    HANNAH

# Exhibit A

I, William D. Perry, (Victim/Deponent Name) state that on 5 / 4 / 18 , (Date)

at 210 East 36th Street, Apt 6M (Location of incident) in the County/City/Town/Village New York, NY of the State of New York, the following did occur: My former girlfriend, Hannah Claire Putnam, moved out approx. 2 weeks ago. She has taken the vast majority of her belongings out of the apt, but still has toiletries and less than 10 garments. B/c of the things she still has in the apt, she is demanding unrestricted access to my apt, and demanding that I give her the key to my apt back. When I allow her to collect her belongings, she never takes all her stuff. When she will also demand that I give the key back under threat of calling the police on me. The threat of police being called on me, leaves me feeling threated and harrassed in my space.

(Use additional page as need___)

False Statements made herein are punishable as a Class A Misdemeanor, pursuant to section 210.45 of the Penal La___

| Victim/Deponent Signature | Date 4/4/18 |
|---|---|
| Witness or Officer Signature | Date 5/4/2018 |
| Interpreter Signature and Interpreter Service Provider Name | Date |
| Interpreter Requested ☐ Yes ☐ No  Interpreter Used ☐ Yes ☐ No | |

VICTIM / COMPLAINANT COPY

**Note:** Whether or not this form is signed, this DIR Form will be filed with Law Enforcement.

Pag___

**New York State**
**A | DOMESTIC INCIDENT REPORT**

| | |
|---|---|
| Incident # | |
| Complaint # | |

**Incident**

Agency: NYPD

| Reported Date (MM/DD/YYYY) | Time (24 hours) | Occurred Date (MM/DD/YYYY) | Time (24 hours) | ☐ Officer Initiated ☐ Radio Run ☐ Walk-in | |
|---|---|---|---|---|---|
| 08 / 05 / 2016 | 1020 | 08 / 04 / 2016 | 1000 | ☐ ICAD (NYC) | |

Address (Street No., Street Name, Bldg. No., Apt No.)
_____ 36 street

City, State, Zip
N.Y, N.Y

**Suspect (P2)**

Name (Last, First, M.I.) (Include Aliases)
PHAM, ANNAH C

Address (Street No., Street Name, Bldg. No., Apt No.)
WALKER Street in Jamica, N-1

City, State, Zip
N.Y, N.Y

| DOB (MM/DD/YYYY) | Age: |
|---|---|
| 06/23/90 | 25 |

☐ Female ☐ Male
☐ Self-Identified:

Suspect Phone Number:
917 650-2226

Language: ENGLISH
☐ Hispanic ☐ Non Hispanic ☐ Unknown

☐ White ☐ Black ☐ Asian
☐ American Indian ☐ Other

☐ Other Identifier:

| Do suspect and victim live together ? ☐ Yes ☐ No | Suspect/P2 present? ☐ Yes ☐ No | Was suspect injured? ☐ Yes ☐ No If yes describe: | Possible drug or alcohol use? ☐ Yes ☐ No | Suspect supervised? ☐ Probation ☐ Parole ☐ Not Supervised ☐ Status Unknown |
|---|---|---|---|---|

**Suspect (P2) Relationship to Victim (P1)** ☐ Married ☐ Intimate Partner/Dating ☐ Formerly Married ☐ Former Intimate Partner
☐ Parent of Victim (P1) ☐ Child of Victim ☐ Relative: ☐ Other:

Do the suspect and victim have a child in common? ☐ Yes ☐ No

**Victim Interview**

Emotional condition of **VICTIM**? ☐ Upset ☐ Nervous ☐ Crying ☐ Angry ☐ Other: App. Normal

What were the first words that **VICTIM** said to the Responding Officers at the scene regarding the incident?

# Exhibit A

Did suspect make victim fearful? ☐ Yes ☐ No If yes, describe:

**Weapon Used?** ☐ Yes ☐ No ☐ Other describe:

**Access to Guns?** ☐ Yes ☐ No If yes, describe:

**Suspect Threats?** ☐ Yes ☐ No If Yes, Threats to:
☐ Victim ☐ Child(ren) ☐ Pet ☐ Commit Suicide
☐ Other Describe: to call cops

| Injured? ☐ Yes ☐ No If yes, describe: | **Strangulation?** ☐ Yes ☐ No ☐ Loss of Consciousness ☐ Urination/Defecation |
|---|---|
| In Pain? ☐ Yes ☐ No If yes, describe: | ☐ Red eyes/Petechia ☐ Sore Throat ☐ Breathing Changed ☐ Difficulty Swallowing |
| | **Visible Marks?** ☐ Yes ☐ No If yes, describe: |

**Suspect**

What did the **SUSPECT** say (Before and After Arrest)? N/A

710.30 completed? ☐ Yes ☐ No

**Incident Narrative**

Briefly describe the circumstances of this incident: PX Girlfriend comes back to Apartment to get keys. P states they broke up P has moved out P returned key to P. P Htrasses P in regards to moving back in.

**Evid**

| DIR Repository checked? ☐ Yes ☐ No | Order of Protection Registry checked? ☐ Yes ☐ No | Order of Protection in effect? ☐ Yes ☐ No ☐ Refrain ☐ Stay Away |
|---|---|---|

| Evidence Present? ☐ Yes ☐ No | Photos taken: ☐ Victim Injury ☐ Suspect Injury ☐ Other: | Other Evidence: ☐ Damaged Property ☐ Videos ☐ Electronic Evidence ☐ Other: | **Destruction of Property?** ☐ Yes ☐ No If yes, Describe: |
|---|---|---|---|

**Offense**

| Offense Committed? ☐ Yes ☐ No | Was suspect arrested? ☐ Yes ☐ No If no, explain: Violation | Offense 1 # Harassment | Law (e.g. PL) | Offense 2 | Law (e.g. PL) |
|---|---|---|---|---|---|

VICTIM / COMPLAINANT COPY    NYS DOMESTIC AND SEXUAL VIOLENCE HOTLINE  1-800-942-6906    3221-03/2016 DCJS Copyright © 2016 by NYS DCJS

**3:04 PM** ◾ AT&T ▴ 35% ▬

< 2

+1 (929) 285-9728 ›

iMessage
Wed, Aug 8, 8:41 PM

**Exhibit A**

Good evening,

This is P.O. Candelario-Toth of the 17th Precinct Domestic Violence Unit. The complaint number for your report is 2018-17-003394. The domestic incident report number is 2018-017-000481. If you have any questions, I can be reached at 212.826.3210 or 929.285.9728.

Thank you.

Text Message
Thu, Aug 16, 2:06 PM

Hello Officer Candelario-Toth. I wanted to know what my options were for the few belongings that my ex has over my house. I want to pack them up, but I have a feeling she'll demand access to my apartment to search for any last things. Or say that I've kept something as trivial as toiletries. I

iMessage

  

      





+1 (929) 285-9728 ›

questions, I can be reached at
212.826.3210 or 929.285.9728.

Thank you.

**Text Message**
Thu, Aug 16, 2:06 PM

<span style="color:blue">Exhibit A</span>

Hello Officer Candelario-Toth. I wanted to know what my options were for the few belongings that my ex has over my house. I want to pack them up, but I have a feeling she'll demand access to my apartment to search for any last things. Or say that I've kept something as trivial as toiletries. I generally just concerned she'll play games, and I want to be in a position to move on and never have to deal with her or answer a text. It's just a couple shirts she has left.

She's moved out close to a month now. At what point are her belongings abandoned, and I can just throw them away?




iMessage











Exhibit B



Hannah ›

Jun 27, 2019, 6:18 PM

Hi

Hi

Hi

Hi

Hi

Hi

Hi

Congrats, Will

Jun 28, 2019, 2:15 PM



Jun 28, 2019, 5:42 PM





+1 (775) 250-2226 ›

Hi

Hi

Hi

Hi

Exhibit B

Hi

Hi

Hi

Congrats, Will

Today 2:15 PM



iMessage



+1 (775) 250-2226 ›

Today 5:42 PM



  

iMessage

      



5:45 PM



+1 (775) 250-2226 ›



Exhibit B

   

      



+1 (775) 250-2226



Exhibit B





+1 (775) 250-2226                    **...**



Friday 9:19 PM

I miss you

Exhibit B

Today 2:26 PM

I miss you so much

I'm so lonely without you

I can't stop crying

Message

Cool          Yea          No

Q W E R T Y U I O P

A S D F G H J K L

Z X C V B N M

123          space          return

Exhibit B



+1 (775) 250-2226 ›

I can't stop crying

Sunday 5:49 PM

Okay I'll leave you alone. Really sorry

**Text Message**
Today 7:08 PM



   iMessage  

      



‹ 255

hannahclaireputnam@gmail.com ›

I miss you so much.

I'm so lonely without you

I can't stop crying

Jun 30, 2019, 5:49 PM

Okay I'll leave you alone. Really sorry

**Text Message**
Jul 2, 2019, 7:08 PM



Downloading...
IMG_02081.jpg
0 bytes / 634KB

**iMessage**
Jul 10, 2019, 12:45 PM

I promised you I would tell you if I started dating. This is me telling you that I've started dating.

  

Exhibit D



3:18

**Comments 4559**     **Likes 292.1K**     ✕

rd_._

She is definitely dangerous and using her white privileged to act like a victim

2020-8-23  Reply

rd_._

It's the fact that she called the police KNOWING that he is a BLACK man and she is a WHITE woman....

2020-8-23  Reply

Exhibit E

 

292.1K

4404

**Comments 4404**        Likes 292063        ✕



**Lovebug**

What's scary is that you're more at risk when the police come, she knows that. If that's not abusive I don't know what is.

2020-8-11    Reply                    ♡ 6696    

—— View 45 replies



**Exhibit F**

+1 (914) 350-6653 ›

Text Message
Mar 11, 2021 at 7:40 PM

Hey William - it's Iris w/ Tahanie for DA. Manhattan needs a District Attorney who will invest resources into mental health treatment and education, not unchecked mass prosecution and incarceration. Reply remove to opt out. How strongly do you agree with that?

Mar 12, 2021 at 1:57 PM

100%

instagram.com

You should follow this story if you're looking to ding Cyrus Vance

Good luck!

AT&T    7:31 PM    9%

26

+1 (914) 350-6653 >    **Exhibit F**

Mar 12, 2021 at 1:57 PM

100%

instagram.com

You should follow this story if you're looking to ding Cyrus Vance

Good luck!

Great - that's why I am supporting Tahanie Aboushi for Manhattan District Attorney. Check out her platform here: https://www.tahanieforda.com/ Can I count on you to vote for her on June 22nd?

Mar 12, 2021 at 6:51 PM

You can count on my vote and publicity

Text Message

7:31 PM    8%

.ıll AT&T 

< 26



+1 (914) 350-6653 >    **Exhibit F**

Great - that's why I am supporting Tahanie Aboushi for Manhattan District Attorney. Check out her platform here: https://www.tahanieforda.com/ Can I count on you to vote for her on June 22nd?

Mar 12, 2021 at 6:51 PM

**You can count on my vote and publicity**

Awesome - thank you! Also apologies, but what is the context of that video in relation to Vance? Did this happen in Manhattan?

Mar 12, 2021 at 10:40 PM

**Ask Mark A Monaco**

Text Message

10:17

 

**Comments 183**    **Likes 6273**

Exhibit G



**stankystevie**
I'm a white woman. I'm so so sorry. This is abuse. Keep recording everything you can. Because police often take the women's side.
2020-8-21  Reply





**titanic_theme_scenes**
Domestic assault
2020-8-21  Reply





**pittypacifist**
Love how women get violent when they don't win
2020-8-21  Reply



Exhibit H

11:25 ◢

.ıll 🤶 ▭

‹                                                    Q

# Who is wrong here?
## Curious your thoughts.

**Comments 673**      Likes 14.5K                    ⇄    ✕



**jozet5275**

She is being violent & playing the victim. Once
she leave do not let her back in because if you
do she is going to get you put in jail for a long
time

2020-3-19  **Reply**

♡
1047

Exhibit I



**Comments 615**    Likes 13.6K

**lemonbee._.journalist**
you can hear him holding back tears....poor guy...❤️❤️
2020-5-1  Reply
Liked by creator

❤️ 2851

**xx..funnybear..xx**
Poor guy?!! 😳 I blame him. He handled this all wrong. It's obvious he dealt with her after he saw the crazy signs.
2020-8-21  Reply

🤍 3

**dinonugget669** ▸ xx..funnybear..xx
this is not his fault
2020-8-21  Reply

🤍 10

Exhibit J

2:09

TikTok

@first_one_1945

**Comments 150**     **Likes 6906**



**kayciesaydie**

if you cabt get along with this man? you feel unsafe then GO HOME  shes nuts

2020-8-21  Reply



**bed_bath_and_beyonce**

Female privilege is her assaulting you and then SHE calls the cops on you.

2020-8-20  Reply



Exhibit K

Exhibit L

11:36

Who is wrong here?
Curious your thoughts.

**Comments 673**  Likes 14.5K                    ✕

**kamehalani**
She is so abusive, gaslighting, threatening to
use authorities to manipulate, I am so sorry
2020-8-22  Reply

♡
6

**k8notkait**
Lol like we believe anything she says when
she's saying "let go of me" and isn't even
being touched.
2020-8-21  Reply

♡
5

**yourdadamleft**
Umm she just said you trapped me I can't
leave and she says u can force me to leave is
she even listening to herself
2020-8-20  Reply

♡
5

Exhibit M



Comments 442     Likes 13.9K

**oliviablue55**
I'm very afraid for you. I'm afraid she's going to get you killed. She's absolutely insane.
2020-8-21   Reply

**simp4kehlanii_**
Change your locks and put a restraining order out on her, she's mad crazy. Especially if she's not on the lease, she should've been out.
2020-8-21   Reply

**jazzzyyt**
it's cause ur colored bro so she uses her skin tone and cops to put fear in you. leave this woman alone!!!!
2020-8-21   Reply

**parisjay3**
White women
2020-8-21   Reply

**savannahlc6**
Please leave I would hate to see your face on the news..
2020-8-21   Reply

Reply to gvelazua

# Exhibit N

1:41

Comments 444        Likes 13.9K

 **iddybiddytiddycumiddy**
As a white woman, I see right thru her I know
what she's doing, purposely lying cuz the
cameras on and exaggerating it
2020-8-21  Reply


2

1:44 ⏀

.ıll 🛜 🔋

# Exhibit O

**Comments 444**    Likes 13.9K



**halynsdada10**

Would say send her this way she is pretty sexy but no self respecting white guy would touch her

2021-4-3  Reply

Exhibit P

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: Part 66

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK<br><br>-against-<br><br>William Perry,<br><br>Defendant(s). | SUPPLEMENTAL CERTIFICATE OF COMPLIANCE CPL § 245.50(1)<br><br>Ind. No. 01389/2021 |

Hannah Perlman, an Assistant District Attorney in the County of New York, states that, after exercising due diligence and making reasonable inquiries to ascertain the existence of material and information subject to discovery under CPL § 245.20(1), the People previously disclosed and made available to the defendant(s) all discoverable material and information known to the People at that time, except for items and information subject to an order pursuant to CPL § 245.70, barred from disclosure pursuant to federal law, or not in the People's actual possession despite good faith efforts and the exercise of due diligence.[1]

Since filing and serving a Certificate of Compliance pursuant to CPL § 245.50(1), the People provided additional discovery to the defendant(s) pursuant to CPL §§ 245.50(1) and 245.60. The annexed index identifies the supplemental items provided and, in accordance with CPL § 245.50(1-a), details the reasons for their delayed production.

### RESTATEMENT OF READINESS

☒ I hereby restate that the People are ready for trial in the above-referenced case.

Dated: New York, New York
          September 12, 2022

Respectfully submitted,

Alvin L. Bragg, Jr.
District Attorney
New York County

By: _____

Hannah Perlman
Assistant District Attorney
Of Counsel
(212) 335-9826

---

[1] The People's disclosures may include documents, information, and materials that are not required to be disclosed under CPL § 245.20(1) but which have been disclosed in an exercise of the People's discretion.

1

Exhibit P

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: TAP-B

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK<br><br>-against-<br><br>William Perry,<br><br>Defendant(s). | INDEX IDENTIFYING SUPPLEMENTAL DISCOVERY PROVIDED PURSUANT TO CPL §§ 245.50(1) & 245.60<br><br><br>Ind. No. 01389/2021 |

The following material and information were made available to defense counsel on the dates indicated and were delayed for the reasons set forth below:

**The following production was served via e-discovery program by ADA Hannah Perlman to Defense Counsel David Jeffries at djeffries@jeffrieslaw.nyc on May 13, 2022:**

1. Disclosures – Reason for delay: This category of materials is related to the prosecution of William Perry under Docket 2019NY009467, which was disposed of January 6, 2020.
   a. DAF_Bardliving_5.2.22
   b. Dunlavey, Gregory 505974 5.2.22 DAF
2. Family Court Transcripts – Reason for delay: The material or information did not exist when the Certificate of Compliance was filed and served
   a. 2020.08.18 Transcripts
   b. 2020.08.27 Transcripts
   c. 2020.11.04 Transcripts
   d. 2021.01.25 Transcripts
   e. 2021.03.23 Transcripts
   f. 2021.04.26 Transcripts
   g. 2021.08.12 Transcripts for Putnam v Perry, NY Family – Seifullah
   h. 2021.12.07 HanPut Transcripts Dec 7 2021 Putnam
   i. 2022.03.07 Transcripts - Putnam v Perry
3. NYPD Paperwork – Reason for delay: This category of materials is related to the prosecution of William Perry under Docket 2019NY009467, which was disposed of January 6, 2020.
   a. Aided Report 2019-017-812
   b. chain_of_custody
   c. Command Log Entry for Perry Arrest
   d. DV calls and visits

2

# Exhibit P

    e. invoice_1001194707
    f. Memo Book Entry for March 24 2019_Redacted
    g. Memobooks_Redacted
    h. Mugshot Profile -- M19612318
    i. NYPD Property Report for voucher
    j. NYSID-WILLIAM_PERRY
    k. Peeples Statement SIGNED
    l. Photo - Broken Phone (3)
    m. Photo – Mirror
    n. PO Ostrostky Texts_redacted
    o. rittenhouse memobook 3-17-3-18_Redacted
    p. Scratch Complaint -- comp 1037
    q. Universal Print Display
    r. Ostrosky Membook 3-17-19_Redacted
    s. ICAD

4. Other – Reason for delay: This category of materials is related to the prosecution of William Perry under Docket 2019NY009467, which was disposed of January 6, 2020.
    a. 2020.01.06 – Plea Minutes
    b. ADA Misc Notes
    c. Court Calendar
    d. Email from Hannah Putnam to Marc Monaco (Re. Timeline) - Copy_Redacted
    e. Perry Protective Order Application Ind. 01389-2021
    f. 2703D to FB

5. Proffer – Reason for delay: This category of materials is related to the prosecution of William Perry under Docket 2019NY009467, which was disposed of January 6, 2020.
    a. Proffer agreement – Signed
    b. Proffer Notes (1)
    c. Proffer Notes (2)
    d. Proffer notes

6. Whiteback – Reason for delay: This category of materials is related to the prosecution of William Perry under Docket 2019NY009467, which was disposed of January 6, 2020.
    a. CJA
    b. Dom Violence Checklist
    c. Family Protection Registry Info Sheet
    d. Jacket
    e. WhiteBack - Copy_Redacted

7. Emails – Reason for delay: This category of materials is related to the prosecution of William Perry under Docket 2019NY009467, which was disposed of January 6, 2020.
    a. [EXTERNAL] Re_ People v. Perry -- Discovery Paperwork_Redacted
    b. [EXTERNAL] Re_ People v. Perry - Docket 2019-NY-009467_Redacted

8. ECMS File and Attachments – Reason for delay: This category of materials is related to the prosecution of William Perry under Docket 2019NY009467, which was disposed of January 6, 2020.
    a. index_2022-05-05_446647
        i. 2019-0185
            1. 48996204_20190317072903_untitled1

3

Exhibit P

2. 48996204_20190317072906_untitled2
3. 48996204_20190317072911_untitled3
4. 48996204_20190317072915_untitled4
5. 48996204_20190317072919_untitled5
6. 48996204_20190317072922_untitled6
7. 49020878_20190318074713_190318154548-3328078
8. 49142437_1553454027120_190324145923-3335908_Redacted

**The following production was served via courier service by ADA Hannah Perlman to Defense Counsel David Jeffries at 1345 6th Ave 33rd Fl New York, NY 10105 on May 13, 2022:**

Reason for delay: This category of materials is related to the prosecution of William Perry under Docket 2019NY009467, which was disposed of January 6, 2020.

1. One Disk containing:
   a. Monaco-Putnam Texts- video
   b. Perry USB – and videos
      i. Cabo
         1. 1.1. Description of contents (MX Cabo)
         2. 1.2 Contents
            a. 1. Hannah walking from door
            b. 2. Hannah strikes face
            c. A. Text from mom
            d. B. Text from mom
      ii. DIR 2018-1-610
         1. 2.1. Description of contents (7-28 DIR)
         2. 2.2 Contents
            a. Therapist letter
            b. Texts After Call
               i. DN Texts 1
               ii. DN Texts 2
               iii. DN Texts 3
               iv. DN Texts 4
               v. DN Texts 5
               vi. DN Texts 6
               vii. DN Texts 7
               viii. DN Texts 8
               ix.
      iii. August 4th
         1. 3.1. Description of contents (8-4 DIR)
         2. 3.2. Contents

4

# Exhibit P

    a.  1. Her laying on floor
    b.  2. Refusing to leave
    c.  3. Refusing to take belongings
    d.  4. Invite for the night
    e.  5. Police Report
        i.  Police report 1
        ii.  Police report 2
        iii.  Texts w cop

1. Text w cop 1
2. Text w cop 2

    iv.  Italy
        1.  4.1. Description of contents (8-16 Italy)
        2.  4.2. Contents
            a.  Italy text 1
            b.  Italy text 2
            c.  Italy text 3
            d.  Italy text 4

    v.  March 16th
        1.  6.1. Description of contents (Privacy)
        2.  6.2. Contents (Privacy concerns)
            a.  Kanye

    vi.  Texts after arrest
        1.  7.1. Description of contents (Messages)
        2.  7.2. Contents
            a.  1. Texts
               i.  IMG_4224
               ii.  IMG_4225
            b.  2. Instagram
               i.  IMG_3623
               ii.  IMG_3624
               iii.  IMG_3636

    vii.  Post June 21st
        1.  8.1. Description of contents (post June 21st)
        2.  8.2. Contents
            a.  1. I miss you
               i.  20DE807E-7135-4678-94CC-F6F00FC0A213
               ii.  6561029F-7B1A-4B5D-B11A-FE590056CC5C
               iii.  IMG_4446
               iv.  IMG_4447

# Exhibit P

      v.  IMG_4448

     vi.  IMG_4449

    vii.  IMG_4451

   viii.  IMG_4452

     ix.  IMG_4453

      x.  IMG_4454

     xi.  IMG_4455

    xii.  IMG_4456

   xiii.  IMG_4482

   xiv.  IMG_4483

    xv.  IMG_4484

   xvi.  IMG_4487

  xvii.  IMG_4488

 xviii.  IMG_4489

   xix.  IMG_4490

    xx.  IMG_4492

   xxi.  IMG_4493

  xxii.  IMG_4495

 xxiii.  IMG_4496

 xxiv.  IMG_4500

  xxv.  IMG_4501

 xxvi.  IMG_4507

  b.  2. POS

      i.  IMG_4590

     ii.  IMG_4592

  c.  3. Dating other people

      i.  IMG_4581

 viii.  5.1. Description of contents (Halloween - London)

    1.  IMG_4248

    2.  IMG_4249

    3.  IMG_4250

    4.  IMG_4251

    5.  IMG_4252

    6.  IMG_4253

    7.  IMG_4593

    8.  IMG_4594

**Exhibit P**

**The following production was served via email by ADA Hannah Perlman to Defense Counsel David Jeffries at djeffries@jeffrieslaw.nyc on May 27, 2022:**

1. Mat Wit Cert - NY Judge Signed – Reason for Delay: this document did not yet exist at the time of the previous SCOC filing
2. Putnam v Perry O-07006-20 4-8-22 – Reason for Delay: The People were not in possession of this document despite diligent effort at the time of the previous SCOC filing.
3. Sgt Jones memo book - Copy_Redacted – Reason for Delay: The People were not in possession of this document despite diligent effort at the time of the previous SCOC filing.

**The following production was served via email by ADA Hannah Perlman to Defense Counsel David Jeffries at djeffries@jeffrieslaw.nyc on June 2, 2022:**

1. Beth Israel Medical Records – Reason for Delay: this document did not yet exist at the time of the previous SCOC filing
2. DaSilva DAF Letter and Garret Materials – Reason for Delay: This witness was recently added to potentially testify and alerted as to the search warrant photos listed below.
   a. Dasilva, Ariela 19CV01695 AMENDED COMPLAINT Purcell v. Dasilva et al
   b. Dasilva, Ariela 19CV01695 COMPLAINT Purcell v. Dasilva et al
   c. Dasilva, Ariela 19CV01695 DOCKET Purcell v. Dasilva et al
   d. Dasilva, Ariela 19CV01695 JUDGMENT Purcell v. Dasilva et al
   e. Dasilva, Ariela 19CV01695 ORDER OF DISMISSAL Purcell v. Dasilva et al

**The following production was served via email by ADA Hannah Perlman to Defense Counsel David Jeffries at djeffries@jeffrieslaw.nyc on June 3, 2022:**

1. Search Warrant Photos from 10/7/2020 – Reason for Delay: See 6/2/2022 production at item No. 2.
   - 20201007_071205
   - 20201007_071227
   - 20201007_071234
   - 20201007_071245
   - 20201007_071254
   - 20201007_071258
   - 20201007_071311
   - 20201007_071317
   - 20201007_071321
   - 20201007_075921
   - 20201007_075925
   - 20201007_075930
   - 20201007_075934
   - 20201007_075937

Exhibit P

20201007_075944
20201007_075946
20201007_075948
20201007_075949
20201007_075955

**The following production was served via email by ADA Hannah Perlman to Defense Counsel David Jeffries at djeffries@jeffrieslaw.nyc on June 8, 2022:**

1. AT&T Supplemental Documents – Reason for Delay: The People learned of additional material or information after the prior SCOC was filed, despite the People's diligent, good faith efforts to ascertain the existence of discoverable material or information. These materials were provided to the People following discussion with an AT&T representative:
   a. U-Verse Customer Account Details 1
   b. U-Verse Customer Account Details 2
2. Material Witness Certifications – Reason for Delay: this document did not yet exist at the time of the previous SCOC filing.
   a. Meta App for Mat Wit Cert - July 21, 2022 – SIGNED
   b. Tiktok App for Mat Wit Cert - July 21, 2022 – SIGNED

**The following production was served via email by ADA Hannah Perlman to Defense Counsel David Jeffries at djeffries@jeffrieslaw.nyc on June 24, 2022:**

1. 0505_001_Redacted – Reason for Delay: The People learned of additional material or information after the last SCOC was filed, despite the People's diligent, good faith efforts to ascertain the existence of discoverable material or information. These materials were provided to the People following discussion with a representative of Serving by Irving, Inc.
2. 2022.06.03 Transcript – Reason for Delay: this document did not yet exist at the time of the previous SCOC filing.
3. Memo Regarding Perry USB – Reason for Delay: this document did not yet exist at the time of the previous SCOC filing.

**The following production was served via E-discovery by ADA Hannah Perlman to Defense Counsel David Jeffries at djeffries@jeffrieslaw.nyc on July 11, 2022:**

1. 2020.10.07 Arraignment Transcript for Docket CR-018465-20NY – Reason for Delay: this document did not yet exist at the time of the previous SCOC filing.
2. Social media screenshots and videos (81 files) – Reason for Delay: this content of this material is duplicative of videos and screenshots previously provided.

Exhibit P

**The following production was served via email by ADA Hannah Perlman to Defense Counsel David Jeffries at djeffries@jeffrieslaw.nyc on July 19, 2022:**

1. Supplemental Search Warrant Photos from October 7, 2022 – (36) Photos – Reason for Delay: The People learned of additional material or information after the prior SCOC was filed, despite the People's diligent, good faith efforts to ascertain the existence of discoverable material or information. These materials were provided to the People following discussion with Investigators Bardliving and DaSilva.

2. 2020.10.08 -- Personal Property Receipt – Reason for Delay: The People learned of additional material or information after the prior SCOC was filed, despite the People's diligent, good faith efforts to ascertain the existence of discoverable material or information. This document was provided to the People following discussion with Investigators Bardliving and DaSilva.

3. TikTok Witness Notes – Reason for Delay: The People learned of additional material or information after the prior SCOC was filed, despite the People's diligent, good faith efforts to ascertain the existence of discoverable material or information. This document was provided to the People following discussion with a Records Custodian from ByteDance a/k/a "TikTok."

**The following production was served via email by ADA Hannah Perlman to Defense Counsel David Jeffries at djeffries@jeffrieslaw.nyc on July 20, 2022:**

1. 2022.07.18 – Putnam v. Perry_ Docket_O-07006-20 – Reason for Delay: this document did not yet exist at the time of the previous SCOC filing.

2. TikTok Grabs from 7/19/2022 – Reason for Delay: The People learned of these videos on the defendant's social media Tiktok account after the last SCOC was filed.

3. RE_ TikTok_Perry Trial Prep_Redacted_– Reason for Delay: this document did not yet exist at the time of the previous SCOC filing.

**The following production was served via DANYBox by ADA Hannah Perlman to Defense Counsel David Jeffries at djeffries@jeffrieslaw.nyc on August 10, 2022:**

1. Certified Temporary Orders of Protection – Reason for Delay: the People were not in possession of certified versions of these documents at the time of the previous SCOC filing.
   a. 2021.05.14 TOP Mark Monaco – Certified
   b. 2021.08.16 TOP Mark Monaco – Certified
   c. 2022.02.22 TOP Mark Monaco -- Certified

2. LinkTree – Reason for Delay: The People learned of additional material or information after the SCOC was filed and served, pertaining to conduct by the defendant after the indictment.
   a. 01 - Account Overview
   b. 02 - Account Overview 2

9

Exhibit P

    c.  03 - Demonstrably False and Misleading - linked article
    d.  04 - Demonstrably False and Misleading - with URL
    e.  05 - Immunity Impunity Link w URL
    f.  06 - Immunity Impunity Link
    g.  07 - Jim Crow Monaco Link
    h.  08 - Link tree website
    i.  09 - MAMCoverUp linked PDF
    j.  10 - Mark of Shame Link

3.  Minutes – Reason for Delay: these documents did not yet exist at the time of the previous SCOC filing.
    a.  2021.01.12_PART_D_PERRY
    b.  2021.03.03 CR-018435-20NY_Williams
    c.  2021.05.14 PART AR1  WILLIAM PERRY

4.  Perry Comments on Petition – Reason for Delay: The People learned of additional pages to this document after the prior SCOC was filed, despite the People's diligent, good faith efforts to ascertain the existence of discoverable material or information. These pages were provided to the People following discussion with Senior Investigator Thomas Mullin.

5.  Ind. 1389-2021 – Cellphone SW (CP1 and CP3) – SIGNED – Reason for Delay: this document did not yet exist at the time of the previous SCOC filing

**The following production was served via email by ADA Hannah Perlman to Defense Counsel David Jeffries at djeffries@jeffrieslaw.nyc on August 18, 2022:**

1.  Notes from A Rowe Call – Reason for Delay: these documents did not yet exist at the time of the previous SCOC filing.

2.  Notes from Chwalek Call – Reason for Delay: these documents did not yet exist at the time of the previous SCOC filing.

**The following production, subject to the Protective Order, was prepared on a thumb-drive and made available by ADA Hannah Perlman to Defense Counsel David Jeffries on August 18, 2022:[2]**

1.  Contents of SW N0511-2022 for Cellphone 1 copied on (1) Thumb-Drive – Reason for Delay: these documents did not yet exist at the time of the previous SCOC filing.
    a.  Extraction
        i.  00008020-001531920ABB002E
        ii.  00008020-001531920ABB002E_files_full
        iii.  00008020-001531920ABB002E_keychain

---

[2] As of the filing of this document, this material is under review with the DANY Privilege Review Unit since the defendant is an attorney, and the content has not been reviewed by the Trial Team.

Exhibit P

    iv.   00008020-001531920ABB002E_passwords
    v.    00008020-001531920ABB002E_pchistory
  b. Reports
    i.    59 IMG files
    ii.   2022-08.18.07-06-01
            1. CP-0001
                a. AccountPackage
                b. CellebriteReader
                c. CP-0001_2022-08-18_Report.ufdr
    iii.  UFED SIM Card SIM 2022_08_18 (001)
            1. Logical 01
            2. Logical 02
            3. EvidenceCollection.ufdx


**The following production was served via e-discovery by ADA Hannah Perlman to Defense Counsel David Jeffries at djeffries@jeffrieslaw.nyc on August 22, 2022:**

1. Social Media Screenshots and Recordings (178 files) – Reason for Delay: The People learned of additional material or information after the last SCOC was filed, despite the People's diligent, good faith efforts to ascertain the existence of discoverable material or information. These materials were provided to the People following discussion with a complainant. Many of these files are duplicative of content that has been previously provided.


**The following production was served via e-mail by ADA Hannah Perlman to Defense Counsel David Jeffries at djeffries@jeffrieslaw.nyc on August 24, 2022:**

1. Subpoena and Compliance from LinkTree – Reason for Delay: these documents did not yet exist at the time of the previous SCOC filing.
    a. 1-LinkTree v2
    b. Account
    c. Links
    d. Login
    e. safe_print_CERTIFICATION OF BUSINESS RECORDS - NY - People v William Perry

Exhibit P

**The following production was served via e-Discovery by ADA Hannah Perlman to Defense Counsel David Jeffries at djeffries@jeffrieslaw.nyc on August 30, 2022:**

1. Happytobehere Compliance – Reason for Delay: these documents did not yet exist at the time of the previous SCOC filing.
   a. 2022.08.26 Order to Meta
   b. 2703d for IG Account
   c. Compliance
      i. 530758915486457
      ii. 777314460179205_affidavit
      iii. Archive Format
         1. linked_media (empty folder)
         2. 530758915486457 (winzip)
         3. Index
         4. preservation-1
         5. README

2. Happytobehere Supplemental – Reason for Delay: The People learned of additional material or information after the last SCOC was filed, despite the People's diligent, good faith efforts to ascertain the existence of discoverable material or information. These materials were provided to the People following discussion with a complainant. Items (a)-(d) are duplicative in content.
   a. IG profile happytobehere12390 (1)
   b. IG profile happytobehere12390 (2)
   c. IMG_4475
   d. IMG_4477
   e. IMG_4480
   f. IMG_4481
   g. RPReplay_Final1661458179

**The following production was served via e-mail by ADA Hannah Perlman to Defense Counsel David Jeffries at djeffries@jeffrieslaw.nyc on September 6, 2022:**

1. FINAL C&D Hannah Putnam hcp edits 5.26.20 – Reason for Delay: The People learned of additional material or information after the last SCOC was filed, despite the People's diligent, good faith efforts to ascertain the existence of discoverable material or information.

**The following production was served via e-mail by ADA Hannah Perlman to Defense Counsel David Jeffries at djeffries@jeffrieslaw.nyc on September 6, 2022:**

1. Contents of SW N0511-2022 for Cellphone 3 copied on (1) Thumb-Drive – Reason for Delay: this material did not yet exist at the time of the previous SCOC filing.

**The following production was served via e-Discovery by ADA Hannah Perlman to Defense Counsel David Jeffries at djeffries@jeffrieslaw.nyc on September 11, 2022:**

Reason for Delay for Items (1) – (3): The People learned of additional material or information after the last SCOC was filed, despite the People's diligent, good faith efforts to ascertain the existence of discoverable material or information.

1. 2018-08 – Media contents containing (1) video file and (17) photographs
2. 2019.03.16 Photos – Media containing  (13) photos and (1) screenshot of metadata.
3. Jail Call – (1) voicemail-85.

**The following production was served in-person by ADA Hannah Perlman to Defense Counsel David Jeffries on the morning of September 12, 2022:**

1. Handwritten Notes by a complainant known to Defense Counsel (13 pages) – Reason for Delay: This document did not yet exist at the time of the previous SCOC filing.

**The following production was served via e-Discovery by ADA Hannah Perlman to Defense Counsel David Jeffries djeffries@jeffrieslaw.nyc on September 15, 2022:**

1. Linktree 9-14-22 – Reason for Delay: The People learned of additional material or information after the last SCOC was filed, despite the People's diligent, good faith efforts to ascertain the existence of discoverable material or information.
2. Notes taken  by witness Sarah Bachman (2 pages) – Reason for Delay: this document did not yet exist at the time of the previous SCOC filing.



10:51

Exhibit U

**Comments 615**    **Likes 13.6K**    ✕

**mindygraham0**
sad to say I'm a woman but they do it all the
time men are in jail over them lying
2020-3-12  Reply

♡
5

10:34 ✈

**Comments 615** **Likes 13.6K** Exhibit V



**bobafett04**

if this is real(I believe it is)then recording it is 100% the best way to protect ourselves against false claims, Jonny Depp is a hero for awareness.

2020-3-13   Reply

Liked by creator

   **inkfreak28**

Absolutely! 

2020-3-13   Reply



Exhibit W

3:10

Comments 4565     Likes 292.1K

**isupportbullying**
Karen
2020-8-22  Reply

**yasmxnabdelhamid**
karen
2020-8-22  Reply

**frozencheesecake**
Karen🤭
2020-8-22  Reply

**visionwise** ✓
Oh so she's crazy crazyyyy...
2020-8-22  Reply
111

**ezone525**
The Crazy Ones are always the best in bed
2021-4-9  Reply

**adam222271**
She really thinks she is above coloured people
and police will be on her side no matter what
SICK
2021-4-7  Reply

Reply to .wasanii

10:09 ⏿

Exhibit X

**Comments 183**    Likes 6273         ✕

 **pnk_sparkles**    
I don't know the whole story I don't know her
side of the story but I do know that her
attacking u physically is wrong just as wrong as
a man

2020-8-11   Reply

10:10

Exhibit Y

**Comments 183**    Likes 6273



**mxdgurla**

you seriously need to file a protective order/
restraining order. She's going to end up hurting
you

2020-8-21  Reply



**youth6ixess**

I'm sorry 💔 this is toxic

2021-4-4  Reply

Exhibit Z



## Comments 183    Likes 6273

**valdez184320**
Dude you better move on from that Privileged woman before everything you've work for is taken and your Ass is in Jail
2021-4-9  Reply

**aro2w**
stupid girl
2021-4-2  Reply

**devenseeban**
yep...she is the abuser!
2021-5-3  Reply

**amp2067**
she is crazy.
2021-4-3  Reply

**linasunshine69**
wtf😳😳😳😳😳
so much drama uggg😏😏😏😏
2021-4-9  Reply

**glorynoveliani**
Tell us where she works, I'll report her. This is not okay
2021-4-7  Reply

Add comment...    @  ☺



**Exhibit AA**

10:16

**Comments 183**    Likes 6273    ✕

**yayaahtx**
OMG & YOU'RE BLACK?! RUN MY BROTHER!!!!
This type of woman will have you locked up
2020-8-22  Reply

**yoadoroelsol1**
She is a STRAIGHT PSYCHOPATH
2020-8-21  Reply

**sundayzchild**
Dude she laid hands on you YOU call the
police get her out of there before she gets you
in all kinds of trouble
2020-8-21  Reply

**mrmomm**
welp he recorded her assaulting him haha 💀
2020-8-21  Reply

**bsa1932**
Good for you showing this and speaking out.
Most men stay silent but it's time for change.
2020-8-21  Reply

**ashleylopez9288**
@mommymode09 the whole account. This
poor man. That girl is crazy.

Add comment...    @  ☺

# Exhibit BB

 

10:25

**Comments 162**    **Likes 4319**

 **karenb0109**

She's very unstable and needs to get help.
Becarful she's dangerous

2020-8-23  Reply



1



**Exhibit CC**

10:26

Comments 162    Likes 4319

sunchyne1023
she is violent
2021-4-8  Reply

ittybitty9821
She's crazy 😳
2020-8-21  Reply

jeesicagee91
She crazy man..😳
2020-8-21  Reply

suesoy
Your shoes are nice
2020-8-21  Reply

dan_the_meme_boi
Bro...are you ok?
2020-8-20  Reply

spacekitty33313
damn...
2020-8-17  Reply

ana.vic.249
I'm so sorry.
2020-8-11  Reply

 Reply to luna_creations_ 

Exhibit DD

1:10

**Comments 449**    Likes 13.9K



oopen15oo

hopefully she got out. messed up that people
will try to ruin your life when they dont get their
way

2020-4-23  Reply



191

11:20

**Comments 615**     Likes 13.6K

Exhibit EE

rinyc0420
This is why you don't date crazy women
2020-8-18   Reply

shmoopetdoopey
she knows what will happen to you if the cops
come she is trying to destroy your life. white
women always trying to play victim
2020-8-17   Reply

gypsyroseblanchard1
Put ALL her stuff outside your door, change
your locks and file a restraining order
2020-8-12   Reply

Exhibit FF

**SUPREME COURT OF THE STATE OF NEW YORK**
**NEW YORK COUNTY: PART 66**
------------------------------------------------------------------X
**THE PEOPLE OF THE STATE OF NEW YORK**

- against -

**WILLIAM PERRY**

Defendant.
------------------------------------------------------------------X

**NOTICE OF MOTION TO
RENEW ORDER
PURSUANT TO
C.P.L. 2221(e)**

**Ind. Number: 01389/21**

**EXPEDITED
HEARING REQUESTED**

     **PLEASE TAKE NOTICE,** upon annexed affirmation of William Perry, *pro se* Defendant, the exhibits annexed hereto and the prior, pleadings, motions and proceedings herein, the undersigned will move the Supreme Court of the State of New York, New York County on July 1, 2024, at 9:30 o'clock in the forenoon of that day or as soon thereafter as Defendant may be heard, to modify the protective order to removed restrictions on my first amendment right to discuss the Mark A Monaco Cover Up, Mark A Monaco, Hannah Putnam and/or Rose Marie Monaco, hereinafter referred to as the "**First Amendment Violative Protective Orders**".

Dated: New York, New York
     June 28, 2024

Kind regards,

William Perry
Defendant, *pro se*
210 East 36th Street
New York, NY 10016

Exhibit FF

Supreme Court of the State of New York
City of New York, New York County
100 Centre Street
New York, NY 10013


Hannah Perlman
Assistant District Attorney
New York County District Attorney's Office
80 Centre Street
New York, NY 10013


Virginia Nguyen
Assistant District Attorney
New York County District Attorney's Office
80 Centre Street
New York, NY 10013


David Laurent Gagne
Assistant District Attorney
New York County District Attorney's Office
80 Centre Street
New York, NY 10013

Exhibit FF

**SUPREME COURT OF THE STATE OF NEW YORK**
**NEW YORK COUNTY:  PART 66**
-----------------------------------------------------------------X
**THE PEOPLE OF THE STATE OF NEW YORK**

     **- against -**

**WILLIAM PERRY,**

               **Defendant.**
-----------------------------------------------------------------X

AFFIRMATION IN
SUPPORT OF MOTION
TO RENEW ORDER
IND. NUMBER: 01389/21

HEARING REQUESTED

<u>**PRELIMIINARY STATEMENT**</u>

1.      I, William Perry, hereby move to modify the First Amendment Violative Protective

Orders, pursuant to CPLR 2221(e).  The facts below, that justify this motion, are new as of my last

appearance before Your Honor.

2.      Manhattan District Attorney, Alvin Bragg, is scheduled to appear before the United

States Congress on July 12, 2024.  A number of government officials have questioned DA Bragg's

abuse of power, or "*law-fare*".  It is of urgent importance to highlight other instances of Bragg's

prosecutors abusing power, in retaliation for exposing corruption.

<u>*Mark A Monaco Cover Up*</u>

3.      The purpose of this modification is to permit exercise of my first amendment right

to expose the Mark A Monaco Cover Up, including repeated instances of perjury, knowingly

aiding false testimony, abuse of power, and failure to supervise subordinates.

4.      I ask the Court to permit use of my First Amendment Right on ALL social media

platforms.  To permit the unrestricted distribution and display on all social media platforms, ALL

details concerning this case, Indictment Number 01389/21.  To allow for my distribution to news

and media outlets, social media and news personalities.  To allow my ability to conduct interviews

concerning this case.  Additionally, to cast any characterization of an individual, or an individual's

behavior.  This includes the characterization of bigot, "Karan" and judgments regarding racism.

Exhibit FF

5.    Pursuant to Your Honor's prior order, I am restricted from discussing Indictment Number 01389/21, the Mark A Monaco Cover Up, Mark A Monaco, Hannah Putnam or Rose Marie Monaco. "There is to be no comments on social media about this … And that is Facebook, Instagram, TikTok, whatever other social media there is. There is to be no discussion of this on social media[.]" (S-Tr. 50). As Your Honor put it, "**that is not free speech anymore.**" (S-Tr. 46).

6.    I seek Your Honor's modification to make use of the political process to bring about the protection of my rights, Your Honor seems unwilling to do. I ask Your Honor to respect the separations of powers, to permit me to engage my fellow citizens to spur to action our legislative and executive branches of government.

### STATEMENT OF FACTS

7.    I have made known to Your Honor the repeated instances of perjury by Mrs. Putnam. Mrs. Putman made known to Your Honor that ADA Mark A Monaco threatened her into false testimony.

Mrs. Putnam before Judge Maeroff:

**Q. Do you recall sending a message to Mr. Perry in which […] you indicated to [ADA Monaco] that you wanted to drop the charges and [ADA Monaco] stated to you that he believed that you were lying to the police?**

**A. I don't recall that, no.**[1]

Mrs. Putnam before Judge Pickholz:

**A. So I remember texting Will and said that he like is threatening me, because he was saying, you know it's a crime to make a false statement to the police. I took that in a threatening way, not an actual, physical threat.**[2]

---

[1] Maeroff 3-7-22 Transcript, 13, 3-7, attached hereto as **Exhibit A**.
[2] Tr.594; lines 20-24

Exhibit FF

Mrs. Putnam before Judge Maeroff:

**Q. Do you recall sending a message to Mr. Perry in regards to your arrest in March of 2019 and prosecution of Mr. Perry, in which you stated that, "The only thing that pisses me off more than having to go down there, is some idiot trying to intimidate me." Do you recall saying that?**

**A. No, I don't.**[3]

Mrs. Putnam before Judge Pickholz:

**THE COURT: But when you said that you felt that he was threatening you, Monaco was threatening you, is that what you said?**

**Mrs. Putnam: Yes.**[4]

Mrs. Putnam before Judge Maeroff:

**Q Do you recall the very next message after afterwards, being, "I immediately thought, oh my god I'm smarter than this guy?"**

**A No, I do not recall.**[5]

Mrs. Putnam before Judge Pickholz:

**Q. After that meeting with A.D.A. Monaco when you spoke with the defendant, did you have some choice words or descriptions of A.D.A. Monaco at the time, or opinions?**

**A. Yes. I believe I called him a dick, or said that you know, I thought I was smarter than him, and that he […] threatening me**

**THE COURT:    You thought Monaco was threatening you?**

---

[3] Maeroff 3-7-22 Transcript, 3/7/22; 17, 6-11:
[4] Tr.594; lines 4-7
[5] Maeroff 3-7-22 Transcript, 3/7/22; 18, 15-18

Exhibit FF

**WITNESS: Yeah.**[6]

Mrs. Putnam before Judge Maeroff:

**Q. Ms. Putnam, in reviewing the comments from the Facebook, excuse me, from Instagram and TikTok pages, would you agree that there were comments with respect to- you utilizing the legal system in an unfair manner against the person of color?**

**A. I don't recall.**[7]

Mrs. Putnam before Judge Pickholz:

**Q. Do you recall whether or not there were any comments on Tik Tok during which there were assertions of white privilege?**

**A. I believe there were.**[8]

Again, Mrs. Putnam before Judge Pickholz:

**Q. With respect to the concern that you had when you viewed the social media profiles that had been created and you went through the exercise of creating this Google Drive full of comments, you were concerned about the effects of being labeled a Karen; is that correct?**

**A. That was one of the reasons, yes.**[9]

8.      Mrs. Putnam is motivated to commit perjury to manipulate the court protective orders to obtain cover from public ridicule regarding "*Karen*" behavior.  Mrs. Putnam testified she personally observed comments wherein viewers called her a "*Karen*" or otherwise expressed an opinion accusing her of manipulating the racial dynamics. Tr. 737, lines 7-13.  Comments such as:

---

[6] Tr. 592-3; lines 24-6
[7] Maeroff 3-7-22 Transcript, 38-39; lines 14-18, 1
[8] Tr. 737, Lines 7-13
[9] Tr. 743 Lines 12-17

Exhibit FF

I'm a white woman. I'm so so sorry. This is abuse. Keep recording everything you can. Because the police often take the woman's side.[10]

What's scary is that you're more at risk when the police come, she knows that. If that's not abusive I don't know what is." (6,696 likes)[11]

She is definitely dangerous and using her white privileged to act like a victim.[12]

She is being violent & playing the victim.  Once she leave do not let her back in because if you do she is going to get you put in jail for a long time".  (1,047 likes)[13]

you can hear him holding back tears… poor guy… [heart emoji] [heart emoji][14] (2,851 likes).

Female privilege is her assaulting you and then SHE calls the cops on you.[15]

Let go of me" is not even touching her" (2,253 likes)[16]

Lol like we believe anything she says when she's saying "let go of me" and isn't even being touched. (5 likes)[17]

it's cause ur colored bro so she uses her skin tone and cops to put fear in you. leave this woman alone!!!![18]

As a white woman, I see right thru her I know what she's doing, purposely lying cuz the cameras on and exaggerating it[19]  (2 likes)

Would say send her this way she is pretty sexy but not self-respecting white guy would touch her[20]

[10] TikTok user stankystevie [2020-8-21], (**Exhibit B**)
[11] TikTok user Lovebug [2020-8-11], (**Exhibit C**)
[12] TikTok user rd_._ [2020-8-23], (**Exhibit D**)
[13] TikTok user jozet5275 [2020-3-19], **Exhibit E**.
[14] TikTok user lemonbee._.journalist [2020-5-1], **Exhibit F**.
[15] TikTok user bed_bath_and_beyonce [2020-8-20], **Exhibit G**.
[16] TikTok user bruhh_gorl [2020-8-21], **Exhibit H**.
[17] TikTok user k8notkait [2020-8-21], **Exhibit I**.
[18] jazzzyyt [2020-8-21], **Exhibit J**.
[19] iddybiddytiddycumiddy [2020-8-21], **Exhibit K**.
[20] halynsdada10 [2021-4-3], **Exhibit L**.

Exhibit FF

9.      Evidence indicates ADA Monaco, later aided by superiors and colleagues, joins Putnam's scheme to evade mounting public questions of *prosecutorial misconduct*, related to Putnam.[21]

*Who is mark* **monaco?  (3 likes)**[22]

*…it looks like Mark Monaco is a district attorney.*[23]

10.      These public comments align with emails from ADA Monaco to his superiors on, or about, March 26, 2021, pleading with them to do something to save his reputation.  This is direct evidence of perjury; ADA Monaco testified concern for his reputation was not a motivating factor in his charging decision (Tr. 367 Lines 17-20).

11.      Multiple emails (subject to Protective Order) from members of District Attorney's Office question ADA Monaco's decisions: "**Did he really do anything or not? I don't think we could even charge this.**"  Tr. 755; lines 18-19.  ADAs acknowledge personal reputational concern; desperate to the point of considering extrajudicial intimidation:

> **THE COURT:  I have the e-mails.  I see a message from Lisa Del Pizzo to certain ADA's[….]   Anyway, there were three ADA's--Ms. Arnow, who testified already; Stuart Silberg; and Erin Tierney.  The message from Lisa Del Pizzo is:**
>
>> **"Is there anything we could charge this guy with or do we just have investigators go speak with him?"** Tr. 770; lines 15-22.

12.      My defense was ultimately denied the ability to enter these emails into the record at the trial level by Your Honor. *Id.*

---

[21] ADA Monaco premises his initial arrest on a new word he created, "*professional retaliation*". This concept is later adopted by ADA Wynne in court filings.  This is completely fabricated. This concept does not exist on Google.
T. 366, lines 3-15:
[22] TikTok user daughternature3 [2021-3-25]; **Exhibit M**.
[23] TikTok user stinkmeister.13 [2021-3-26]; Exhibit M.

**Exhibit FF**

### RELIEF SOUGHT

13.     Your Honor appears unwilling to address the concerns I've raised regarding the conduct of the District Attorney's Office.  Your Honor appears unwilling to protect my constitutional rights.  Additionally, Your Honor's characterization of the facts seems blatantly intended to hide the true nature of this preceding; Your Honor's perspective seems *racially tinged*. Your Honor oddly leaves out any mention of nature of content referring to discussions of racism. Instead, Your Honor appears to characterize the content as "revenge porn."  This characterization seems *concerningly* at odds with the characterizations of 10s of 1,000s of independent third-party viewers who viewed the content within its native environment, see **Addendum A**, and the user video comments, see **Addendum B**.

14.     As stated above, Mrs. Putnam identifies the content concerns accusations of "Karen" behavior, and racism.  A close friend of Mrs. Putnam—who "continually monitor[ed]" the accounts (Tr. 57)—testified that the posts contained no "physical threats" but that the comments section was "brutal and harsh" with "lots of comments about racism."  (Tr. 65, 69). Putnam's friend saw the posts and comments as "threatening towards her career." (Tr. 68).

15.     It is clear to me this judiciary is incapable of respecting my rights.  To this end, I will seek the favor of the other branches of government.

16.     I ask that Your Honor remove any restriction on my ability to discuss my life lived events and/or what I have witnessed.

**Exhibit FF**

<u>**ARGUMENT**</u>

1.    *Prosecution Based on Content of Speech is Unconstitutional*

"Under the Free Speech Clause … the government generally has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Marquan M.*, 24 N.Y.3d at 7; *United States v. Stevens*, 559 U.S. 460, 468 (2010). "Consequently, it is well established that prohibitions of pure speech must be limited to communications that qualify as fighting words, true threats, incitement, obscenity, child pornography, fraud, defamation or statements integral to criminal conduct." *Marquan M.*, 24 N.Y.3d at 7; *Counterman*, 143 S. Ct. at 2113-14. "Outside of [these] recognized categories, speech is presumptively protected and generally cannot be curtailed." *Marquan M.*, 24 N.Y.3d at 7.

A prohibition on speech is "content based if it require[s] enforcement authorities to examine the content of the message that is conveyed to determine whether a violation has occurred." *McCullen v. Coakley*, 573 U.S. 464, 479 (2014). Prohibitions on speech are also content based if they are "concerned with undesirable effects that arise from the direct impact of speech on its audience or listeners' reactions to speech." *Id.* at 481.  That a statute purports to regulate conduct, not speech, does not render the restriction constitutional if the law is used to regulate speech based on its content.  *See Cohen v. California*, 403 U.S. 15, 18 (1971) (holding that conviction under statute that punished conduct "clearly rests upon the asserted offensiveness of the words Cohen used to convey his message" and thus was based "solely upon 'speech'");  *see also Honeyfund.com Inc. v. Governor*, --- F.4th ---, 2024 WL 909379, at *1 (11th Cir. Mar. 4, 2024) (rejecting "latest attempt to control speech by recharacterizing it as conduct").

Here, within the trial of Indictment Number 01389/21, the People focused squarely on the content of the speech. In its opening statement, the prosecution told jurors that their task was to

Exhibit FF

"evaluate the content that the defendant created." (Tr. 20).  Then, in its summation, the prosecution

zeroed in on what I had posted: "I want you to think about the content of the posts themselves …

the ways that they are edited, spliced, editorialized with hashtags, editorialized with embedded

texts, and even editorialized with music scores in that way that music tugs at the heartstrings … I

submit to you they're propaganda." (Tr. 1252-53).  This was no passing reference—it was the

theme.  Again and again, the prosecutor focused the jury on "the content that's in the posts" and

urged the jury to consider how "the defendant edited those videos to portray a specific narrative

that he wanted." (Tr. 1256).

The People's theory of stalking and harassment here "does not merely creep over the line

into constitutionally protected areas; it sets up camp there." *Mashaud v. Boone*, 295 A.3d 1139,

1156 (D.C. 2023).  I was prosecuted for my choice to publish certain content and for my editorial

choices concerning that content.  But "all speech inherently involves choice of what to say and

what to leave unsaid." *Hurley v. Irish-American Gay, Lesbian and Bisexual Grp. of Boston*, 515

U.S. 557, 573 (1995).  I was entitled to declare my message—"propaganda" or not—from this

contemporary soapbox, and cannot be punished because the prosecutors regarded that speech as

objectionable.

2.     *First Amendment Bars Prosecutions Based On
Speech About Another Person*

The Supreme Court's First Amendment jurisprudence draws a clear distinction between

speech *directed at* an unwilling listener (which the government may reasonably restrict) and

speech *about* an unwilling subject (which the government generally may not restrict unless it falls

within one of the historically unprotected categories).  *See generally* Eugene Volokh, *One-to-One

Speech vs. One-to-Many Speech, Criminal Harassment Laws, and "Cyberstalking*," 107 NW. U.

L. Rev. 731 (2013).  In *Rowan*, for example, the Court upheld a law permitting householders to

Exhibit FF

demand their removal from certain mailing lists. 397 U.S. at 738. This is because "no-one has a right to press even 'good' ideas on an unwilling recipient." *Id*. In contrast, in *Organization for a Better Austin v. Keefe*, 402 U.S. 415 (1971), the Court vacated an injunction prohibiting the defendant organization from distributing leaflets criticizing Keefe's business practices. *Id*. at 419-420. Distinguishing *Rowan*, the Court noted that Keefe was "not attempting to stop the flow of information into his own household, but to the public." *Id*. at 420.

Courts handling cases involving online speech have been keenly attentive to this distinction. In *Mashaud*, the petitioner, Boone, had an affair with Mashaud's wife; Mashaud responded by contacting Boone's employer, family, and friends; he created a blog about the affair, posted photographs of Boone and his wife, identified Boone, and identified Boone's employer; he "tagged" Boone in his posts so that "internet searches for Boone's name would return hits to the blog"; and he linked to Boone's social media accounts and work profile. 295 A.3d at 1144-46.

Boone believed Mashaud "meant him physical harm" and successfully petitioned under D.C.'s stalking statute for an order of protection. *Id*. at 1146. The D.C. Court of Appeals, however, held that the D.C. stalking statute "impermissibly restricted free speech" and narrowed the statute to the "discrete categories of speech that fall outside the scope of the First Amendment's protections." *Id*. at 1155. "When it comes to expression," the court wrote, "the First Amendment precludes the government from policing the bounds of polite society." *Id*. at 1143. The court distinguished cases involving pure speech from stalking cases based on unwanted communications and physical presence near the complainant. *Id*. at 1160-61. In the latter case, the "content of the defendant's speech" is "immaterial," and the First Amendment is not a bar to prosecution. *Id*. at 1161.

Exhibit FF

*United States v. Cassidy*, 814 F. Supp. 2d 574 (D. Md. 2011), is also instructive. Cassidy tweeted nearly 8,000 times about a Buddhist sect, including over 350 times about the sect's leader. *Id*. at 579. The tweets included violent imagery and sexually vulgar comments concerning the sect's leader, who feared for her safety. *Id*. at 579, 588-91. The court held that the federal interstate stalking statute (18 U.S.C. § 2261A) was unconstitutional as applied to this speech. *Id*. at 587-88. In doing so, the court distinguished harassment by telephone, which would not necessarily trigger the same constitutional concerns, from statements in social media posts. *Id*. at 585. "Twitter and Blogs," the court wrote, "are today's equivalent of a bulletin board that one is free to disregard, in contrast, for example, to e-mails or phone calls directed to a victim." *Id*. at 585-86. The sect's leader "had the ability to protect her own sensibilities simply by averting her eyes" from the defendant's social media posts. *Id*. at 585.

Other cases are similar. In *State v. Shackelford*, the court held that application of a stalking statute to defendant's social media posts violated the First Amendment where posts were "about" complainant but were not "sen[t] directly to her." 825 S.E.2d 689, 698 (N.C. App. 2019). In *People v. Relerford*, the Illinois Supreme Court held that a cyberstalking statute criminalizing certain "communications to or about" a person was unconstitutionally overbroad and vacated convictions based on Facebook posts "about" the complainant. 104 N.E.3d 341, 356-57 (Ill. 2017). My speech about Putnam was fully protected by the First Amendment. Putnam did not even notice my posts until they were brought to her attention by a friend. Instead of looking away, she created a TikTok account so that she could follow my posts and interact with those who commented on the posts. ADA Monaco similarly did not notice my posts about him until they were brought to his attention by Putnam. He too created social media accounts to follow what I was posting. And Ms. Monaco only became aware of my posts when they were brough to her attention by ADA Monaco. In no

Exhibit FF

case was there any serious risk—or any risk—of physical harm. This is a stark contrast to unwanted direct communications and physical stalking—unavoidable and menacing conduct that the stalking and harassment statutes were intended to address.

Moreover, even where there is a possibility of harm due to speech, the First Amendment generally provides protection provided the speech does not arise to the level of a "true threat" or incitement. *N.A.A.C.P. v. Claiborne Hardware Co*., 458 U.S. 886 (1982), is a case in point. Claiborne concerned a boycott of white merchants organized by the NAACP. As part of this boycott, "[i]ndividuals stood outside of boycotted stores and identified those who traded with the merchants"; "[t]he names of persons who violated the boycott were read at [NAACP meetings] and published in a mimeographed paper"; and "those persons were branded as traitors." *Id*. at 903-04. These measures led to incidents of violence towards residents who violated the boycott. *Id*. at 904-05. Despite this, the Court held that, under the First Amendment, the NAACP could not be held liable for the merchants' losses. *Id*. at 927-34.

14

Exhibit FF

## <u>CONCLUSION</u>

**WHEREFORE**, I, William Perry, *pro se* defendant, respectfully request the Court grant the relief requested herein and such other and further relief as may seem just and proper, and modify the First Amendment Violative Protective Orders, to provide my unrestricted right to discuss Indictment No. 01389/21, in all forums, including social media.  Given the urgency of my need, I humbly request the Court consider this matter on an expedited timeline.


Dated:  New York, New York
       June 28, 2024

                                     William Perry

Exhibit GG

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  PART 66

THE PEOPLE OF THE STATE OF NEW YORK

-against-

WILLIAM PERRY,

Defendant.

PEOPLE'S RESPONSE TO
DEFENDANT'S MOTION TO
RENEW

IND. NO. 1389/2021

Hannah Perlman, an attorney admitted to practice law before the courts of this State, affirms under the penalties of perjury that:

1.  I am an Assistant District Attorney in the New York County District Attorney's Office and am one of the attorneys assigned to the prosecution of the above-captioned case.

2.  This affirmation is made in support of the People's Response to Defendant's *pro se* Motion to Renew pursuant to C.P.L.R § 2221(e), dated and received on June 28, 2024. All allegations of fact are based upon information and belief, as well as an inspection of transcripts of the proceedings and the District Attorney's files.

3.  As set forth below, the People respectfully request that defendant's motion be denied in its entirety.

## **PROCEDURAL HISTORY**

4.  On September 22, 2022, the defendant was found guilty of: two counts of Criminal Contempt in the Second Degree, P.L. § 215.50(3), which were submitted to the jury as lesser included charges under Counts One and Two of the indictment; Stalking in the Fourth Degree, P.L. § 120.45(1), pertaining to all three victims, Ms. Putnam, ADA Monaco, and Mrs. Monaco;

**Exhibit GG**

and Harassment in the First Degree, P.L. § 240.25, pertaining to Mrs. Monaco. While the case was pending, the People moved for a Protective Order under C.P.L. § 245.70 before the Honorable Curtis J. Farber. After a hearing on July 31, 2021 the Protective Order was granted.

5.    On April 24, 2023, the Honorable Ruth Pickholz sentenced the defendant to a period of three years' probation. A Final Order of Protection was issued against the defendant for the benefit of Ms. Putnam, valid for five years under C.P.L. §530.12. Final Orders of Protection were also issued against the defendant for the benefit of ADA Monaco and Mrs. Monaco, each under C.P.L §530.13 and valid for two years.

6.    On February 26, 2023, the defense submitted a Motion to Vacate under C.P.L. § 330. That motion was denied in its entirety by the Honorable Ruth Pickholz.

7.    On August 21, 2023 and again on September 20, 2023, the defendant moved to lift Judge Farber's Protective Order under C.P.L.R § 2221(e). The Honorable Ruth Pickholz denied those motions, respectively, on September 5, 2023 and again on October 17, 2023.

8.    The defendant has submitted a motion to amend the Final Orders of Protection and the Judge's sentencing conditions in light of District Attorney Alvin Bragg's anticipated hearing before Congress on July 12, 2024.  For the foregoing reasons, the defendant's motion should be denied in full.

## **ARGUMENT**

**A.  The defendant's motion for leave to renew is facially insufficient and should be summarily denied.**

**Exhibit GG**

9.   To the extent that the defendant's submission constitutes a motion to renew,[1] it fails to meet the requisite criteria. Such a motion should not be granted unless the moving party demonstrates that they have come into possession of new, material facts that were unavailable at the time of the initial filing, or that, subsequent to the court's ruling, there has been a change in the law that would materially affect the court's prior determination. *See* CPLR 2221(e)(2); *Prime Income Asset Mgt., Inc. v. American Real Estate Holdings LP*, 82 A.D.3d 550, 551 (1st Dept. 2011); *accord Foley v. Roche*, 68 A.D.2d 558, 568 (1st Dept. 1979) ("[r]enewal should be denied where the party fails to offer a valid excuse for not submitting the additional facts upon the original application"). Although courts have discretion to relax this standard and review such a motion in the interests of justice, *see Daniels v. City of New York*, 291 A.D.2d 260 (1st Dept. 2002), a moving party's failure to state certain facts or make a particular argument in the initial motion, without some justification, remains fatal to a motion for leave to renew. *Naomi S. v. Steven E.*, 147 A.D.3d 568 (1st Dept. 2017).

10. The defendant fails to articulate any new, material facts that were unavailable when the Final Orders of Protection were issued, or that subsequently there has been a change in the law that would materially affect the court's prior determination. The fact that District Attorney Alvin Bragg is expected to testify before Congress, on an entirely unrelated matter, is not material factual information that warrants reconsideration. It also does not warrant disturbing the Court's order of September 5, 2023, which reiterates his permitted use of the public trial exhibits, as long as it is in accordance with the terms of the Final Orders of

---

[1] See infra ¶ 11

Exhibit GG

Protection.[2] Accordingly, defendant's motion does not meet the statutory standard for granting leave to renew, and his motion should be denied in full.

**B.** **The defendant's motion for leave to renew is improper before this Court and should be summarily denied.**

11. The defendant summarily asserts that his filing constitutes a motion to renew within the meaning of C.P.L.R § 2221(e). It does not. The defendant submitted two motions to renew under of C.P.L.R § 2221(e) regarding Judge Farber's Protective Order. This Court has already considered – and twice denied – those motions. Here, the defendant improperly seeks to challenge a condition of the Final Orders of Protection imposed by the Court at sentencing. *See* C.P.L. §§ 530.12(5) and 530.13(4). Those Final Orders of Protection are valid and binding; they speak for themselves, and should not be disturbed. *See People v. Lassiter*, 50 Misc. 3d 264, 267 (N.Y. Crim. Ct. 2015).

12. Additionally, the defendant has appellate recourse. The defendant has retained counsel and filed a direct appeal of his conviction with the Supreme Court of the State of New York, Appellate Division, First Department.[3] The defendant has also filed a *pro se* notice with the First Department, representing his intent appeal this Court's decisions regarding the Protective Order.[4]

13. Attempting to shoehorn another frivolous motion before this Court to ride the coattails of District Attorney Bragg's anticipated testimony before Congress regarding a wholly unrelated

---

[2] "[D]efendant's use of the public trial materials is still subject to the terms of the existing Final Orders of Protection issued by this Court at the time of sentence. Defendant must be mindful that this Court will not permit him to use trial materials which depict Ms. Putnam in various stages of undress or any information about Mark Monaco and Rose Monaco *without a legitimate purpose relevant to the collateral proceedings*. See, CPL 530.12, 530.13, 240.70" (*emphasis added*).

[3] Appellate Case No. 2023-02647.

[4] Appellate Case No. 2023-04929.

Exhibit GG

prosecution and conviction is at best improper, if not altogether an abuse of some imagined legal recourse. As Judge Pickholz appropriately declared in her October 17, 2023 decision, "[t]his Court will not entertain any more motions regarding this trial without an Appellate Court Order."

14. The People respectfully urge the Court to uphold that assertion. It is not the role of the District Attorney's Office or the Court to review any individual's prospective behavior or to provide legal advice to any individual. Given the defendant's prosecution, conviction, as well as the Protective Order and Final Orders of Protection, whatever the defendant may post, he does so at his own peril.

## **CONCLUSION**

15. Defendant has set forth no grounds that entitle him to relief. For the reasons set forth herein, the People respectfully request that defendant's motion be denied.

Alvin L. Bragg, Jr.
District Attorney
New York County


By: *Hannah Perlman*
Hannah Perlman
Assistant District Attorney
(212)335-9826


Dated: New York, New York
        July 5, 2024

Exhibit GG

---

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

THE PEOPLE OF THE STATE OF NEW YORK

-against-

WILLIAM PERRY,

Defendant.

---

PEOPLE'S RESPONSE TO DEFENDANT'S MOTION TO RENEW PURSUANT
TO CPLR §2221(e)

IND. NO.        1389/2021

---

Alvin L. Bragg, Jr.
District Attorney
New York County
One Hogan Place
New York, New York 10013

Hannah Perlman
Assistant District Attorney

6

Exhibit HH

SUPREME COURT OF THE STATE OF NEW YORK COUNTY OF
NEW YORK: PART 66

THE PEOPLE OF THE STATE OF NEW YORK

        -against-

WILLIAM PERRY,

                      Defendant.

DECISION AND ORDER
DEFENDANT'S MOTION TO
RENEW

IND. NO. 1389/2021

1.  Defendant has made another, pro se, Motion to Renew pursuant to C.P.L.R § 2221(e), dated and received on June 28, 2024. Defendant's motion be denied in its entirety.

**PROCEDURAL HISTORY**

2.  On September 22, 2022, the defendant was found guilty of two counts of Criminal Contempt in the Second Degree, P.L. § 215.50(3), which were submitted to the jury as lesser included charges under Counts One and Two of the indictment: Stalking in the Fourth Degree, P.L. § 120.45(1), pertaining to all three victims, Ms. Putnam, ADA Monaco, and Mrs. Monaco, and Harassment in the First Degree, P.L. § 240.25, pertaining to Mrs. Monaco. While the case was pending, the People moved for a Protective Order under C.P.L. §245.70 before the Honorable Curtis J. Farber. After a hearing on July 31, 2021, the Protective Order was granted.

3.  On April 24, 2023, this Court sentenced the defendant to a period of three years' probation. A Final Order of Protection was issued against the defendant for the benefit of Ms. Putnam, valid for five years under C.P.L. §530.12. Final Orders of Protection were also issued against the defendant for the benefit of ADA Monaco and Mrs. Monaco, each under C.P.L §530.13 and valid for two years.

1

Exhibit HH

4.  On February 26, 2023, the defense submitted a Motion to Vacate under C.P.L.§ 330. That motion was denied in its entirety by this Court.

5.  On August 21, 2023, and again on September 20, 2023, the defendant moved to lift Judge Farber's Protective Order under C.P.L.R §2221(e). This Court Honor denied those motions, respectively, on September 5, 2023, and again on October 17, 2023.

6.  The defendant has now submitted a procedurally defective motion to amend the Final Orders of Protection and the Judge's sentencing conditions on that basis that apparently District Attorney Alvin Bragg will participate in a hearing before Congress on July 12, 2024.  For the foregoing reasons, the defendant's motion should be denied in full.

**Legal Analysis**

7.  First, the defendant's motion for leave to renew is facially insufficient and is summarily denied.

8.  Second, even if defendant's submission constituted an appropriate motion to renew, it fails to meet the requisite criteria and is denied on the merits as well. Such a motion will not be granted unless the moving party demonstrates that they have come into possession of new, relevant, and material facts that were unavailable at the time of the initial filing, or after the court's ruling, there has been a change in the law that would materially affect the court's prior determinations.  CPLR 2221(e)(2); *Prime Income Asset Mgt., Inc. v. American Real Estate Holdings LP*, 82 A.D.3d 550, 551 (1st Dept. 2011); *accord Foley v. Roche*, 68 A.D.2d 558, 568 (1st Dept. 1979) ("[r]enewal should be denied where the party fails to offer a valid excuse for not submitting the additional facts upon the original application").

9.  Courts, however, do have the discretion to relax this standard and review such a motion in the interests of justice, *see Daniels v. City of New York*, 291 A.D.2d 260 (1st Dept. 2002), a moving party's failure to state certain facts or make a particular argument in the initial motion,

2

Exhibit HH

without some justification, remains fatal to a motion for leave to renew. *Naomi S. v. Steven E.*, 147 A.D.3d 568 (1st Dept. 2017) Defendant's assertion that the anticipated testimony of District Attorney Braggs testimony before Congress is not a factor that falls within the relevant and appropriate material fact that would affect this Court's decisions, after convictions at trial, to modify the Final Orders of Protection. District Attorney Braggs' potential testimony is irrelevant to affect the court's prior determination. Further, the fact that District Attorney Alvin Bragg is expected to testify before Congress, on an entirely unrelated matter, is not material information that warrants reconsideration. It also does not warrant disturbing the Court's order of September 5, 2023, which reiterates his permitted use of the public trial exhibits if they are used in accordance with the terms of the Final Orders of Protection.

10. Accordingly, defendant's motion does not meet the statutory standard for granting leave to renew, and his motion has no merit, even under an interest of justice analysis and is denied in full.

11. Further, the defendant's motion for leave to renew is improper before this Court.

12. The defendant summarily asserts that his filing constitutes a motion to renew within the meaning of C.P.L.R § 2221(e). It does not. The defendant submitted two motions to renew under C.P.L.R § 2221(e) regarding Judge Farber's Protective Order. This Court has already considered – and twice denied – those motions. Here, the defendant improperly seeks to challenge a condition of the Final Orders of Protection imposed by the Court at sentencing. C.P.L. §§ 530.12(5) and 530.13(4).

13. Those Final Orders of Protection issued by this Court are valid and binding; they speak for themselves and will not be disturbed. *See People v. Lassiter*, 50 Misc. 3d 264, 267 (N.Y. Crim. Ct. 2015).

14. Additionally, the defendant has appellate recourse. The defendant has retained counsel and filed a direct appeal of his conviction with the Supreme Court of the State of New York, Appellate

Exhibit HH

Division, First Department. (Appellate Case No. 2023-02647.)

15. The defendant has also filed a *pro se* notice with the First Department, representing his intent appeal this Court's decisions regarding the Protective Order. (Appellate Case No. 2023-04929.)

16. In this Court's decision dated October 17, 2023, it stated "[t]his Court will not entertain any more motions regarding this trial without an Appellate Court Order."

17. Further, defendant's use of the public trial materials is still subject to the terms of the existing Final Orders of Protection issued by this Court at the time of sentence. Defendant must be mindful that this Court will not permit him to use trial materials which depict Ms. Putnam in various stages of undress or any information about Mark Monaco and Rose Monaco without a legitimate purpose relevant to the collateral proceedings. (See, CPL 530.12, 530.13, 240.70).

### CONCLUSION

18. Defendant has set forth no grounds that entitle him to relief. Therefore, for the reasons set forth herein, defendant's motion is denied.

So ordered,
Dated: July 15, 2024
New York, New York

_____
Hon. Ruth Pickholz, J.S.C.

# Exhibit II

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF
NEW YORK: PART 66

THE PEOPLE OF THE STATE OF NEW YORK

—-against-

WILLIAM PERRY,

Defendant.

PEOPLE'S RESPONSE TO DECISION AND ORDER DEFENDANT'S MOTION TO RENEW

IND. NO. 1389/2021

Hannah Perlman, an attorney admitted to practice law before the courts of this State, affirms under the penalties of perjury that:

1.    I am an Assistant District Attorney in the New York County District Attorney's Office and am one of the attorneys assigned to the prosecution of the above-captioned case.

1.    This affirmation is Defendant has made in support of the People's Response to Defendant'sanother, pro se, Motion to Renew pursuant to C.P.L.R §2221(e),

2.    dated and received on June 28, 2024. All allegations of fact are based upon information and belief, as well as an inspection of transcripts of the proceedings and the District Attorney's files.

3.    As set forth below, the People respectfully request that defendant'sDefendant's motion be denied

1

# Exhibit II

in its entirety.

## PROCEDURAL HISTORY

2.      On September 22, 2022, the defendant was found guilty of: two counts of Criminal

Contempt in the Second Degree, P.L. § 215.50(3), which were submitted to the jury as lesser

4.      included charges under Counts One and Two of the indictment;: Stalking in the Fourth
Degree,

P.L. §SS 120.45(1), pertaining to all three victims, Ms. Putnam, ADA Monaco, and Mrs. Monaco;
.

and Harassment in the First Degree, P.L. § 240.25, pertaining to Mrs. Monaco. While the case was

pending, the People moved for a Protective Order under C.P.L. § 245.70 ____before the Honorable

Curtis J. Farber. After a hearing on July 31, 2021 , the Protective Order was granted.

3.      On April 24, 2023, the Honorable Ruth Pickholzthis Court sentenced the defendant
to a period of three years'years' probation. A Final Order of Protection was issued against the defendant for the benefit of Ms.

Putnam, valid for five years under C.P.L. §530.12. ____Final Orders of Protection were also issued

against the defendant for the benefit of ADA Monaco and Mrs. Monaco, each under C.P.L §

5.      530.13 and valid for two years.

4.      On February 26, 2023, the defense submitted a Motion to Vacate under C.P.L. §S
330.

6.      That motion was denied in its entirety by the Honorable Ruth Pickholz. this Court.

7.5.      On August 21, 2023, and again on September 20, 2023, the defendant moved to lift

Judge Farber'sFarber's Protective Order under C.P.L.R § *2221 (e). The Honorable Ruth

2

Exhibit II

~~Pickholz~~This Court Honor denied those motions, respectively, on September 5, 2023, and again on October 17, 2023.

~~8.~~6.    The defendant has now submitted a procedurally defective motion to amend the Final Orders of Protection and the ~~Judge's~~Judge's sentencing conditions ~~in light of~~on that basis that apparently District Attorney Alvin ~~Bragg's anticipated~~ Bragg will participate in a hearing before Congress on July 12, 2024. For the foregoing reasons, the ~~defendant's~~defendant's motion should be denied in full.

### ARGUMENT

### ~~The defendant's~~Legal Analysis

~~A.~~7.    First, the defendant's motion for leave to renew is facially insufficient and ~~should be~~is summarily denied.

8.    ~~To the extent that the defendant's~~Second, even if defendant's submission ~~constitutes a~~constituted an appropriate motion to renew,[1] it fails to meet the requisite criteria and is denied on the merits as well. Such a motion ~~should~~will not be granted unless the moving party demonstrates that they have come into possession of new, relevant, and material facts that were unavailable at the time of the initial filing, or ~~that, subsequent to~~after the ~~court's~~court's ruling, there has been a change in the law that would materially affect the ~~court's~~court's prior ~~determination. See~~determinations. CPLR 2221(e)(2); Prime Income Asset Mgt., Inc. v. American Real Estate Holdings ~~LP~~LI[D], 82 A.D.3d 550, 551 (1st Dept. 2011); accord Foley v. Roche, 68 A.D.2d 558, 568 (~~1st~~l st Dept. 1979) ~~("[~~("[r]enewal should be denied where the party fails to offer

---

[1] ~~See infra ¶ 11~~



a valid excuse for not submitting the additional facts upon the original application"). ~~Although courts~~").

9.        ~~Courts, however, do~~ have the discretion to relax this standard and review such a motion in the interests ~~of justice~~ofjustice, see Daniels v. City ~~of New~~ofNew York, 291 A.D.2d 260 (1st Dept. 2002), a moving ~~party's~~party's failure to state certain facts or make a particular argument in the initial motion,

---

without some justification, remains fatal to a motion for leave to renew. Naomi S. v. Steven E.,

9.    147 A.D.3d 568 (~~1st~~l st Dept. 2017~~.~~).

~~10.    The defendant fails to articulate any new,~~) Defendant's assertion that the anticipated testimony of District Attorney Braggs testimony before Congress is not a factor that falls within the relevant and appropriate material ~~facts that were unavailable when~~fact that would affect this Court's decisions, after convictions at trial, to modify the Final Orders of Protection ~~were issued, or that subsequently there has been a change in the law that would materially affect the court's.~~ District Attorney Braggs' potential testimony is irrelevant to affect the court's prior determination. ~~The~~Further, the fact that District Attorney Alvin Bragg is expected to testify before Congress, on an entirely unrelated matter, is not material ~~factual~~ information that warrants reconsideration. It also does not warrant disturbing the ~~Court's~~Court's order of September 5, 2023, which reiterates his permitted use of the public trial exhibits~~, as long as it is~~ if they are used in accordance with the terms of the Final Orders of Protection.

Protection.² 10. Accordingly, ~~defendant's~~ defendant's motion does not meet the statutory standard for

granting leave to renew, and his motion ~~should be~~ has no merit, even under an interest of justice analysis and is denied in full.

**B.** ~~The defendant's~~ 11. Further, the defendant's motion for leave to renew is improper before this Court ~~and should be summarily denied.~~ .

12.   The defendant summarily asserts that his filing constitutes a motion to renew within the meaning of C.P.L.R §SS 2221 (e). It does not. The defendant submitted two motions to renew under ~~of~~

~~11.~~   C.P.L.R §ss 2221 (e) regarding Judge ~~Farber's~~ Farber's Protective Order. This Court has already considered — and twice denied — those motions. Here, the defendant improperly seeks to challenge a condition of the Final Orders of Protection imposed by the Court at sentencing. ~~See C.P.L. §§ 530.12(5) and 530.13(4). Those Final Orders of Protection are valid and binding; they speak for themselves, and should not be disturbed.~~ C.P.L. 530.12(5) and 530.13(4), ~~See People v. Lassiter, 50 Misc. 3d 264, 267 (N.Y. Crim. Ct. 2015).~~

13.   Those Final Orders of Protection isued by Court are valid and binding; they speak for themselves and will not be disturbed. See People v. Lassiter, 50 Misc. 3d 264, 267 (N.Y. Crim. Ct.

---

² ~~"[D]efendant's use of the public trial materials is still subject to the terms of the existing Final Orders of Protection issued by this Court at the time of sentence. Defendant must be mindful that this Court will not permit him to use trial materials which depict Ms. Putnam in various stages of undress or any information about Mark Monaco and Rose Monaco without a legitimate purpose relevant to the collateral proceedings. See, CPL 530.12, 530.13, 240.70" (emphasis added).~~

5

Exhibit II

2015).

~~12.~~14. Additionally, the defendant has appellate recourse. The defendant has retained counsel and filed a direct appeal of his conviction with the Supreme Court of the State of New York, Appellate Division, First Department.[3] ~~The defendant has also filed a *pro se* notice with the First~~ (Appellate Case No. 2023-02647.)

15.    The defendant has also filed a pro se notice with the First Department, representing his intent appeal this ~~Court's~~Court's decisions regarding the Protective Order.[4] (Appellate Case No. 202304929.)

~~13.   Attempting to shoehorn another frivolous motion before this Court to ride the coattails of District Attorney Bragg's anticipated testimony before Congress regarding a wholly unrelated~~

16.    ~~prosecution and conviction is at best improper, if not altogether an abuse of some imagined legal recourse. As Judge Pickholz appropriately declared in her October 17, 2023 decision, "[~~In this Court's decision dated October 17, 2023, it stated "[t]his Court will not entertain any more motions regarding this trial without an Appellate Court Order~~."~~."

~~14.   The People respectfully urge the Court to uphold that assertion. It is not the role of the District Attorney's Office or the Court to review any individual's prospective behavior or to provide legal advice to any individual. Given the defendant's prosecution,~~

---

~~[3] Appellate Case No. 2023-02647.~~
~~[4] Appellate Case No. 2023-04929.~~

6

# Exhibit II

~~conviction, as well as the Protective Order and Final Orders of Protection, whatever the~~

~~defendant may post, he does so at his own peril.~~

## ~~CONCLUSION~~

17.    ~~15. Defendant~~ Further, defendant's use of the public trial materials is still subject to the terms of the existing Final Orders of Protection issued by this Court at the time of sentence. Defendant must be mindful that this Court will not permit him to use trial materials which depict Ms. Putnam in various stages of undress or any information about Mark Monaco and Rose Monaco without a legitimate purpose relevant to the collateral proceedings. (See, CPL 530.12, 530.13, 240.70).

## CONCLUSION

18.    Defendant has set forth no grounds that entitle him to relief. ~~For~~Therefore, for the

reasons set forth herein, ~~the~~ ~~it is denied.~~

~~People respectfully request that~~

~~defendant's~~defendant's    motion

~~be~~is denied.

_____
Hon. Ruth Pickholz, J.S.C.

~~Alvin L. Bragg, Jr.~~
~~District Attorney~~
~~New York County~~


*Hannah Perlman*

~~By:~~_____

~~Hannah Perlman~~
~~Assistant District Attorney (212)335-~~
~~9826~~

7

# Exhibit II

So ordered,

Dated: New York, New York

July 515, 2024

---

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---

**THE PEOPLE OF THE STATE OF NEW YORK**

-against-

**WILLIAM PERRY,**

                                        **Defendant.**

---

**PEOPLE'S RESPONSE TO DEFENDANT'S MOTION TO RENEW PURSUANT
TO CPLR §2221(e)**

**IND. NO.         1389/2021**

---

Alvin L. Bragg, Jr. District
Attorney
New York County
One Hogan Place
, New York, New York 10013

8

Exhibit II

Hannah Perlman
Assistant District Attorney

9

**Exhibit JJ**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 66

|  | **ORDER TO BYTEDANCE LTD. A/K/A "TIKTOK"** |
|---|---|
| IN THE MATTER OF AN APPLICATION BY THE NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE PURSUANT TO 18 USC § 2705(B) FOR AN ORDER TO **BYTEDANCE LTD. A/K/A "TIKTOK"** | **Indictment No.: 01389/2021** |

WHEREAS this Court, upon the application of the New York County District Attorney's Office, on behalf of the People of the State of New York in connection with *People v. William Perry*, Indictment 01389/2021, and pursuant to New York Judiciary Law, Section 2-b(3), it is hereby:

**ORDERED** that ByteDance Ltd. a/k/a "TikTok" remove the content available at the following Uniform Resource Locator ("URL") addresses controlled by TikTok:

1. https://www.tiktok.com/@tedclark1/video/6863462958517832966?_d=secCgYIASAHK
AESPgo87ig%2FhVjUkNENGKHNRu3GZJVYYYePy0bljFpvkHBNH7Y4XUzEkgdV
X8W9kTh%2BJ9tNCQiaB9wXdBmNdGUvGgA%3D&_r=1&checksum=579ed7f819be
1ba00122fc2ecc91add4d110f74b00cd3591527689ed8899249e&sec_user_id=MS4wLjA
BAAAAPtLXMzfuhNi8vPM7Wt9JjIQFdVIgR_IGwt_onhWMzEkCMa4j6ZrslRjtmqflS
AD6&share_app_id=1233&share_link_id=6543D5A0-C169-4846-8237-
DBEEEDAF014B&share_music_id=6859833955957476101&sharer_language=en&sour
ce=h5_m&timestamp=1682021028&tt_from=copy&u_code=dcdmjm8595g3lc&ug_btm
=b5171%2Cb5171&user_id=6828782081238451206&utm_campaign=client_share&utm
_medium=ios&utm_source=copy

2. https://www.tiktok.com/@thecorysinger/video/6863392418180402438?_d=secCgYIASA
HKAESPgo87ig%2FhVjUkNENGKHNRu3GZJVYYYePy0bljFpvkHBNH7Y4XUzEkg
dVX8W9kTh%2BJ9tNCQiaB9wXdBmNdGUvGgA%3D&_r=1&checksum=579ed7f81
9be1ba00122fc2ecc91add4d110f74b00cd3591527689ed8899249e&sec_user_id=MS4wL
jABAAAAPtLXMzfuhNi8vPM7Wt9JjIQFdVIgR_IGwt_onhWMzEkCMa4j6ZrslRjtmqfl
SAD6&share_app_id=1233&share_link_id=6543D5A0-C169-4846-8237-
DBEEEDAF014B&share_music_id=6859833955957476101&sharer_language=en&sour
ce=h5_m&timestamp=1682021028&tt_from=copy&u_code=dcdmjm8595g3lc&ug_btm
=b5171%2Cb5171&user_id=6828782081238451206&utm_campaign=client_share&utm
_medium=ios&utm_source=copy

3. https://www.tiktok.com/@bigdrill0/video/6863772355295005957?_d=secCgYIASAHK
AESPgo87ig%2FhVjUkNENGKHNRu3GZJVYYYePy0bljFpvkHBNH7Y4XUzEkgdV

Exhibit JJ

X8W9kTh%2BJ9tNCQiaB9wXdBmNdGUvGgA%3D&_r=1&checksum=579ed7f819be
1ba00122fc2ecc91add4d110f74b00cd3591527689ed8899249e&sec_user_id=MS4wLjA
BAAAAPtLXMzfuhNi8vPM7Wt9JjIQFdVIgR_IGwt_onhWMzEkCMa4j6ZrslRjtmqflS
AD6&share_app_id=1233&share_link_id=6543D5A0-C169-4846-8237-
DBEEEDAF014B&share_music_id=6859833955957476101&sharer_language=en&sour
ce=h5_m&timestamp=1682021028&tt_from=copy&u_code=dcdmjm8595g3lc&ug_btm
=b5171%2Cb5171&user_id=6828782081238451206&utm_campaign=client_share&utm
_medium=ios&utm_source=copy

4. https://www.tiktok.com/@tanishastayprayed/video/6863473699710930181?_d=secCgYI
ASAHKAESPgo87ig%2FhVjUkNENGKHNRu3GZJVYYYePy0bljFpvkHBNH7Y4XU
zEkgdVX8W9kTh%2BJ9tNCQiaB9wXdBmNdGUvGgA%3D&_r=1&checksum=579ed
7f819be1ba00122fc2ecc91add4d110f74b00cd3591527689ed8899249e&sec_user_id=MS
4wLjABAAAAPtLXMzfuhNi8vPM7Wt9JjIQFdVIgR_IGwt_onhWMzEkCMa4j6ZrslRjt
mqflSAD6&share_app_id=1233&share_link_id=6543D5A0-C169-4846-8237-
DBEEEDAF014B&share_music_id=6859833955957476101&sharer_language=en&sour
ce=h5_m&timestamp=1682021028&tt_from=copy&u_code=dcdmjm8595g3lc&ug_btm
=b5171%2Cb5171&user_id=6828782081238451206&utm_campaign=client_share&utm
_medium=ios&utm_source=copy

5. https://www.tiktok.com/@malcolmhenriques/video/6863241912782966021?_d=secCgYI
ASAHKAESPgo87ig%2FhVjUkNENGKHNRu3GZJVYYYePy0bljFpvkHBNH7Y4XU
zEkgdVX8W9kTh%2BJ9tNCQiaB9wXdBmNdGUvGgA%3D&_r=1&checksum=579ed
7f819be1ba00122fc2ecc91add4d110f74b00cd3591527689ed8899249e&sec_user_id=MS
4wLjABAAAAPtLXMzfuhNi8vPM7Wt9JjIQFdVIgR_IGwt_onhWMzEkCMa4j6ZrslRjt
mqflSAD6&share_app_id=1233&share_link_id=6543D5A0-C169-4846-8237-
DBEEEDAF014B&share_music_id=6859833955957476101&sharer_language=en&sour
ce=h5_m&timestamp=1682021028&tt_from=copy&u_code=dcdmjm8595g3lc&ug_btm
=b5171%2Cb5171&user_id=6828782081238451206&utm_campaign=client_share&utm
_medium=ios&utm_source=copy

6. https://www.tiktok.com/@scrubbalubbadub/video/6863500126804069637?_d=secCgYI
ASAHKAESPgo87ig%2FhVjUkNENGKHNRu3GZJVYYYePy0bljFpvkHBNH7Y4XU
zEkgdVX8W9kTh%2BJ9tNCQiaB9wXdBmNdGUvGgA%3D&_r=1&checksum=579ed
7f819be1ba00122fc2ecc91add4d110f74b00cd3591527689ed8899249e&sec_user_id=MS
4wLjABAAAAPtLXMzfuhNi8vPM7Wt9JjIQFdVIgR_IGwt_onhWMzEkCMa4j6ZrslRjt
mqflSAD6&share_app_id=1233&share_link_id=6543D5A0-C169-4846-8237-
DBEEEDAF014B&share_music_id=6859833955957476101&sharer_language=en&sour
ce=h5_m&timestamp=1682021028&tt_from=copy&u_code=dcdmjm8595g3lc&ug_btm
=b5171%2Cb5171&user_id=6828782081238451206&utm_campaign=client_share&utm
_medium=ios&utm_source=copy

Exhibit JJ

7. https://www.tiktok.com/@gavinpiper4/video/6863417484922408197?_d=secCgYIASAH
KAESPgo87ig%2FhVjUkNENGKHNRu3GZJVYYYePy0bljFpvkHBNH7Y4XUzEkgd
VX8W9kTh%2BJ9tNCQiaB9wXdBmNdGUvGgA%3D&_r=1&checksum=579ed7f819
be1ba00122fc2ecc91add4d110f74b00cd3591527689ed8899249e&sec_user_id=MS4wLj
ABAAAAPtLXMzfuhNi8vPM7Wt9JjIQFdVIgR_IGwt_onhWMzEkCMa4j6ZrslRjtmqfl
SAD6&share_app_id=1233&share_link_id=6543D5A0-C169-4846-8237-
DBEEEDAF014B&share_music_id=6859833955957476101&sharer_language=en&sour
ce=h5_m&timestamp=1682021028&tt_from=copy&u_code=dcdmjm8595g3lc&ug_btm
=b5171%2Cb5171&user_id=6828782081238451206&utm_campaign=client_share&utm
_medium=ios&utm_source=copy

8. https://www.tiktok.com/@apple_daily.4566/video/6863292392611532038?_d=secCgYI
ASAHKAESPgo87ig%2FhVjUkNENGKHNRu3GZJVYYYePy0bljFpvkHBNH7Y4XU
zEkgdVX8W9kTh%2BJ9tNCQiaB9wXdBmNdGUvGgA%3D&_r=1&checksum=579ed
7f819be1ba00122fc2ecc91add4d110f74b00cd3591527689ed8899249e&sec_user_id=MS
4wLjABAAAAPtLXMzfuhNi8vPM7Wt9JjIQFdVIgR_IGwt_onhWMzEkCMa4j6ZrslRjt
mqflSAD6&share_app_id=1233&share_link_id=6543D5A0-C169-4846-8237-
DBEEEDAF014B&share_music_id=6859833955957476101&sharer_language=en&sour
ce=h5_m&timestamp=1682021028&tt_from=copy&u_code=dcdmjm8595g3lc&ug_btm
=b5171%2Cb5171&user_id=6828782081238451206&utm_campaign=client_share&utm
_medium=ios&utm_source=copy

It is further **ORDERED** that TikTok remove the aforesaid content within 30 days.

Dated: New York, New York
           April_____, 2023

_____

**Justice of the Supreme Court**

Exhibit KK

October 31, 2024

William D Perry
210 East 36th Street
New York, NY 10016
wdperry@gmail.com
954-802-1334

Case Number 159875/2024

Clerk of Court
Supreme Court
60 Centre Street
New York, NY 10007

Re:  Issues re: Service of Process.

Dear Clerk of Court:

October 28, 2024, I was summoned to the Court of the Hon. Josh Hanshaft, Part 1, New York Supreme Court , Criminal Term, New York County.

During this appearance, I was admonished for public statements regarding this Article 78 Matter.

Additionally, Judge Hanshaft verbally ordered that I have no contact with Respondents: MARK A MONACO, ADA; ALVIN BRAGG, DA; Gov. KATHY HOCHUL; HON. RUTH PICKHOLZ; HON. CURTIS FARBER; LISA DEL PIZZO, ADA; STUART SILBERG, ADA; ERIN TIERNEY, ADA; SHIRA ARNOW, ADA; ALEXANDRA WYNNE, ADA; THOMAS MULLINS, OFFICER; DONYA BARDLIVING, OFFICER.

This has left me in question regarding the appropriate method of Service of Process. See attached an email to the court attorney for Judge Hanshaft.  They were unable to help me resolve this issue.  They forwarded my email to a court appointed attorney.  Who has since told me that they are unaware how to advise me how to avoid violation of Judge Hanshaft's order.

I am appraising the court of this issue in the event there are questions regarding service of process down the road.

Best,

William Perry

**Exhibit KK**

**wdperry@gmail.com**

| | |
|---|---|
| **From:** | Daniela Maiorana <dmaiorana@nycourts.gov> |
| **Sent:** | Wednesday, October 30, 2024 9:22 AM |
| **To:** | wdperry@gmail.com |
| **Cc:** | PART01; aenyiema@probation.nyc.gov |
| **Subject:** | Re: People v. Perry | Ind. No. 01389/21 |

Good morning,

I forwarded your email to your counsel, Mr. Pasacreta.

Thank you,
Daniela

Get Outlook for iOS

---

**From:** wdperry@gmail.com <wdperry@gmail.com>
**Sent:** Tuesday, October 29, 2024 7:12:53 PM
**To:** Daniela Maiorana <dmaiorana@nycourts.gov>
**Cc:** PART01 <part01@nycourts.gov>; aenyiema@probation.nyc.gov <aenyiema@probation.nyc.gov>
**Subject:** RE: People v. Perry | Ind. No. 01389/21

Good Evening Mrs. Maiorana,

Hope all is well. I was able to deliver/serve the attached to the Manhattan DA today. But I had difficulty serving Judge Farber and Judge Pickholz. Is there a office within the court authorized to receive service?

While I need to effect personal service on those Judges, out of respect for His Honor's order I want to pursue the least intrusive option. I tried the appeals bureau on the 12th floor; I typically went there to serve a notice of appeal. They sent me to 60 Centre Supreme Court building. I went to two different offices there, and they did not have an answer for me.

I plan to contact the court clerks for part 66, and part 81, and ask if they are able to coordinate service. As customary, I also plan to mail a copy of the attached Notice of Petition to each judge at the office address on the courts website.

I apologize if these emails are a bother. I am keeping the court informed out of an abundance of caution. Please inform me if any of the steps I am taking are improper.

Best,
Will

**William D. Perry, *Esq.***
New York University School of Law, 2012
University of Florida, BSBA 2009
954.802.1334
wdperry@gmail.com

1

Exhibit KK

**From:** William Perry <wdperry@gmail.com>
**Sent:** Tuesday, October 29, 2024 2:04 PM
**To:** Daniela Maiorana <dmaiorana@nycourts.gov>
**Cc:** PART01 <part01@nycourts.gov>; aenyiema@probation.nyc.gov
**Subject:** Re: People v. Perry | Ind. No. 01389/21

Hello Mrs. Maiorana,

Out of an abundance of caution, I just wanted to let His Honor know that I will likely be in the court building this afternoon to deliver some legal documents.


Sent from my iPhone


> On Oct 28, 2024, at 9:24 AM, William Perry <wdperry@gmail.com> wrote:

Mrs. Maiorana,

I'm so sorry. But I'm stuck on a 6 train being held at Bleecker street because of something at Brooklyn Bridge. I'm able to get out of the train and walk. So if it doesn't leave in the next two minutes, I'm going to being walking to you. But just want to let you know I will be arriving late.


Sent from my iPhone


> On Oct 25, 2024, at 2:37 PM, Daniela Maiorana <dmaiorana@nycourts.gov> wrote:

Good afternoon,

Thank you for your submission. I am not sure this is something Judge Hanshaft will handle but I am looking into it. I will have an answer on Monday. See you then.

Have a good weekend,
Daniela

Get Outlook for iOS

---

**From:** wdperry@gmail.com <wdperry@gmail.com>
**Sent:** Friday, October 25, 2024 2:15:01 PM
**To:** Daniela Maiorana <dmaiorana@nycourts.gov>
**Cc:** PART01 <part01@nycourts.gov>; aenyiema@probation.nyc.gov <aenyiema@probation.nyc.gov>
**Subject:** People v. Perry | Ind. No. 01389/21

Hello Daniela,

I hope all is well.  I am scheduled to be in front of Judge Hanshaft on Monday morning (9:30 AM) for a violation of probation hearing.

2

Case 1:24-cv-08736-UA    Document 1    Filed 11/13/24    Page 155 of 156

To ensure best use of the time, can you please make sure His Honor gets the attached documents.  I will be filing on the EDDS system later today, once I can get notary services (for the affirmation of service).  These documents have already been provided to the People.

Thank you.

Best,
Will

**William D. Perry,** *Esq.*
New York University School of Law, 2012
University of Florida, BSBA 2009
954.802.1334
wdperry@gmail.com

Please be CAREFUL when clicking links or opening attachments from external senders.

3

Exhibit LL

People v. William Perry, Ind. 1389/2021
Exhibit 70: Registration Information of Relevant Social Media Accounts

PEOPLE'S
EXHIBIT
**70**

| Account | Name | Vanity Name or Username | Registration Date | Registration IP | Email | Phone No. | Device IDs |
|---|---|---|---|---|---|---|---|
| Facebook 100008965080794 (see Exhibit 12.1) | Dave Williams | N/A | 2015-01-17 03:04:40 UTC | 74.72.19.77 | wdperryjunk@gmail.com (Subscriber: Will Junk, DOB 4/28/1987, see Exhibit 17.3) | N/A | N/A |
| Instagram 4162557297 (see Exhibit 11.1) | kld | heartofthecity8 | 2016-11-16 22:44:21 UTC | 2604:2000:f141:1400:88da:67c 3:45c7:d9d8 | wdperry@gmail.com (Subscriber: William Perry, DOB 4/28/1987, see Exhibit 17.1) | +19548021334 (Subscriber: William Perry, DOB 4/28/1987, see Exhibit 15.1) | E60AC5B1-6114-4AD2-8776-AD551C6A03F0 B77D2C82-294D-4199-AF42-D7EEE3F84204 870F416A-F9D2-4CB0-8CE9-ECC65764F165 8D7D129-FC59-48B4-9944-0E6B23BC49DA 539431E9-C514-4063-AD91-AFC2CDF6B4AF 79E26708-631B-42C8-9964-54FEE2921B02 74D839BF-B197-41E4-8E43-4936CD0A57B5 |
| Instagram 15619419545 (see Exhibits 4.1, 5.1, and 6.1) | There Claire Ramsay The First One Curious about Hannah Putnam? | herethereeverywhere920 hcputnam_ 1st_1_ hcputnam_1st_1__ 1st_1_tocatchakaren 1st_1_mam_coverup hcputnam_mam_coverup | 2019-06-28 17:53:51 UTC | 2604:2000:f146:1c00:107b:3d4 9:ccc5:2f4e (Charter customer William Perry, see Exhibit 16.2, page 2) | wdperryjunk@gmail.com (Subscriber: Will Junk, DOB 4/28/1987, see Exhibit 17.3) | +19549523081 (Subscribers: William Perry, DOB 4/28/1987 & FTI Consulting, see Exhibit 15.1-15.3) | B77D2C82-294D-4199-AF42-D7EEE3F84204 870F416A-F9D2-4CB0-8CE9-ECC65764F165 78D7D129-FC59-48B4-9944-0E6B23BC49DA |
| Instagram 37201760060 (see Exhibits 7.1 and 8.1) | Right to Jury Trial Comments A records of lies | mark_monaco_ada mark_monaco_story here_for_the_comments7653 mark_a_monaco_coverup1 | 2020-06-02 00:32:55 UTC | 2604:2000:f14a:a600:98b6:bd6 e:b25b:b2bf (Charter customer William Perry, see Exhibit 16.2, page 4) | wdperryjunk@gmail.com (Subscriber: Will Junk, DOB 4/28/1987, see Exhibit 17.3) | +19549523081 (Subscribers: William Perry, DOB 4/28/1987 & FTI Consulting, see Exhibit 15.1-15.3) | B77D2C82-294D-4199-AF42-D7EEE3F84204 870F416A-F9D2-4CB0-8CE9-ECC65764F165 |
| Instagram 42203528667 (see Exhibits 9.1 and 10.1) | N/A | mark_a_monaco_ada telling_the_truth_about_nyc insta_for_dummies765 mam_coverup whatitdo557 | 2020-09-23 18:25:05 UTC | 184.152.24.5 (Charter customer William Perry, see Exhibit 16.1, page 1) | N/A | +19548021334 (Subscriber: William Perry, DOB 4/28/1987, see Exhibit 15.1) | B77D2C82-294D-4199-AF42-D7EEE3F84204 870F416A-F9D2-4CB0-8CE9-ECC65764F165 |
| TikTok (see Exhibits 19.1, 20.1, and 21.1) | N/A | hcputnam_ 1st_1_ 1st_1_mam_coverup | 2020-03-03 05:01:31 UTC 2020-03-02 21:01:31 UTC | 184.152.24.5 (Charter customer William Perry, see Exhibit 16.1, page 1) | N/A | +19549523081 (Subscribers: William Perry, DOB 4/28/1987 & FTI Consulting, see Exhibit 15.1-15.3) | N/A |