**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| William Perry, | |
| Plaintiff, | Index No. 24CV8736 |
| v. | **ORDER TO SHOW** |
| ADA Mark Anthony Monaco, | **CAUSE FOR TEMPORARY** |
| DA Alvin Bragg, | **RESTRAINING ORDER AND** |
| Hon. Ruth Pickholz, | **EMERGENCY INJUNCTIVE** |
| ADA Lisa DelPizzo, | **RELIEF** |
| ADA Stuart Silberg, | |
| ADA Erin Tierney, | |
| ADA Shira Arnow, | |
| ADA Alexandra Wynne, | |
| ADA Hannah Perlman, | |
| Officer Thomas Mullins, | |
| Officer Donya Bardliving, | |
| Jorge Dopico, | |
| Raymond Vallejo, | |
| Defendants. | |

Upon the affidavits of Plaintiff, William Perry, *pro se*, sworn to the 30th day of March, 2025, and upon the copy of the amended complaint hereto annexed, it is

ORDERED, that the above named defendant(s) show cause before a motion term of this Court, at Room 15C, United States Courthouse, 500 Pearl Street, in the City, County and State of New York, on April 28, 2025, at 9:00 o'clock in the forenoon thereof, or as soon thereafter as counsel may be heard, why an order should not be issued pursuant to FRCP 20(a)(2) of the Federal Rules of Civil Procedure permissively enjoining the defendant(s) Jorge Dopico and Raymond Vallejo to this matter, and restraining Defendant(s) Jorge Dopico and Raymond Vallejo pursuant to Rule 65 of the Federal Rules of Civil Procedure, during the pendency of this action from use of,

or reliance on, the fact finding of New York State Indict. No. 01389/21 (the Hon. Ruth Pickholz presiding) within **CIVIL** proceedings; and it is further

ORDERED, that the **civil** proceeding *In re Perry*, Appellate No. 2023-02705, shall cease reliance upon the finding of fact of indictment no. 01389/21 (Hon. Ruth Pickholz presiding); and, are hereby instructed to conduct an independent hearing to determine fact finding; and it is further

ORDERED, that the referee within the aforementioned *In re Perry*, Appellate No. 2023-02705, shall cease reliance upon the finding of fact of indictment no. 01389/21 (Hon. Ruth Pickholz presiding); and it is further

ORDERED, that the fact finding of indict. no. 01389/21 (Judge Pickholz presiding), for Defendant's purposes, should be deemed (after March 31, 2025) **SUSPECT**; and use of the fact finding of indictment no. 01389/21 (Judge Pickholz presiding) should be done with **CAUTION**; and it is further

ORDERED, that sufficient reason having been shown therefor, pending the hearing of Plaintiff's application for a preliminary injunction, pursuant to Rule 20(a)(2), Fed. R. Civ. P., the Defendant(s) Jorge Dopico and Raymond Vallejo are permissively enjoined to this matter; and it is further

ORDERED, that sufficient reason having been shown therefor, pending the hearing of Plaintiff's application for a preliminary injunction, pursuant to Rule 65, Fed. R. Civ. P., the Defendants are temporarily restrained and enjoined from propagation of any statements or findings of fact contained within indictment no. 01389/21 (Judge Pickholz presiding); and it is further

ORDERED, that personal service of a copy of this order and annexed affidavit upon the defendants' counsel (as noted below) on or before 9:00 o'clock in the forenoon, April 14, 2025, shall be deemed good and sufficient service thereof.

Counsel to District Attorney's Office:

Franklin Richard Guenthner
Office of Manhattan District Attorney
1 Hogan Pl, New York, NY 10013-4311
Phone:(212) 335-9000
guenthnerf@dany.nyc.gov

Counsel to Judge Pickholz:

Charles Fernando Sanders
NYS Office of the Attorney General
28 Liberty St, New York, NY 10005
(212) 416-8594
charles.sanders@ag.ny.gov

Attorney Grievance Committee:

Jorge Dopico, Chief Attorney
Attorney Grievance Committee for the First Judicial Department
180 Maiden Lane - 17~ Floor
New York New York 10038

Attorney Grievance Committee (also):

Raymond Vallejo, Deputy Chief Attorney
Attorney Grievance Committee for the First Judicial Department
180 Maiden Lane - 17~ Floor
New York New York 10038

DATED: New York, New York

ISSUED: _____M

_____

Hon. Lewis J. Liman
District Judge
Southern District of New York
United States District Court
Daniel Patrick Moynihan Courthouse
500 Pearl St., New York, NY 10007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| William Perry,<br><br>                    Plaintiff,<br><br>   v.<br><br>ADA Mark Anthony Monaco,<br>DA Alvin Bragg,<br>Hon. Ruth Pickholz,<br>ADA Lisa DelPizzo,<br>ADA Stuart Silberg,<br>ADA Erin Tierney,<br>ADA Shira Arnow,<br>ADA Alexandra Wynne,<br>ADA Hannah Perlman,<br>Officer Thomas Mullins,<br>Officer Donya Bardliving,<br>Jorge Dopico,<br>Raymond Vallejo,<br><br>                   Defendants. | Index No. <u>24CV8736</u><br><br>**VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER AND EMERGENCY INJUNCTIVE RELIEF** |

| | | |
|---|---|---|
| STATE OF NEW YORK | ) | |
| | ) | ss. |
| COUNTY OF NEW YORK | ) | |

      William Perry, *pro se*, Plaintiff in the above-entitled action, being familiar with all the facts and circumstances in this action, incorporates by references all statements of fact contained in the Amended Complaint dated March 7, 2025,[1] files this Verified Complaint against Defendants ADA Mark Anthony Monaco, DA Alvin Bragg, Hon. Ruth Pickholz, ADA Lisa DelPizzo, ADA Stuart Silberg, ADA Erin Tierney, ADA Shira Arnow, ADA Alexandra Wynne, ADA Hannah Perlman, Officer Thomas Mullins, Officer Donya Bardliving, Jorge Dopico, Esq., and Raymond Vallejo, Esq., and alleges as follows:

---

[1] Terms used, but otherwise not defined herein, shall have the meaning ascribed to them in the Amended Complaint.

Table of Contents

**PRELIMINARY STATEMENT** ................................................................. 3

**JURISDICTION AND VENUE** ................................................................ 3

**PARTIES** ................................................................................................ 4

**INTRODUCTION** ..................................................................................... 6

**STATEMENT OF FACT** ............................................................................ 8

    **I.**   ***Procedural History*** ........................................................................ 8

        A.  *Conviction, Trial Court, New York Supreme Court* ......................... 8

        B.  *Collateral Civil Matter: Attorney Grievance Committee* ............... 11

        C.  *Affirmation of Conviction, Appellate Division* ............................. 14

        D.  *NY CPL 440.10 Motion* ................................................................ 16

        E.  *NY CPLR Article 78 Petition, New York Supreme Court* .............. 16

        F.  *New York State Court of Appeals* ................................................. 17

**ARGUMENT** ............................................................................................ 18

    **I.**   ***Irreparable Harm*** .......................................................................... 19

    **II.**  ***Notice Should Not Be Required*** .................................................... 20

    **III.** ***Likelihood of Success in Challenge to Fact Finding*** .................... 21

    **IV.** ***Serious Questions Regarding Merits; Fair Grounds for Litigation*** ......... 21

    **V.**  ***A Matter in the Public Interest*** ................................................... 22

**PRAYER FOR RELIEF** ........................................................................... 23

**VERIFICATION** ...................................................................................... 23

## PRELIMINARY STATEMENT

"*The most common way people give up their power is by thinking they don't have any*."
— Alice Walker

1.      This is an action seeking a Temporary Restraining Order ("TRO") and Preliminary Injunction to prevent immediate and irreparable harm to Plaintiff due to Defendants' coordinated unlawful conduct, as described below.

2.      Pursuant to this Court's inherent authority to issue orders for expedited service when necessary to prevent harm, avoid delay, or serve justice, Plaintiff, respectfully moves this Court for an Order granting a TRO, pursuant to Federal Rule of Civil Procedure (FRCP) 65(b), against the Attorney Grievance Committee (**AGC**), for the First Judicial Department, New York Supreme Court, from use of, or reliance on, the fact finding of New York Supreme Court, Indictment No. 01389/21 (the Hon. Ruth Pickholz presiding) within **CIVIL** proceedings against Plaintiff, including but not limited to within *In re Perry*, Appellate No. 2023-02705.

3.      FRCP 65(b) states "[t]he court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1343 as it arises under federal law and concerns civil rights, specifically 42 U.S.C. §§ 1983 and 1985, for conspiracy to deprive civil rights under color of state law.

5.      Venue is proper in this District under 28 U.S.C. § 1391(b) as the events giving rise to this claim occurred in the Southern District of New York.

## PARTIES

6.      Lead Plaintiff, William Perry, is a resident of Manhattan, New York, New York, and brings this action on behalf of himself, and all others similarly situated.

7.      Defendant, Mark Anthony Monaco, is an Assistant District Attorney for the borough of Manhattan, located at 1 Hogan Place, New York, NY 10013, and is being sued in his individual and official capacities.

8.      Defendant, the Hon. Ruth Pickholz, is a Judge of the New York Supreme Court, Part 66, located at 100 Centre Street, New York, NY 10013, and is being sued in her individual and official capacities.

9.      Defendant, Alvin Bragg, is the elected District Attorney for the borough of Manhattan, located at 1 Hogan Place, New York, NY 10013, and is being sued in his individual and official capacities.

10.      Defendant, Lisa DelPizzo, is an Assistant District Attorney for the borough of Manhattan, located at 1 Hogan Place, New York, NY 10013, and is being sued in her individual and official capacities.

11.      Defendant, Stuart Silberg, is an Assistant District Attorney for the borough of Manhattan, located at 1 Hogan Place, New York, NY 10013, and is being sued in his individual and official capacities.

12.      Defendant, Erin Tierney, is an Assistant District Attorney for the borough of Manhattan, located at 1 Hogan Place, New York, NY 10013, and is being sued in his individual and official capacities.

13.      Defendant, Shira Arnow, is an Assistant District Attorney for the borough of Manhattan, located at 1 Hogan Place, New York, NY 10013, and is being sued in his individual and official capacities.

14.    Defendant, Hannah Perlman, is an Assistant District Attorney for the borough of Manhattan, located at 1 Hogan Place, New York, NY 10013, and is being sued in his individual and official capacities.

15.    Defendant, Thomas Mullins, is an Officer for the District Attorney for the borough of Manhattan, located at 1 Hogan Place, New York, NY 10013, and is being sued in his individual and official capacities.

16.    Defendant, Donya Bardliving, is an Officer for the District Attorney for the borough of Manhattan, located at 1 Hogan Place, New York, NY 10013, and is being sued in her individual and official capacities.

17.    Defendant, The City of New York, located at Corporation Counsel of the City of New York, New York City Law Department, 100 Church Street, New York, NY 10007, enjoined to this proceeding pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

18.    Defendant, Jorge Dopico, permissively enjoined to this matter pursuant FRCP 20(a)(2), is the Chief Attorney for the Attorney Grievance Committee for the First Judicial Department, located at 180 Maiden Lane, 17th Floor, New York New York 10038, and is being sued in his individual and official capacities.

19.    Defendant, Raymond Vallejo, permissively enjoined to this matter pursuant FRCP 20(a)(2), is the Deputy Chief Attorney for the Attorney Grievance Committee for the First Judicial Department, located at 180 Maiden Lane, 17th Floor, New York New York 10038, and is being sued in his individual and official capacities.

## INTRODUCTION

20.    Defendants continue, under the cloak of immunity, to weaponize the court apparatus of the New York Supreme Court, New York County, in blatant violation of constitutional rights.  In an orchestrated scheme, courts, agents of the court (Jorge Dopico, and Raymond Vallejo) and district attorneys, have dodged and/or declined to review the statutory and constitutional validity of my arrest and subsequent conviction.  Within emails subject to protective seal, parties explicitly acknowledge the constitutional violation, and coordinate a scheme to feign ignorance of the true nature of the proceedings – a *cover up*.  My entire prosecution was politically motivated and continues to be so motivated.  Defendants are engaged in #*lawfare*.

21.    Plaintiff respectfully moves this Court for an Order granting **temporary restraining order (TRO),** pursuant to Federal Rule of Civil Procedure (FRCP) 65(b), **from reliance within <u>CIVIL</u> proceedings on the finding of fact of New York State Indictment No. 01389/21 (the Hon. Ruth Pickholz presiding) against Plaintiff**;[2] including but not limited to within *In re Perry*, Appellate No. 2023-02705.

22.    Members of the Manhattan DA's Office, with the aid of judges within the New York State Supreme Court, control the public social media and narratives, through abuse of the court orders and intimidation of social media platforms, Meta (Instagram) and TikTok. Defendants, District Attorney Alvin Bragg, ADA Mark Anthony Monaco, and co-conspirators, ADAs Lisa DelPizzo, Stuart Silberg, Erin Tierney, Shira Arnow, Alexandra Wynne, Hannah Perlman, and Officer Thomas Mullins, Officer Donya Bardliving (officers and ADAs collectively, the "**<u>Co-Conspirators</u>**"), have successfully orchestrated a scheme to produce a counter-narrative, through multiple instances of premeditated perjury by ADAs and private citizens, Hannah Claire

---

[2] Not a TRO of any separate civil matter, in, or of themselves, but a TRO of any reliance upon the present fact finding of indictment no. 01389/21.

Putnam and Annie Seifullah.  Witnesses of the prosecution have been granted blanket immunity pre-testimony to commit premeditated perjury across multiple court proceedings, including changing narratives within, and between courts.

23.    The Hon. Ruth Pickholz, who has a demonstrated history of manipulating the court apparatus for personal gain,[3] has assisted the *cover up* by providing a nonsensical fact finding of personal opinions, unsubstantiated by any facts.  The sole function of Judge Pickholz' fact finding is to provide a false counter-narrative to further the *cover up* of public allegations of perjury and government misconduct.

24.    These false statements function to defame my name; and, in combination with Judge Pickholz prohibition of my First Amendment right, result in a due process violation.  *Stigma*. The "*Stigma Plus*" doctrine provides that a due process violation exists where the state imposes a *stigma* (such as damage to one's reputation) along with some additional "*plus*" factor that affects a person's tangible interests or rights.  The tangible interest, or right, affected is my first amendment constitutional right, resulting from Judge Pickholz' court order.  At sentencing, Judge Pickholz ordered "**There is to be no comments on social media about this … And that is Facebook, Instagram, TikTok**, whatever other social media there is.  **There is to be no discussion of this on social media**[.]" (S-Tr. 50).  As Her Honor put it, "**that is not free speech anymore**." (S-Tr. 46).

25.    Without a Temporary Restraining Order, irreparable harm will result in the propagation of an engineered false narrative within collateral matters, wherein I am unable to: (i) combat the false narrative (by virtue of summary judgment, and/or collateral estoppel), and (ii)

---

[3] In 2017, [Judge Ruth Pickholz Sues to Say in Sister's Family Home](#).  See article from the New York Post.  After being denied at the Trial level, Judge Pickholz appealed to the appellate division, which later affirmed the trial decision in 2019.  *Pickholz v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 173 A.D.3d 444 (N.Y. App. Div. 2019).

make use of my first amendment right to publicly dispel the falsehood.  I am prevented from engaging the political process through free speech, by virtue of Judge Pickholz' order.  A violation of due process and notions of separation of powers.[4]

26.    Defendants, Jorge Dopico and Raymond Vallejo, seek to utilize the fact finding of the Underlying Conviction (as defined below) within an Attorney Grievance Matter, further propagating the false narrative, resulting in government immunized slander and defamation, and compromising the integrity of my law license.

## **STATEMENT OF FACT**[5]

### I.    *Procedural History*

#### A.    *Conviction, Trial Court,*
#### *New York Supreme Court*

27.    *People v Perry*, 231 AD3d 492 [1st Dept 2024]), hereinafter referred to as "**Underlying Conviction**," arises from an unprecedented threat to our democracy through the criminalization of online free speech and association.  Plaintiff, William Perry (the Defendant within the Underlying Conviction), used social media to advocate for himself as a black male experiencing abuse from a white female.  After garnering national media attention, the Manhattan District Attorney's Office initiates a campaign of intimidation through threats of professional harm, and false arrest and prosecution.

28.    In 2020, as the Black Lives Matter protests grow, the District Attorney's Office is concerned of association with Mrs. Putnam because she is a recurring witness for the District Attorney's Office.  She has been a complainant in multiple cases against ex-partners of color.[6]

---

[4] See Amended Complaint, Section E. Separation of Powers, III. Hon. Rith Pickholz, CAUSE OF ACTION.
[5] The Trial Record and Exhibits of the Underlying Conviction are available as **Addendum I**.
[6] Tr. 687, lines 6-14.

Once against myself, in a trial wherein I plead *under duress* to disorderly conduct. I, a black male, continue to believe that my former girlfriend, who is white, exploited racial privilege to falsely accuse me of wrongdoing, and ADA Monaco knowingly assisted this in violation of my constitutional rights.

29.     Within the evidence (subject to Protective Seal) exist emails of District Attorney's expressing concern for their careers being associated with a known "*Karen*."[7] Mrs. Putnam, to protect herself, and force the hand of the DAs office, threatened that she intended to claim that ADA Monaco forced her into false testimony.

30.     To tell my story, I posted cell phone videos showing myself and the former girlfriend arguing. These were all video's I previously provided to ADA Monaco to showcase Mrs. Putnam's manipulative behavior and lies. Concerned about potential public backlash, the District Attorney's Office begins their campaign of intimidation against me. Through my attorney, ADA Monaco began to threaten me. Thereafter, I made a series of Instagram and TikTok posts to accuse ADA Monaco of misconduct, combining clips from documentary films, references to the civil rights movement, and asides about qualified immunity. I also called ADA Monaco a bigot and made mocking references to his mother. Emails (subject to Protective Seal) acknowledge that none of these actions are a crime. ADAs explicitly state they are concerned with media fall out, and are acting in the absence of probably cause. ADAs explicitly note that my objective is to post and make contact with news publications, politicians and celebrity personalities.

31.     Despite no contact with these individuals, and not directing anyone to contact them, I was charged with stalking and harassing my former girlfriend, ADA Monaco, and Rose Marie Monaco (ADA Monaco's mother). The People also charged two counts of criminal contempt.

---

[7] ADA Monaco testified viewing "Karen" comments in relation to Mrs. Putnam. Tr. 393, 15-19.

Unlike the typical stalking or harassment case, the charges involved no communication between myself and the complainants or even requests by myself that someone else contact them on my behalf. Instead, the prosecution's theory was that my public speech about the complainants resulted in a social media backlash that caused the complainants to fear that unknown members of the public might inflict real harm. This was a theory fabricated out of desperation (after the fact) to come up with an excuse for an arrest without probable cause.

32.    As detailed in Plaintiff's Amended Complaint, **STATEMENT OF FACT**: Sections **III.  *Mark Anthony Monaco Cover Up***, and **IV.  *Framing*: A Step Beyond Entrapment**, all Defendant's know and acknowledge within email and texts, their actions are intended to prevent a media scandal. Defendants fabricate a fact pattern through coordinated perjury across courts and court documents. Defendants synchronize inventing words/concepts, and instigate interactions with persons on social media.

33.    Within the evidence subject to Protective Seal, is acknowledgement by the ADA Mark Anthony Monaco and Co-Conspirators of a strategy by Mrs. Putnam to fabricate a fact pattern by: (i) pretending as though spam (i.e. junk) email, text and social media messages were originating from me, (ii) creating fake messenger accounts from which Mrs. Putnam would message herself (and pretended as though the messages were possibly originating from myself), and (iii) antagonizing people on social media into staged arguments; to engage with persons for the sole purpose of creating a fact pattern.

34.    My public speech about the complainants was neither stalking nor harassment. Stalking requires a "course of conduct directed at" the complainant that serves "no legitimate purpose" and is likely to cause reasonable fear of physical harm. A course of conduct constituting

harassment similarly must be directed at the complainant and must cause "reasonable fear of physical injury."  The People proved none of these elements; as they did not exist.

35.      The prosecution's dangerously overbroad theory focused squarely on the content of my speech. The People urged the jury to "think about the content of [my] posts."  They argued that what was wrong with the content was that it was "edited … propaganda" intended to "generate a specific narrative."  They even suggested the jury should consider my use of music to "tug[] at the heartstrings."  In short, the People argued that I had committed crimes by telling the wrong story in the wrong way and telling it too persuasively.  This is a terrifying theory of criminal liability.  This is not democracy. This is the "Ministry of Truth.[8]

36.      The Court of Judge Pickholz permitted the People to pretend as though my first amendment right did not exist.  To supplement Your Honor's understanding of the first amendment free speech violations, please accompanying Memorandum of Law in Support of Complaint and Temporary Restraining Order, dated January 17, 2025.  Additionally, please see the amicus brief of professor Eugene Volokh, Exhibit QQ, of the Amended Complaint.

B.    *Collateral Civil Matter:*
*Attorney Grievance Committee*

37.      The Underlying Conviction has triggered certain collateral proceedings.  Each collateral matter presents two interrelated issues: (i) the collateral matter relies on a false fact finding; and (ii) I am unable to correct the false fact finding by virtue of, (x) collateral estoppel/summary judgment, and (y) the limitations of Judge Pickholz' order on my first amendment right to publicly dispel the falsehoods.

---

[8] An "Orwellian 'Ministry of Truth'" refers to the concept presented in George Orwell's dystopian novel, '1984.' In the novel, the Ministry of Truth is a governmental institution responsible for altering historical records and disseminating propaganda to manipulate and control public perception.

38.     Additionally, I am limited in access to evidence that would otherwise directly contradict the statements of these entities (due to the Protective Seal).  This imbalance in access to information, and exposure/reach of public statements (by virtue of Judge Pickholz prohibition on my speech), creates a due process harm through manipulation of the public narrative.  I am unable to engage the political apparatus to effect change through public discourse.

39.     As a result of the Underlying Conviction, I have an Attorney Grievance Matter pending before the First Department.  The fact finding of the AGC is entirely based on the fact finding of Judge Pickholz.  The fact finding affects mitigation, and ultimately the question of sanction.  Within this matter, I am collaterally estopped from presenting evidence in contradiction of Judge Pickholz' fact finding.

40.     A potential public sanction comes with an intended and unavoidable *stigma*, and deprivation of the full integrity, and/or use, of my law license.  Any use of the fact finding within these matters would prejudice me, as I am collaterally estopped from disputing the fact finding. Prior to Judge Pickholz' fact finding, the AGC initially held a view of the social media posts, consistent with the broader public.  In stark contradiction to the fact finding of Judge Pickholz.

41.     July 24, 2021, concerned regarding the merits of my prosecution, my girlfriend wrote a letter to the AGC regrading ADA Wynne, **Exhibit A**.  The committee declined to pursue disciplinary sanctions.  However, Jorge Dopico, Chief Attorney of the AGC, did acknowledge the nature of the posts concerned evidence of abuse and assault of myself, **Exhibit B**.  "*The committee is also not the proper government body, in the first instance, to address allegations of criminal acts such as an attempted assault[…]  As to the alleged assault, you may wish to further contact the police.*"  This is consistent with the comments, such as "*you can hear him holding back tears…*

*poor guy… [heart emoji] [heart emoji]*"[9] (**2,851 likes**).  Or "*Female privilege is her assaulting you and then SHE calls the cops on you.*"[10]

42.      Despite the AGC initially adopting a viewpoint consistent with the broader public, they will now instead adopt the narrative of Judge Pickholz, underfounded in reality.

43.      Shame is a powerful tool.  To steer the AGC toward honesty, I offered to waive my confidentiality and permit my disciplinary hearing to be live streamed on YouTube.com.  Sunlight is the best disinfectant for lies.  22 NYCRR 29.1 allows for video broadcast with permission of the Chief Judge of the Court of Appeals or the presiding justice of an Appellate Division.  See attached as **Exhibit C**, an email to the hearing referee and Mr. Vallejo, proposing the idea.  Mr. Vallejo opposed and the application was eventually denied by the hearing referee.  See **Exhibit D**.

44.      I have sought two STAYs from the First Department, Appellate Division, and been denied each time without explanation.  Attached hereto as **Exhibit E** and **Exhibit F**, are orders of the First Department denying my STAY requests, dated June 28, 2024, and February 10, 2025.  Additionally, I have sought leave to appeal to the New York State Court of Appeals (of the aforementioned June denial), and was denied September 4, 2024, see **Exhibit G**.

45.      January 9, 2025, the Referee within the Attorney Grievance Matter issued a decision.  January 21, 2025, the AGC filed a motion to confirm the decision of the referee, attached hereto as **Exhibit H**.  As noted on pages 6 through 8, the decision is based entirely on the false fact finding of Judge Pickholz.  Plaintiff was unable to provide a statement, after not being provided adequate time to prepare a response.  As noted by **Exhibit I**, I was not provided the transcript within the matter until November 15, 2024 (November 18th in actuality).  And after a

---

[9] See Footnote 27, and Exhibit I of the Amended Complaint.
[10] See Footnote 28, and Exhibit J of the Amended Complaint.

decision by the referee to grant additional time, Plaintiff was given less than one (1) week to provide a statement of fact.

46.    Plaintiff recently (February 2025) gained access to certain evidence subject to Protective Seal.  Within the subject evidence, there exists an email between ADA Alexandra Wynne and members of the District Attorney's office indicating that ADA Wynne, in coordination with Mrs. Annie Seifullah, had made communication to a member of the AGC through a family court judge.[11]  No record of this communication exists from the AGC.

C.    _Affirmation of Conviction,_
_Appellate Division_

47.    On information and belief, the AGC has motivations beyond the record presented. As stated within footnote 51 of the Amended Complaint, ADA Wynne, in coordination with private attorney Annie Seifullah, communicated to the AGC (of the first department appellate division) prior to the start of trial.  There exists no acknowledgement of this communication elsewhere.  Neither within any of the (i) collateral proceedings (i.e. Attorney Grievance Matter), or (ii) the First Department, Appellate decision.  October 8, 2024, the First Department affirmed the Underlying Conviction.  The First Department declined to rule on any one aspect of the trial, citing lack of preservation.  As the decision below details, not one statutory or constitutional aspect of my conviction was reviewed:

> Defendant's argument that the People presented legally insufficient evidence as to all six counts of conviction, embracing three separate crimes, **is unpreserved and we decline to review it in the interest of justice.**

---

[11] This email will be provided to Your Honor via separate filing.

**Counsel did not argue** that the evidence was insufficient to establish that defendant's speech was directed[12] at the victims or that there was no legitimate purpose to defendant's speech.[13]

**Counsel did not direct** the court's attention to the insufficiency arguments defendant now advances as required by CPL 470.05 (see People v Gray, 86 NY2d 10, 19 [1995]).[14]

**Nor did counsel preserve these issues** as to the assistant district attorney or to the mother of the assistant district attorney.[7]

**Counsel also failed to specifically argue** how the evidence was legally insufficient to prove that defendant knew or should have known that his conduct was likely to cause his ex-girlfriend, the assistant district attorney or the mother of the assistant district attorney, "reasonable fear of material harm to the physical health, safety or property of such person, a member of such person's immediate family or a third party with whom such person is acquainted" (Penal Law § 120.45[1]).[15]

**Finally, counsel failed to preserve his First Amendment claims**, raised for the first time on appeal.

**Defendant's ineffective assistance claim is unreviewable** on direct appeal, as it involves matters not fully explained by the record. **Thus, the claim should be raised by way of a CPL 440.10 motion (see People v Peyrefitte, 210 AD3d 438, 438 [1st Dept 2022]).**

---

[12] How is it possible for public speech to be "directed" at a person? Why am I being asked to argue something that is not even possible? This concept has NEVER existed in popular culture. Has never been considered a crime.

[13] When in American history has public speech in advocation of an argument ever been required to demonstrate a legitimate purpose? For example, no matter the number of idiots that proclaim the earth is flat, not one has ever been criminally prosecuted.

[14] Note the courts painstaking avoidance of mentioning any specifics.

[15] Why is a Defendant expected to argue something that is not earthly possible, or to have ever been witnessed on earth? The broadcast of embarrassing content, also known as "*shame*", has never been considered, or witnessed, as causing fear to safety or harm to person. This is no more an *offence*, than the alleged *whistle* of Emmett Till to Carolyn Bryant Donham. The Murder of Emmett Till | Articles and Essays | Civil Rights History Project | Digital Collections | Library of Congress  The treatment of the victims, Hannah Putnam, ADA Mark Anthony Monaco, and Rose Marie Monaco, has historically been referred to as *white privilege*. A notion within "*Jim Crow*" designed to permit the most *mediocre* of whites (also known as "*crackers*") to have a minimal degree of esteem vis-a-vie *black men*.

48.     In absence of adequate review, this Federal Civil Complaint is brought to address continuing, and ongoing violation(s) of constitutional rights, abuses of power, and actions of the Court and People outside of legal authority.

D. *NY CPL 440.10 Motion*

49.     At the guidance of the First Department, December 1, 2024, I filed a CPL 440.10 Motion to court of the Hon. Abraham Clott, New York Supreme Court, Part 94.  See attached as **Exhibit J**, mail correspondence from the New York Supreme Court, confirming receipt dated December 5, 2024.  As the letter notes:

> **Procedurally, the NY County District Attorney's Office is given an opportunity to respond to your motion.  In some cases more than one adjournment  may be required and it could take several months before a decision is rendered.**

50.     Within the 440.10 Motion, I note a number of similar statutory and constitutional arguments noted before this Court, in addition to new due process claims concerning ineffective assistance of counsel and juror misconduct concerning racial bias.

51.     This matter remains pending as of the undersigned date below.

E. *NY CPLR Article 78 Petition,*
*New York Supreme Court*

52.     To address certain issues raised herein, specifically the false fact finding of Judge Pickholz, October, 17, 2024, I initiated a Special Proceeding in the New York Supreme Court, New York County, Index No. 159875/2024, pursuant to Article 78 of New York Civil Procedure Law.  However, there was significant delay resulting from two separates Justices recusing themselves as a result of personal relationships with one or more Defendants.  See **Exhibit K**.

53.     March 12, 2025, the matter was dismissed for lack of subject matter jurisdiction, see **Exhibit L**.  Pursuant to CPLR 506(b)(l), "a proceeding against a justice of the supreme court

... shall be commenced in the appellate division in the judicial department where the action, in the course of which the matter sought to be enforced or restrained originated, is triable...” *See Na v Cohen*, 223 AD3d 594, 595 (1st Dept 2024) (“Petitioner was required to commence this proceeding in this Court pursuant to CPLR 506(b)(l), as it involves claims against a Justice of the Supreme Court, New York County.”).

54. The matter is saved by CPLR 205, which permits a plaintiff to refile an action within six months after dismissal, even if the statute of limitations has expired—but only under specific conditions; provided (i) the original action was commenced within the statute of limitations; dismissal was not on the merits; same parties and substantially same claims.

55. The matter was refiled with the New York Supreme Court, First Department, Thursday, March 27, 2025, see attached **Exhibit M**.  It awaits assignment of case index number.

F.  <u>*New York State Court of Appeals*</u>

56. The Underlying Conviction remains pending before the New York State Court of Appeals, under CLA No. 2024-00995, Chief Judge Wilson presiding.  The litigation of this matter is not full and final.

## ARGUMENT

57.    FRCP 65(b) states "[t]he court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."

58.    The standard for an entry of a TRO is the same as for a preliminary injunction. *King v. White*, 20-cv-4527 (AJN), 2 (S.D.N.Y. Jul. 23, 2020) (The standard for granting a temporary restraining order and a preliminary injunction pursuant to Rule 65 of the Federal Rules of Procedure are identical."). To obtain a preliminary injunction, a party must demonstrate "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *MyWebGrocer, L.L.C. v. Hometown Info.*, *Inc*., 375 F.3d 190, 192 (2d Cir. 2004) (quoting *Merkos L'Inyonei Chinuch, Inc*. *v*. *Otsar Sifrei Lubavitch, Inc*., 312 F.3d 94, 96 (2d Cir. 2002)).)

59.    "The purpose of a preliminary injunction is... to preserve the relative positions of the parties." *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018). "Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

60.    District courts have "wide discretion in determining whether to grant a preliminary injunction."  *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60 (2d Cir. 2007) (quoting

*Moore v. Consol. Edison Co.*, 409 F.3d 506, 510 (2d Cir. 2005)).  The Court also has inherent equitable authority to grant class-wide injunctive relief, even though a class has not yet been certified.  *See N.Y. State Natl. Organization for Women v. Terry*, 697 F. Supp. 1324, 1336 & n.16 (S.D.N.Y. 1988), aff'd as modified by, 886 F.2d 1339 (2d Cir. 1989);  *Leisner v. N.Y. Tel. Co.*, 358 F. Supp. 359, 371 (S.D.N.Y. 1973) ("[R]elief as to the class is appropriate at this time even though when the preliminary injunction motion was heard, the class action had not yet been certified."); *see also Strouchler v. Shah*, 891 F. Supp. 2d 504, 518-19 (S.D.N.Y. 2012) (finding that class certification was likely and considering facts relating to putative class members when adjudicating preliminary injunction motion).

## I.    *Irreparable Harm*

61.    Your Honor should grant the TRO in the present matter, as there are serious evident fourteenth amendment due process concerns.  Collateral matters wherein a court relies on the judgement and/or fact finding (through collateral estoppel and/or summary judgment) function to further a due process violation under the *Stigma Plus Doctrine*.  In *Matter of Swinton v. Safir*, 93 N.Y.2d 758 (1999) the Court of Appeals recognized that the "*stigma plus*" doctrine applies when a petitioner demonstrates that defamation (*stigma*) is coupled with the deprivation of a tangible interest, such as employment, *without due process*.

62.    In the present matter, the *Stigma* comes from the defamation of my character and name through invalid determinations, in addition to the impact to my law license.  The *Plus* comes from my prohibition of my free speech (affecting my ability to correct the falsehoods), in addition the any potential sanction or restriction on my law license.  Ordinarily, the Court system would address these matters through a perjury charge and conviction.  However, Defendant's have an obvious incentive to avoid investigation and prosecution of the allegation in this instance.

63.    I have expeditiously followed the guidance of the Appellate Division, First Department's October 8, 2024 Court Decision and filed at the trial level a CPL § 440.10 motion. As noted within the Court's reply correspondence, I await response from the District Attorney, of which additional adjournments may be required, and take several months to resolve.  In short, any additional delay is of no fault, or control, of my own.  The 440.10 motion makes a number of statutory, constitutional, and due process claims, of which would call into question the validity of the Underlying Convictions.

64.    Additionally, by virtue of the Protective Seal, this collateral CIVIL matter is procedurally flawed.  I am not equally able to review, present and/or utilize evidence in line with opposing counsels.  This greatly impacts my 6th Amendment right to choice of counsel.

## II.    *Notice Should <u>Not</u> Be Required*

65.    Subpart (B) of FRCP 65(b) provides "(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons <u>why it should not be required</u>."

66.    Three separate STAYs have been sought from the Appellate Division (First Department), of which the AGC has opposed all.  Their objections can be assumed the same as before.  They are on notice of repeated efforts to achieve a STAY/TRO.  As such, notice should <u>not</u> be required.

67.    Additionally, the harm intended to be avoided remains impending.  As noted in paragraph 45, a motion to confirm the decision of the hearing referee is pending before the First Department, Appellate Division.  The time required to give Defendants notice, would likely result in the issuance of an order confirming the referee decision, and resulting in harm Plaintiff seeks to avoid.

### III.    *Likelihood of Success in Challenge to Fact Finding*

68.    Judge Pickholz identified 17 accounts (see paragraph 102 of the Amended Complaint).  However, People's Exhibit 70, demonstrates only 4 subject accounts.  There is no record of where Judge Pickholz gets the 17 number from.

69.    For reasons stated in paragraphs 78 through 113 (of the Amended Complaint), the Fact Finding of Judge Pickholz has no basis in reality; it is arbitrary and capricious.  The fact finding is based on a scheme to commit *immunized* perjury.  Upon review of the evidence, there is a high likelihood that Your Honor will draw conclusions more in line with the unbiased broader public.  This matter is pending before three courts within the New York State Court System.  A TRO should be granted, at minimum, until these matters are resolved; full and final.

70.    The Appellate Division has declined to review the Underlying Conviction for lack of preservation.  There has been **no** factual, statutory, or constitutional review of the Underlying Conviction.  The Article 78 Petition remains pending.  The CPL 440.10 Motion remains pending. The appeal before the New York State Court of Appeals remains pending.

71.    Your Honor should grant a TRO from use of the Underlying Conviction (Indict. No. 01389/21) within any CIVIL proceeding, pending an actual review on the factual, constitutional and statutory *merits* of the Underlying Conviction.  To allow a court to proceed on a suspect conviction would be premature.

### IV.    *Serious Questions Regarding Merits;*
### *Fair Grounds for Litigation*

72.    To strip a counsel of their law license, absent a constitutional or statutory review, is a blatant due process violation.  Never mind the stench of *retaliation* and *cover up*.  It is an inefficient use of judicial resources to permit a collateral court to use a *suspect* fact finding.  Similar to notions of strict liability, within manufactures warranty, courts have an ethical and professional

obligation to ensure fraudulent statements are not permitted to propagate through the court system. Out of mere respect of the tax payer's dollar, one cannot so recklessly nurse at the tax payers *teats*.

73.     Regarding the AGC (Defendant's Jorge Dopico and Raymond Vallejo), Plaintiff is not requesting a TRO of that matter.  Plaintiff is solely requesting a TRO of any reliance on the fact finding of indict. no. 01389/21 within any CIVIL proceeding.  It is worthy of note that the initial position of the AGC was consistent with the broader public.  Not consistent with the current fact finding of Judge Pickholz.

74.     Additionally, the evidence of the recently discovered email between ADA Wynne and members of the District Attorney's office indicating communication to a member of the AGC (paragraph 46), should exacerbate concerns regarding the merits of this matter.

### V.     *A Matter in the Public Interest*

75.     Plaintiff incorporates by reference all statements contained in **STATEMENT OF FACT**: Section **VII.  D.E.I. *Bragg***, of the Amended Complaint.

76.     There is a demonstrated need for this proceeding.  With respect to Defendant's within the District Attorney's office, the claims of *abuse of power* within Plaintiff's Amended Complaint, and herein are consistent with the broader public.  This is not a one-off accusation. This is a pattern and practice inconsistent with the constitution.  DA Alvin Bragg abuses power, as do his subordinates.  The District Attorney's Office, in coordination with sympathetic judges have disrupted the balance of separation of powers, without legislative authority, and interfered with the *court of public opinion*;  Interference with Freedom of Elections (52 U.S.C. § 10102).

77.     As stated within footnote 51 of the Amended Complaint and herein, ADA Wynne, in coordination with private attorney Annie Seifullah, communicated to the AGC prior to the start

of trial. There exists no acknowledgement of this communication within any record provided by the AGC.

78.     As detailed within the Amended Complaint, Judge Pickholz uses her judicial immunity as a shield from public view criticisms for the DA's Office regarding weaponization of the criminal apparatus. Questions regarding free speech and our trust in the institutions that defend it are a main topic of discussion within popular culture. Recently, DA Alvin Bragg made public statements, regarding lobbying efforts in Albany, NY to change the discovery laws.[16] The citizens of New York need to know that the Office of Alvin Bragg has a history of using these laws to deprive due process and conceal government misconduct.

## PRAYER FOR RELIEF

79.     For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Temporary Restraining Order and enter the attached proposed order.

## VERIFICATION

80.     Pursuant to 28 U.S. Code § 1746 (Unsworn declarations under penalty of perjury), I, Plaintiff, declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct based on personal knowledge.

Dated: New York, New York
          March 30, 2025

William Perry
Plaintiff, *pro se*
210 East 36th Street
New York, NY 10016
954-802-1334
wdperry@gmail.com

Attachments:   **Addendum I** (hyperlinked).

---

[16] https://www.instagram.com/reel/DEyCLYgyGGI/?igsh=MXRxenp0dWtjbDE3Mw==

23