UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _6/30/2025__
```

------------------------------------------------------------------X
WILLIAM PERRY.,                                        :
                                                       :
                                Plaintiff,             :
                                                       :
                -v-                                    :           24-cv-8736 (LJL)
                                                       :
MARK ANTHONY MONACO, et al.,                           :           MEMORANDUM AND
                                                       :               ORDER
                                Defendants.            :
                                                       :
------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

   *Pro se* Plaintiff William Perry ("Perry" or "Plaintiff") seeks a Temporary Restraining

Order ("TRO") to enjoin Manhattan District Attorney Alvin Bragg, Jr. ("Bragg"), from censoring

public advocacy and criticism of the Bragg "Administration" on social media platforms, including,

but not limited to Instagram.

   For the following reasons, the motion for emergency relief is denied.

## BACKGROUND

   The operative complaint in this case concerns purported prosecutorial misconduct within

the Manhattan District Attorney's office.  *See* Dkt. No. 20-1 ¶ 23.  In 2020, Plaintiff pleaded guilty

to disorderly conduct in relation to several incidents with his ex-girlfriend, Hannah Putnam.  *Id.*

¶¶ 25–31, 36.  He was ordered to pay restitution and abide by an order of protection prohibiting

contact with Putnam.  *Id.* ¶ 36.  Subsequently, Plaintiff began to post videos on TikTok of and

about Putnam.  *Id.* ¶ 37.  He also created approximately seventeen fake accounts on social media,

"with names that could be easily mistaken to be social media accounts of Mrs. Putnam," and

"engaged in a continuous course of conduct that included . . . using those fake accounts to make it

look like the content of the posts was coming from Mrs. Putnam."  *Id.* ¶ 94.  Plaintiff was then

arrested again. *Id.* ¶ 47. He was convicted of two counts of criminal contempt in the second degree (P.L. § 215.50), three counts of stalking in the fourth degree (P.L. § 120.45(1)), and one count of harassment in the first degree (P.L. § 240.25). *Id.* ¶ 78. He was sentenced to three years' probation. *Id.* Plaintiff asserts numerous causes of action arising out of his prosecution, namely that Defendants deprived him of his First, Fourth, and Fourteenth Amendments rights. *Id.* ¶¶ 136–196.

The instant TRO application, however, concerns a separate matter. Plaintiff claims that Bragg has been censoring Plaintiff's comments on Bragg's social media accounts. This claim does not appear in Plaintiff's operative complaint and Plaintiff lays out the bulk of the factual support for his application in a document attached to the TRO application titled "Verified Complaint for Temporary Restraining Order and Emergency Injunctive Relief" and the exhibits thereto. Dkt. No. 42. The Court briefly summarizes the allegations in that document below.

Instagram is a social media website run by Meta Platforms, Inc. *Id.* ¶ 25. It allows users to post photos and videos, as well as to comment on other users' posts. Instagram users may "hide" or delete comments on their posts. *Id.* ¶ 26. Hidden comments "are completely hidden, unable to be viewed by any user." *Id.* ¶ 26 n.6. Plaintiff alleges that on three occasions, comments that he made on Bragg's Instagram account, @manhattanda, were hidden. *Id.* ¶ 22.

The first occasion concerns a post by the @manhattanda Instagram account dated April 18, 2025. *Id*. ¶ 27. The post is a video of Bragg walking and talking about scaffolding reform. *Id*. Plaintiff states that as of 2:18 PM on April 23, 2025, he saw that there were twelve comments on the post, but only six comments could actually be viewed. *Id.* Exhibit A appears to be a screenshot of the post and six comments. Ex. A. The visible comments are all critical of Bragg, stating, for example, that he is "[t]he biggest clown in NY," and that he "suck[s] as DA." *Id.* Plaintiff claims to have authored two of the six comments not shown. Dkt. No. 42 ¶ 27.

The second occasion concerns a post by the @manhattanda Instagram account dated April 9, 2025. *Id*. ¶ 28. The post is a video of a Spectrum News NY1 interview with Judy Kluger, CEO of a community organization fighting gender violence, centering upon Kluger's support for discovery reform. *Id*. n.8. Plaintiff states that as of 1:36 PM on April 25, 2025, he saw that there were two comments on the post, but only one comment could actually be viewed. *Id*. Exhibit B appears to be a screenshot of the post and one comment. Ex. B. The comment is critical of Bragg, stating "[v]iolent recidivist crime has risen 146% in New York City according to NYPD commissioner Jessica Tisch. The reason is Alvin Bragg's soft on crime catch and release policies." *Id*. Plaintiff claims to have authored the comment not shown. Dkt. No. 42 ¶ 28.

The third occasion concerns a post by the @manhattanda Instagram account dated April 25, 2025. *Id*. ¶ 29. The post is a video of Hannah Pennington, the Manhattan District Attorney's Deputy Chief for Gender-Based Violence Policy, speaking on a panel about domestic and sexual violence. *Id* n.9. Plaintiff states that as of 4:17 PM on April 25, 2025, he saw that there were three comments on the post, but only two comments could actually be viewed. *Id*. Exhibit C appears to be a screenshot of the post and two comments. Ex. C. The comments are also critical of Bragg, stating "Alvin Bragg needs to be incarcerated for his crimes against humanity as well as his criminal fraud. Violent recidivist crime is up 146% in New York City due to his soft on crime catch and release policies" and "NYPD stats prove this." *Id*. Plaintiff claims to have authored the comment not shown. Dkt. No. 42 ¶ 29.

Plaintiff sent a series of emails to the District Attorney's Office, New York State Senators, the U.S. Attorney's Office, and the New York Public Advocate's Office, among others, on April 2, 10, and 13, 2025. Ex. D. In those emails, Plaintiff urged the recipients to oppose "the Discovery Reform Bill being championed by Gov. Kathy Hochul and DA Alvin Bragg." *Id*. He explained

that prosecutors "routinely abuse these laws to deprive New Yorker's [sic] of due process" and described his own underlying conviction as an example. *Id.*

## PROCEDURAL HISTORY

Plaintiff filed his initial complaint on November 12, 2024.  Dkt. No. 1.  He moved for a TRO on January 17, 2025.  *See* Dkt. Nos. 8–9.  The Court denied Plaintiff's TRO application as procedurally deficient on February 19, 2025.  *See* Dkt. No. 16.  Plaintiff later amended his complaint on March 10, 2025.  *See* Dkt. No. 20.  In addition to the instant application, Plaintiff has several other outstanding TRO applications, which the Court does not address at this time.  *See* Dkt. Nos. 26, 28, 62–63, 67, 72.

On April 28, 2025, Plaintiff filed the instant proposed order for a TRO and an accompanying memorandum of law.  *See* Dkt. No. 42.  The memorandum of law incorporated Plaintiffs' "Verified Complaint for Temporary Restraining Order and Emergency Injunctive Relief," three exhibits showing @manhattanda Instagram posts and certain comments on the posts, and a series of emails that Plaintiff sent to government officials (including Bragg) in opposition to discovery reform legislation.  *Id.*

On May 13, 2025, Defendants filed a letter in opposition to Plaintiff's TRO application. *See* Dkt. No. 45.

On May 29, 2025, Plaintiff filed a motion requesting an extension of time to file a reply in support of the application for the TRO.  Dkt. No. 61.  The Court granted Plaintiff an extension until June 18, 2025.  Dkt. No. 68.  On June 13, 2025, Plaintiff filed a letter detailing the filings he had made in support of the various TRO applications.  Dkt. No. 69.

## LEGAL STANDARD

"[T]he standard for entry of a TRO is the same as for a preliminary injunction." *Gardner-Alfred v. Fed. Rsrv. Bank of N.Y.*, 2022 WL 748249, at *3 (S.D.N.Y. Mar. 11, 2022) (quotation

omitted).  "A party seeking a TRO, like one seeking a preliminary injunction, must typically show four elements: (1) a likelihood of success on the ultimate merits of the lawsuit; (2) a likelihood that the moving party will suffer irreparable harm if the TRO is not granted; (3) that the balance of hardships tips in the moving party's favor; and (4) that the public interest is not disserved by the relief granted."  *Free Country Ltd. v. Drennan*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.").

## DISCUSSION

Plaintiff fails to show a likelihood of success on the merits because he fails to show that Bragg is deleting comments or engaging in viewpoint discrimination.  "When a party seeks a preliminary injunction on the basis of a potential First Amendment violation, the likelihood of success on the merits will often be the determinative factor."  *N.Y. Progress and Protection PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013) (quoting *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir.1998)).  This is because "the questions of harm to the parties and the public interest generally cannot be addressed properly in the First Amendment context without first determining if there is a constitutional violation."  *Connection Distrib. Co.*, 154 F.3d at 288; *see also Mahmoud v. Taylor*, 2025 WL 1773627 (U.S. June 27, 2025) (stating that the loss of First Amendment freedoms constitutes irreparable injury).

First, Plaintiff has not shown that Bragg hid or deleted Plaintiff's comments.  Plaintiff demonstrates at most that certain comments on Bragg's Instagram account are not visible but offers only speculation as to why he is unable to view those comments.  As Bragg notes in his submission, when an Instagram user manually hides comments on a post, the comments remain visible to the

person who commented, and the commentor is not able to see that the comment has been hidden. Dkt. No. 45 at 3 (citing *Hide Comments or Message Requests You Don't Want to See on Instagram,* Instagram Help Center, https://www.facebook.com/help/instagram/700284123459336/?helpref=related_articles (last visited June 27, 2025)). Thus, if Bragg were hiding Plaintiff's comments, Plaintiff would still be able to view them—and the evidence Plaintiff submitted shows that he cannot. *See* Exs. A–C. Similarly, Plaintiff provides no evidence that deleted comments would still show up in the total comment count under the Instagram posts such that Plaintiff would know how many comments had been made but were not being shown. Moreover, Plaintiff does not show that Bragg hid or deleted any comment as opposed to, for example, Instagram itself. Dkt. No. 45 at 4. Absent a showing that Bragg deleted Plaintiff's comments, Plaintiff has failed to adequately demonstrate that a state actor interfered with his speech, which is a "well established" requirement in First Amendment claims. *Lindke v. Freed*, 601 U.S. 187, 195 (2024). *See also Manhattan Community Access Corp. v. Halleck,* 587 U.S. 802, 808 (2019) ("[T]he Free Speech Clause prohibits only *governmental* abridgement of speech. The Free Speech Clause does not prohibit *private* abridgement of speech.").

Plaintiff also fails to demonstrate that the content of his purportedly deleted posts were in fact critical of Bragg. "The test for viewpoint discrimination is whether—within the relevant subject category—the government has singled out a subset of messages for disfavor based on the views expressed." *Matal v. Tam*, 582 U.S. 218, 247 (2017) (Kennedy, J., concurring in part). Plaintiff has not disclosed the content of the comments he left, so the Court cannot infer that Bragg is engaging in viewpoint discrimination, even if Bragg had deleted or hidden those comments. Furthermore, Plaintiff's contention that Bragg's office is engaging in viewpoint discrimination is

undermined by his own submission.  Plaintiff's own exhibits show several highly critical comments on Bragg's Instagram account posts.  The fact that such comments remain unhidden undermines the inference that that Bragg is censoring comments on the basis that they are critical of him.  Dkt. No. 45 at 3 n.2.[1]

As Plaintiff has not demonstrated a likelihood of success on the merits, the Court need not address the remaining factors.  *See Bragg v. Jordan*, 669 F. Supp. 3d 257, 275 (S.D.N.Y. 2023) (citing *Oneida Nation of N.Y. v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011)).

## CONCLUSION

The application for a TRO is DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 42.


SO ORDERED.

Dated: June 30, 2025
     New York, New York                     LEWIS J. LIMAN
                                         United States District Judge

---

[1] This is not to suggest that a public official may engage in viewpoint discrimination against a single individual so long as others with the same view are not censored.  *See, e.g., Lindke*, 601 U.S. at 204 (noting that when a government official has actual authority to speak on behalf of the state on a particular matter and purports to exercise that authority in the relevant posts, blocking a citizen from commenting on social media posts may violate the First Amendment).