```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
WILLIAM PERRY,                                                   :
                                                                 :
                        Plaintiff,                               :
                                                                 :        24-cv-8736 (LJL)
        -v-                                                      :
                                                                 :       MEMORANDUM AND
MARK ANTHONY MONACO, et al.,                                     :            ORDER
                                                                 :
                        Defendants.                              :
                                                                 X
-----------------------------------------------------------------
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/23/2025

LEWIS J. LIMAN, United States District Judge:

*Pro so* Plaintiff William Perry ("Plaintiff") seeks a Temporary Restraining Order ("TRO") against named defendants and an order automatically extending the TRO to proposed defendants should those proposed defendants be successfully added to the operative complaint. Dkt. No. 106. Plaintiff's application for emergency relief is denied.

## BACKGROUND

The operative complaint in this case concerns purported prosecutorial misconduct within the Manhattan District Attorney's Office. *See* Dkt. No. 20-1 ¶ 23. In 2020, Plaintiff pleaded guilty to disorderly conduct in relation to several incidents with his ex-girlfriend, Hannah Putnam ("Putnam"). *Id.* ¶¶ 25–31, 36. He was ordered to pay restitution and abide by an order of protection prohibiting contact with Putnam. *Id.* ¶ 36. Subsequently, Plaintiff began posting videos on TikTok of and about Putnam. *Id.* ¶ 37. He also created approximately seventeen fake accounts on social media, "with names that could be easily mistaken to be social media accounts of Mrs. Putnam," and "engaged in a continuous course of conduct that included . . . using those fake accounts to make it look like the content of the posts was coming from Mrs. Putnam." *Id.* ¶

94. Plaintiff was then arrested again. *Id.* ¶ 47. He was convicted of two counts of criminal contempt in the second degree (N.Y. Penal § 215.50), three counts of stalking in the fourth degree (N.Y. Penal § 120.45(1)), and one count of harassment in the first degree (N.Y. Penal § 240.25). *Id.* ¶ 78. He was sentenced to three years' probation. *Id.* Plaintiff asserts numerous causes of action arising out of his prosecution including that Defendants deprived him of his First, Fourth, and Fourteenth Amendments rights. *Id.* ¶¶ 136–96.

## PROCEDURAL HISTORY

Plaintiff filed this suit on November 11, 2024. Dkt. No. 1. Since then, he has filed numerous applications for emergency relief. *See, e.g.*, Dkt. Nos. 8, 26, 42, 67, 79, 106. The Court has denied those applications. *See* Dkt. Nos. 16, 74, 92. Most recently, the Court denied Plaintiff's application for a TRO seeking to enjoin certain non-parties. Dkt. No. 92. The Court explained that rather than entering injunctive relief against individuals who were not yet named in the operative complaint, the proper course was for Plaintiff to file a motion under Rule 15 to supplement his complaint adding the proposed defendants. *Id.* at 4.

On August 25, 2025, Plaintiff filed his Rule 15 motion seeking leave to file a Second Amended Complaint naming the proposed defendants. Dkt. No. 95. Defendants subsequently sought an extension of the time to respond to Plaintiff's Rule 15 motion. Dkt. No. 99. The Court granted that request over Plaintiff's opposition. Dkt. Nos. 100–01. Defendants have not yet responded to Plaintiff's Rule 15 motion. Four days after the Court granted Defendant's extension request, Plaintiff filed the instant application for a TRO. Dkt. No. 106.

The application seeks emergency relief on multiple fronts. Dkt. No. 107. Broadly, Plaintiff seeks to collaterally attack his criminal conviction and to have this Court enjoin state courts from relying on that conviction in other proceedings. *Id.* at 3–6. Plaintiff also requests

that this Court enjoin Defendants from using and disclosing certain data and records allegedly obtained in violation of the Fourth Amendment, and to prevent Defendants from directing social-media platforms to remove or suppress speech. *Id.* at 4–6. Plaintiff requests that a TRO be entered against the named Defendants and automatically extended against the proposed defendants named in his pending Rule 15 motion, should the Court grant that motion. *Id.* at 3.

## LEGAL STANDARD

"In the Second Circuit, the same legal standard governs the issuance of preliminary injunctions and TROs." *Manning v. City of New York*, 2024 WL 3377997, at *1 (S.D.N.Y. July 11, 2024) (citing *Loc. 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. N.Y. Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992)). "A party seeking a TRO, like one seeking a preliminary injunction, must typically show four elements: (1) a likelihood of success on the ultimate merits of the lawsuit; (2) a likelihood that the moving party will suffer irreparable harm if the TRO is not granted; (3) that the balance of hardships tips in the moving party's favor; and (4) that the public interest is not disserved by the relief granted." *Free Country Ltd. v. Drennan*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."); *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018); *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015).

## DISCUSSION

For each of his claims and forms of requested relief, Plaintiff has failed to establish either irreparable harm or likelihood of success on the merits. His application is therefore denied.

As an initial matter, Plaintiff's attempts to collaterally attack his state conviction and to enjoin state courts from relying on that conviction are unlikely to succeed, as his claims appear to be barred by the *Younger* abstention doctrine. "This doctrine of federal abstention rests foursquare on the notion that, in the ordinary course, a state proceeding provides an adequate forum for the vindication of federal constitutional rights." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002). The doctrine applies in cases: "(1) where there is a pending state criminal prosecution; (2) where there is a pending civil enforcement proceeding; or (3) where there is a pending civil proceeding 'uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Gristina v. Merchan*, 131 F.4th 82, 87 (2d Cir. 2025) (quoting *Sprint Comms., Inc. v. Jacobs*, 571 U.S 69, 77–78 (2013)). Second Circuit caselaw "clearly indicates that the *Younger* abstention issue is evaluated at the time of filing, and it is not continuously re-evaluated throughout the pendency of a proceeding." *Id.*

In Plaintiff's own words, his underlying state-court criminal conviction "remains the subject of multiple ongoing constitutional challenges." Dkt. No. 105 at 4. As of the time of filing this suit, he was in the process of challenging his conviction on direct appeal. Dkt. No. 80 at 1. Plaintiff has also brought several civil actions in state court under N.Y. Crim. Proc. § 440.10, CPLR Article 78, and CPLR § 2221(e) challenging his conviction and the protective orders on which they are premised. Dkt. No. 105 at 4, 29–30. Notwithstanding the fact that these matters are ongoing and implicate the same underlying issues and conviction, Plaintiff asks this Court to intervene in the state-court proceedings on an emergency basis. In particular, he asks that this Court enjoin both state courts and litigants from relying on his conviction in ongoing attorney-disciplinary and family-court proceedings. Dkt. No. 107 at 3–6. Federal intervention in these proceedings is inappropriate, however, as Plaintiff's request implicates all

three *Younger* categories.

First, Plaintiff seeks to collaterally attack his state criminal prosecution, which, at least as of the filing of this suit, was pending before the New York Court of Appeals. *Cf. Gristina*, 131 F.4th at 87. Second, the Supreme Court has specifically identified attorney disciplinary matters as a kind of civil enforcement proceeding akin to criminal prosecutions. *See Sprint*, 571 U.S. at 79. The Second Circuit has accordingly held that "an ongoing state attorney disciplinary matter . . . falls squarely within *Younger* abstention," and it has affirmed the denial of Section 1983 claims related to these proceedings on abstention grounds. *See Schorr v. DoPico*, 686 F. App'x 34, 36 (2d Cir. 2017) (summary order). And third, Plaintiff's stated basis for intervening in the family court proceeding is that he "faces the imminent threat of civil incarceration" stemming from potential contempt sanctions, Dkt. No. 105 at 29, but the Supreme Court has already identified "civil contempt orders . . . as falling within *Younger*'s third category," *Gristina*, 131 F.4th at 90 (citing *Juidice v. Vail*, 430 U.S. 327, 97 (1977)).[1] Given that "the requirements for abstention are clearly satisfied," *Younger* controls this case—even though Plaintiff has raised certain First Amendment concerns. *See Spargo v. N.Y. State Comm'n on Jud. Conduct*, 351 F.3d 65, 81 (2d Cir. 2003). Indeed, "*Younger* itself warns that the existence of a 'chilling effect,' even in the area of First Amendment rights, is not a sufficient basis, in and of itself, for prohibiting state action." *Id.* (cleaned up) (quoting *Younger v. Harris*, 401 U.S. 37, 51 (1971)).

Although there are certain narrow exceptions to *Younger*, none applies here. The Supreme Court has instructed that "[s]o long as the constitutional claims of respondents can be

---

[1] Even were this not a barrier to Plaintiff's claims, he has failed to show irreparable harm, as any allegations regarding the threat of "imminent civil incarceration" are entirely conclusory and speculative. *See UGX Brands, LLC v. City of Norfolk*, 2025 WL 2083797, at *3 (S.D.N.Y. July 24, 2025) ("Plaintiffs cannot, relying on these conclusory statements alone, establish irreparable harm from the lack of a preliminary injunction.").

5

determined in the state proceedings and so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982). "[A] plaintiff who seeks to head off *Younger* abstention bears the burden of establishing that one of [these] exceptions applies." *Diamond*, 282 F.3d at 198. Plaintiff has demonstrated neither bad faith nor the unavailability of potential relief in state courts.

"Mere conclusory allegations of bias are insufficient to overcome *Younger*—a plaintiff seeking to avoid *Younger* must affirmatively demonstrate the justification for application of an exception." *Kirschner v. Klemons*, 225 F.3d 227, 236 (2d Cir. 2000). Plaintiff has asserted that his attorney-disciplinary and family-court matters were "allegedly" instigated as part of a conspiracy to punish him for his speech, Dkt. No. 105 at 14, 20–22, but these assertions are wholly conclusory and insufficiently supported to warrant emergency injunctive relief. *See Kirschner*, 225 F.3d at 238. Plaintiff cannot demonstrate that the parties bringing these proceedings had "no reasonable expectation of obtaining a favorable outcome." *Diamond*, 282 F.3d at 199 (citation omitted). In fact, it appears that the parties have already obtained certain favorable outcomes in the cases.

Plaintiff's allegations regarding the unavailability of state court remedies are similarly conclusory and unavailing. As previously detailed, Plaintiff has several ongoing state court proceedings challenging his conviction. The fact that the state courts have not yet ruled on his motions does not mean that he has been deprived of an "opportunity to raise and have timely decided [his claims] by a competent state tribunal." *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973). Instead, for *Younger* not to apply, Plaintiff must show that "the State's laws, procedures, or practices would prevent his effective interposition of his federal contentions." *Kirschner*, 225

6

F.3d at 235. Plaintiff cannot make such a showing, as he has raised the exact constitutional challenges he now asserts here in his state court proceedings. Dkt. No. 80 at 4, 29–30. Plaintiff has therefore failed to show a likelihood of success on the merits.

As for Plaintiff's claims regarding alleged Fourth Amendment violations, he has failed to establish irreparable harm. Among other things, the proposed TRO seeks to prevent Defendants from "using" or "disclosing" unspecified data and records allegedly seized from Plaintiff and his mother in violation of the Fourth Amendment. Dkt. No. 107 at 4–5. Plaintiff's mother is not pleaded as a party in the operative complaint. *See* Dkt. No. 20-1. Even if she were, and even if Plaintiff could bring these claims on her behalf, and even if he could establish that the relevant records were obtained in violation of the Fourth Amendment—all of which are far from clear—Plaintiff's general and vague assertions regarding the use and disclosure of these documents fails to establish any harm that is "actual and imminent" as opposed to "remote [and] speculative." *See Schneiderman*, 787 F.3d at 660 (citation omitted). These claims, too, accordingly fail to support his right to emergency relief.

Next, Plaintiff seeks to enjoin Defendants from "[r]equesting, directing, or inducing any social-media platform or website to remove, suppress, or throttle protected speech." Dkt. No. 107 at 5–6. The Court has already denied a previous TRO filed by Plaintiff seeking similar relief on the grounds that Plaintiff had failed to show a likelihood of success on the merits. *See* Dkt. No. 74. So too here.

The Court has considered Plaintiff's additional requests and finds that they likewise do not warrant emergency relief. Given that the Court denies Plaintiff's application for a TRO, the Court also declines to extend any injunctive relief to the proposed defendants should they be successfully added to the operative complaint.

The motion for a TRO is DENIED. The Clerk of Court is respectfully directed to close Dkt. No. 106.

SO ORDERED.

Dated: September 23, 2025
      New York, New York

                                               LEWIS J. LIMAN
                                       United States District Judge